## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MEDIA LODGE, INC., | Case No. 20-12969 (JTD) |
| Debtor. | **RE: D.I. 8, 21, 35, 37, 84 and 88** |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§105, 361, 362, 363(C), 364(C)(1), 364(C)(2), 364(D)(1), 364(E) AND 507 (I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION SECURED FINANCING FROM GEMINI DIRECT INVESTMENT, LLC; (B) UTILIZE CASH COLLATERAL AND (C) PAY CERTAIN RELATED FEES AND CHARGES; (II)MODIFYING THE AUTOMATIC STAY AND (III) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the **"Motion"**) of Media Lodge, Inc., the above-captioned debtor and debtor in possession (the "**Debtor**"), pursuant to sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of this financing order (the "**DIP Order**"), and among other things:

    i.    authorizing the Debtor to obtain senior secured postpetition financing in an aggregate maximum principal amount of $500,000 (the "**DIP Financing**"), on a superpriority basis pursuant to the terms and conditions of that certain term sheet substantially the form attached hereto as Exhibit 1 (the "**DIP Term Sheet**"; together with any additional agreements, documents, instruments and certificates executed, and any orders entered in connection therewith, or otherwise delivered in

1

connection therewith by the Debtor, collectively, the "**DIP Documents**") [1], as borrower, and Gemini Direct Investment, LLC ("**GDI**") as lender (the "**DIP Lender**");

ii.      authorizing the Debtor to execute and deliver the DIP Term Sheet and other DIP Documents and to perform such other and further acts as may be necessary or desirable in connection with the DIP Documents;

iii.     ordering that, subject to the Carve-Out, in all respects, all obligations of the Debtor to the DIP Lender under the DIP Documents shall be:

A.       entitled to superpriority claim status under section 364(c)(1) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims now existing or hereafter arising under the Bankruptcy Code; and

B.       secured, pursuant to section 364(c)(2) and 364(d)(1) of the Bankruptcy Code, by a first priority lien on all of the pre- and post-petition property of the Debtor whether existing on the Petition Date or thereafter acquired;

iv.      authorizing the Debtor's use of cash collateral, as defined in section 363(a) of the Bankruptcy Code, pursuant to the terms and conditions set forth in the DIP Order and the DIP Term Sheet;

---

[1] As of the date of this Order, the DIP Documents solely consist of the Term Sheet. To the extent that additional DIP Documents are created or required, such documents shall be provided to the United States Trustee and the Subchapter V Trustee for their review and comment.

v.  modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Orders, as applicable;

vi.  subject to and effective only upon the entry of a Final DIP Order granting such relief, (a) waiving any right of the Debtor to surcharge against the DIP Collateral, including pursuant to section 506(c) of the Bankruptcy Code or otherwise.

vii.  approving of the Final DIP Order; and

viii.  the granting of related relief.

The Court having considered the Motion, the terms of the DIP Term Sheet and the other DIP Documents, the *First Day Declaration*,  the evidence submitted at the hearings held before this Court on an interim and final basis on November 12 and 13, 2020,  and on a final basis on December 4, 2020 and January 11, 2020, to consider entry of the DIP Order (the "DIP Hearings"); and in accordance with Bankruptcy Rules 2002, 4001, 6004, and 9014 and Local Rules 2002-1, 4001-2, and 9013-1, due and proper notice of the Motion and the  DIP Hearings having been given under the circumstances; and it appearing that no other or further notice need be provided; and it appearing that approval of the relief requested in the Motion is necessary to  the Debtor and is otherwise fair and reasonable and in the best interests of the Debtor, its creditors, its estate, and all other parties in interest; and essential for the continued operation of the Debtor's business; and all objections, if any, to the entry of this DIP Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before this Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

3

IT IS HEREBY FOUND:

A.      Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Motion.

B.      On November 10, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11, Subchapter V of the Bankruptcy Code commencing a Chapter 11 case in the United States Bankruptcy Court for the District of Delaware (the "Court"), Case No. 20-12969 (JTD) (the "**Chapter 11 Case**").

C.      The Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

D.      On November 12, 2020 Natasha Songonuga, Esq. was appointed the subchapter V trustee (the "**Subchapter V Trustee**") for this Chapter 11 Case.

E.      The Debtor has represented that notice of the Hearing and the relief requested in the Motion has been provided by the Debtor, by telecopy, email, overnight courier and/or hand delivery, to: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the holders of the twenty largest unsecured claims against the Debtor; (c) the Prepetition Lender; (d) counsel to GDI; (e) all other parties asserting a lien on or a security interest in the assets of the Debtor to the extent reasonably known to the Debtor; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service;; (h) the Securities and Exchange Commission as necessary; and (i) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1 (collectively, the "**Notice Parties**"). Under the circumstances and given the nature of the relief sought in the Motion, such notice of the DIP Hearings and the relief requested in the Motion  constitutes due, sufficient and appropriate notice

4

and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c) and Local Rules 2002-1 and 4001-2. The Court concludes that no further notice is necessary and that the form, scope and timing of notice of the Motion were adequate and sufficient under the circumstances.

F.      This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for this Chapter 11 Case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

G.      The Debtor requires access to postpetition financing in an amount necessary to fund (i) the Debtor's operations, (ii) the administrative costs of the Chapter 11 Case, and (iii) the pursuit of confirmation of a reorganization.

H.      In light of the Debtor's circumstances, the Debtor is unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of its estate under section 364(c)(2) of the Bankruptcy Code or (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lender on terms more favorable than the terms of the DIP Financing. The only viable source of secured credit available to the Debtor, is the DIP Financing. The Debtor requires the additional financing under the DIP Financing and the use of Cash Collateral (as defined below) under the terms of this DIP Order to satisfy its postpetition liquidity needs.

I.      The Debtor has requested immediate entry of this DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). Good and sufficient cause has been shown for entry of this DIP Order. An immediate need exists for the Debtor to obtain funds and liquidity in order to continue operations, to satisfy in full the costs and expenses of administering the Chapter 11 Cases, to preserve the value of its business and estate. The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's assets, and to maximize the return for all creditors, requires the immediate availability of the DIP Financing and the use of the Cash Collateral. In the absence of the immediate availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtor's business would not be possible and serious and irreparable harm to the Debtor and its estate and creditors would occur. Thus, the ability of the Debtor to preserve and maintain the value of its assets and maximize the return for creditors requires the availability of working capital from the DIP Financing and the use of Cash Collateral. Accordingly, sufficient cause exists for the entry of this DIP Order.

J.      Debtor's Stipulations. The Debtor admits, stipulates and agrees for itself and its estate that as of the Petition Date, the Debtor was truly and justly indebted, without defense, counterclaim or offset of any kind, to the Prepetition Lender in the aggregate principal amount of approximately $9,382,132 pursuant to that certain Secured Promissory Note dated March 31, 2015 (the "**Note**"), between the Debtor and IA Tech, LLC as since assigned to the Prepetition Lender. The obligations thereunder, including any premiums, expenses, indemnity, and reimbursement obligations accrued thereunder and all other fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Loan Documents were not properly

6

perfected as of the Petition Date, are unsecured obligations and shall be treated as general unsecured claims in this Bankruptcy Case.

K. Cash Collateral. All cash (including cash on deposit at depository institutions, securities or other property, whether subject to control agreements or otherwise, are "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"), and subject to the terms of this DIP Order (including subject to the DIP Liens).  For the avoidance of doubt, the Prepetition Lender does not have an interest in the Cash Collateral.

L. The DIP Lender will commit to providing DIP Financing in an amount necessary to fund both the Debtor's operations and the administrative costs of the Chapter 11 Case subject to and as set forth in an agreed-upon budget submitted by the Debtor and reasonably acceptable to the DIP Lender, in an amount not exceeding $500,000 (the "**Stated Principal Amount**"), upon the terms and conditions set forth herein. Accordingly, after considering all of its practical alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of this DIP Order and the DIP Documents represents the best financing currently available to the Debtor.

M. The security interests and liens granted to the DIP Lender pursuant to this DIP Order are appropriate under sections 364(c)(1), 364(c)(2) and 364(d) of the Bankruptcy Code because, among other things: such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtor's estate.

N. Based on the record presented to this Court by the Debtor, the DIP Financing and use of Cash Collateral have been negotiated in good faith and at arm's length between the Debtor

and the DIP Lender and any credit extended and loans made to the Debtor by the DIP Lender pursuant to the DIP Order, and the DIP Documents (the "**DIP Obligations**") shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of, section 364(e) of the Bankruptcy Code and the DIP Lender shall have all of the protections thereunder.

O.     Based on the record before this Court, it appears that the terms of this DIP Order, including, without limitation, the terms of the DIP Financing are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

P.     The Debtor has requested entry of this DIP Order. The permission granted herein to use Cash Collateral and obtain funds under the DIP Financing is necessary to avoid immediate and irreparable harm to the estate. This Court concludes that entry of this DIP Order is in the best interests of the Debtor and its estate as its implementation will, among other things, enhance the prospects for a successful completion of the Chapter 11 Case.

Q.     Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, DETERMINED AND DECREED THAT:[2]**

1.     <u>Motion Granted</u>. The Motion is granted on the terms and conditions set forth in this DIP Order, with the foregoing findings incorporated herein by reference. Any objections to the

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

4831-6357-4463, v. 6

Motion that have not previously been withdrawn or resolved are hereby overruled. This DIP Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry.

2.      _Authorizations_. The Debtor is hereby authorized to execute and enter into the DIP Documents. The DIP Term Sheet, the other DIP Documents and this DIP Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lender as described herein; _provided_ that in the event of a conflict between the DIP Documents and the DIP Order, the DIP Order shall control. The Debtor is hereby authorized to borrow money pursuant to the DIP Term Sheet up to the Stated Principal Amount.

3.      The DIP Financing may be used in accordance with the terms of this DIP Order and the DIP Term Sheet (and subject to the Budget (defined below)) to fund the day-to-day working capital needs of the Debtor's operations and the chapter 11 administrative expenses incurred during the pendency of the Chapter 11 Case and to allow the Debtor, if subsequently approved by the Court, to confirm a chapter 11 plan.

4.      In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), that may be reasonably required to ensure the performance of the Debtor's obligations under the DIP Financing, including, without limitation:

(i)      the execution, delivery and performance of necessary documents related to the DIP Financing , including, without limitation, the DIP Term Sheet, a credit agreement consistent with the DIP Term Sheet, any security and pledge agreements, and any mortgages contemplated thereby (the "**DIP Documents**");

9

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtor and the DIP Lender may agree; *provided,* that written notice of any material modification or amendment to the DIP Documents shall be filed on the docket of the Chapter 11 Case and shall be served upon (i) the Debtor's twenty (20) largest unsecured creditors, (ii) the U.S. Trustee, (iii) the Subchapter V Trustee, (iv) counsel to the Debtor, and (v) counsel to the DIP Lender (collectively, the "**Notice Parties**") each of whom shall have ten (10) days from the date of service of such notice within which to object in writing to such modification or amendment. If any Notice Party (or any other party in interest with requisite standing) timely objects to any such material modification or amendment to the DIP Documents, such modification or amendment shall only be effective pursuant to an order of this Court; and

(iii)    the performance of all other acts required under or in connection with the DIP Documents.

5.    Upon execution and delivery of the DIP Term Sheet and the other DIP Documents, such DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor in accordance with their respective terms and the terms of this DIP Order for all purposes during the Chapter 11 Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any such case. No obligation, payment, transfer or grant of security under the DIP Term Sheet, the other DIP Documents or this DIP Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549

of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.      Borrowing; Use of Cash Collateral. Subject to the budget attached as Exhibit A to the DIP Term Sheet (as modified from time to time with the written consent of the DIP Lender in its sole discretion, but without need for further Court order, the "**Budget**") and solely in compliance therewith and subject further to the terms and conditions of this DIP Order and the DIP Documents, (a) the DIP Lender will provide the DIP Financing in accordance with the terms of the DIP Documents, and (b) the Debtor is authorized to use Cash Collateral in accordance with the terms of this DIP Order.

7.      Interest, Fees, Costs and Expenses. The DIP Obligations shall bear interest at an interest rate of five percent (5%) per annum as provided in the DIP Term Sheet. After an Event of Default (as described below), the interest shall accrue at an interest rate of seven percent (7%) per annum payable monthly as provided in the DIP Term Sheet.

8.      Event of Default. Each of the following events, unless waived by the DIP Lender in writing, shall constitute an "**Event of Default**":

(i)     the Debtor (A) fails to pay any payment (whether principal, interest, or otherwise) when such amount becomes due and payable under the DIP Term Sheet or (B) defaults in the due performance or observance of any other term, covenant, or agreement contained in the DIP Term Sheet (and, if such default is capable of being remedied, it has not been remedied within the cure period set forth in the DIP Term Sheet or, if no such cure period is provided, it has not been remedied to the reasonable satisfaction of the DIP Lender five (5) business days following written notice to the Debtor of the occurrence of such event of default);

(ii)    any representation, warranty, or statement made by the Debtor herein or in the DIP Term Sheet or in any certificate delivered in connection with the DIP Term Sheet shall prove to be untrue in any material respect on the date on which made or deemed made;

11

(iii)    the security interest granted to the DIP Lender shall cease to be in full force and effect, or shall cease to create a perfected security interest in, and lien on, the DIP Collateral (as defined below) purported to be created thereby;

(iv)    the DIP Term Sheet is or becomes invalid, ineffective or unenforceable against the Debtor, in whole or in part, or the Debtor so asserts or at any time denies the liability or the DIP Obligations under the DIP Term Sheet;

(v)    the Court shall enter an order dismissing the Chapter 11 Case, or converting it to a case under Chapter 7, or converting the Chapter 11 Case from a case proceeding under subchapter V of chapter 11 of the Bankruptcy Code, or any other chapter of the Bankruptcy Code, or appointing a trustee or other responsible officer or an examiner with enlarged powers relating to the operation of the Debtor's business (beyond those set forth in sections 1106(a)(3) or (4) of the Bankruptcy Code) under section 1104 of the Bankruptcy Code, in each case, without the consent of the DIP Lender in its sole discretion;

(vi)    the Court shall enter an order granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code authorizing an action by a lienholder (other than the DIP Lender) with respect to assets of the Debtor on which the lienholder has a lien with an aggregate value in excess of $50,000;

(vii)    the Debtor shall seek to, or shall support any other person's motion to, disallow in whole or in part the DIP Obligations or to challenge the validity, priority, or enforceability of the DIP Liens and superpriority claims hereunder;

(viii)    a debtor-in-possession financing order shall be entered in form and substance that is not acceptable to the DIP Lender in its reasonable discretion or from and after the date of entry thereof, the DIP Order shall cease to be in full force and effect or shall have been vacated, stayed, reversed, modified or amended (or the Debtor shall take any step to accomplish any of the foregoing) without the consent of the DIP Lender in its sole discretion;

(ix)    the Debtor shall make any payments on any indebtedness that arose before the Petition Date other than as provided in the Budget or otherwise consented to by the DIP Lender in its sole discretion;

(x)    the Debtor shall be in breach or shall fail to comply with the terms of the DIP Order or the Plan, in any material respect;

(xi)    the DIP Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender in its sole discretion;

(xii)    the DIP Term Sheet or any other DIP Document shall cease, for any reason, to be in full force and effect or the Debtor shall so assert in writing, or the DIP Liens shall cease to be effective and perfected with respect to any material item of DIP

12

Collateral (as defined below) described therein with the priority purported to be created by the DIP Documents;

(xiii)  the Debtor shall fail to provide all information, approvals, documents or other instruments as the DIP Lender may reasonably request, and as are customary for postpetition lenders or plan sponsors to request;

(xiv)  an application or motion shall be filed by the Debtor for the approval of postpetition financing from any party other than the DIP Lender, including financing that provides for superpriority claims or priming liens on any of the DIP Lender's collateral without the written consent of the DIP Lender in its sole discretion;

(xv)  entry of an order terminating the right of the Debtor to use the DIP Financing; or

(xvi)  the Debtor's failure to comply with the Budget.

9.      Upon the occurrence of an Event of Default and after five (5) business days' written notice by the DIP Lender to the Notice Parties (the "**Default Notice Period**"), the automatic stay shall terminate, and the DIP Lender shall be permitted to exercise any remedies permitted by law, including any of the following actions, unless the Court determines during the Default Notice Period that an Event of Default has not occurred:

(i)    declare all or any portion of the outstanding DIP Obligations due and payable, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by the Debtor;

(ii)   enforce all liens and security interests in the DIP Collateral, including Cash Collateral;

(iii)  institute proceedings to enforce payment of such DIP Obligations;

(iv)   terminate the obligation of the DIP Lender to make Loans; and

(v)    exercise any other remedies and take any other actions available to it at law, in equity, under the DIP Term Sheet, the Bankruptcy Code, other applicable law or pursuant to this DIP Order;

4831-6357-4463, v. 6

*provided*, *however,* that the DIP Lender shall continue to fund the Debtor's operations, pursuant to the Budget, through the Default Notice Period, including, but not limited to, the funding of the Carve-Out (as defined herein).

10.    <u>Termination of the DIP Financing and Use of Cash Collateral</u>. Except with respect to the payment of the Carve-Out (as defined herein), the DIP Lender's agreement to provide the DIP Financing in accordance with the DIP Documents and the Debtor's authorization to use Cash Collateral shall immediately and automatically terminate (except as the DIP Lender may otherwise agree in writing in its reasonable discretion), upon the earliest to occur of any of the following (each, a "**Termination Date**"):

(i)     May 9, 2021;

(ii)    the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations;

(iii)   the entry of an order by the Court granting a motion by the Debtor to obtain additional financing from a party other than DIP Lender under section 363 or 364 of the Bankruptcy Code unless the proceeds from such financing are used to immediately repay in cash the DIP Obligations or unless such financing is subordinate to the DIP Obligations and consented to in writing by the DIP Lender (which consent may be withheld in its reasonable discretion);

(iv)    the closing of the sale of substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code;

(v)     the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case to a case under chapter 7 or a conversion of the Chapter 11 Case from a case under subchapter V of chapter 11 of the Bankruptcy Code;

(vi)    any DIP Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender (which consent may be withheld in its reasonable discretion);

(vii)   the Effective Date of the Plan; or

(viii)  upon five (5) business days' written notice of any Event of Default.

11.     <u>Superpriority Claims</u>. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of
the DIP Obligations shall constitute allowed senior administrative expense claims against the
Debtor (the "<u>Superpriority Claims</u>") with priority over any and all administrative expenses,
adequate protection claims, diminution claims and all other claims against the Debtor's estate, now
existing or hereafter arising, of any kind whatsoever, including, without limitation, all
administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,
and over any and all administrative expenses or other claims arising under sections 105, 326, 328,
330, 331, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not
such expenses or claims may become secured by a judgment lien or other non-consensual lien,
levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the
Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the
Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition
property of the Debtor and all proceeds thereof, subject only to the Carve-Out, to the extent
specifically provided for herein.

12.     <u>Carve-Out</u>. The liens and claims of or granted to the DIP Lender shall be subject
and subordinate to the payment, without duplication, of the following fees and claims (the amounts
set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**"): (a)
all allowed fees and expenses of attorneys, investment bankers and financial advisors (collectively,
the "**Estate Professionals**") employed by the Debtor or its estate, including the Subchapter V
Trustee, pursuant to sections 327 and 328 of the Bankruptcy Code, subject to the Budget, that
accrued prior to the Termination Date solely to the extent set forth in (and limited by) the Budget;
and (b) all fees required to be paid to the clerk of this Court up to the Termination Date.  In the
event the DIP Financing is terminated and notice of the Termination Date is provided, the DIP

Lender will fund the Carve-Out Amount to the Debtor as needed to pay any fees and expenses of Estate Professionals that the Debtor is authorized to pay pursuant to an interim compensation or other order entered by the Court. Notwithstanding any other provision of this DIP Order (including this paragraph above), the Court retains and shall have all authority to consider and approve all applications for fees and expenses by any Estate Professionals, including for reasonableness thereof, or on any other basis under the Bankruptcy Code or Bankruptcy Rules, or otherwise under applicable law, and all funds that may be set aside for or applied to any such amounts or obligations shall remain fully subject to disgorgement or reallocation, based on the Court's orders exercising such reserved rights as described previously in this sentence. All professionals described in the preceding sentence shall be and remain subject to the jurisdiction of this Court for the purposes described in the preceding sentence.

13.     Subject to the entry of the DIP Order, notwithstanding the foregoing, none of the Carve-Out, proceeds from the DIP Financing or Cash Collateral may be used (a) to investigate or challenge in any respect to the validity, perfection, priority, extent or enforceability of the DIP Liens(as defined below), (b) to delay, challenge or impede any rights of the DIP Lender under any of the DIP Documents, or (c) to pursue any claims or causes of action of any kind against the DIP Lender (except for purposes of enforcement of the DIP Orders or the DIP Term Sheet). Nothing herein shall restrict the ability of any other party to investigate or object to a disclosure statement or a plan of reorganization.

14.     Subject to the terms of this DIP Order and any compensation order entered by the Court, the DIP Lender shall be obligated to fund and the Debtor shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Estate Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code, as the same may be

16

due and payable, that constitute pre-Termination Date expenses and such payments shall not reduce or be deemed to reduce the post-Termination Date fees and expenses.

15.     <u>Liens to Secure the DIP Obligations</u>. For avoidance of any doubt, the lien granted and approved as a result of the entry of this DIP Order shall only extend to the amount of DIP funds actually borrowed.   As security for the DIP Obligations, effective and perfected upon the date of this DIP Order and without the necessity of the execution, recordation of filings by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of or over any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtor to the DIP Lender for its benefit (all property identified in clauses (a) and (b) below being collectively referred to as the "**DIP Collateral**"), subject only to the payment of the Carve-Out (all such liens and security interests granted to the DIP Lender for its benefit pursuant to this DIP Order and the DIP Documents, the "**DIP Liens**"):

(a)     *First Lien on All Property.* Pursuant to sections 364(c)(1), 364(c)(2) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and postpetition property of the Debtor or its estate, whether existing on the Petition Date or thereafter acquired (collectively, "<u>Property</u>"), including, without limitation, any such encumbered Cash Collateral of the Debtor and any investment of such Cash Collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property,  commercial tort claims, equity interests, and the proceeds of all the

17

foregoing; *provided, however*, that the DIP Liens shall not extend to or burden the claims and causes of action of the Debtor's estate under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code or the proceeds thereof, and *provided further,* that the DIP Liens shall be subject and subordinate to any inchoate governmental claims or statutory liens in existence as of the Petition Date.

16.    <u>Perfection of DIP Liens</u>. The DIP Liens shall be, and hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; *provided, however*, that notwithstanding the provisions of section 362 of the Bankruptcy Code, (a) the DIP Lender, may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lender may require, and (b) the DIP Lender may require the Debtor to deliver to the DIP Lender, any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor shall cooperate and comply therewith. If the DIP Lender, in its reasonable discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages, amendments to mortgages or other documents or instruments with respect to such security interests and liens, or if the DIP Lender, in accordance with the DIP Documents or this DIP Order, elects to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing

18

statements, mortgages, amendments to mortgages or similar documents or instruments or such

taking of possession shall be deemed to have been filed, recorded or taken in the Chapter 11 Case

as of the commencement of the Chapter 11 Case but with the priorities set forth herein. The DIP

Lender may (in its reasonable discretion), but shall not be required to, file a certified copy of this

DIP Order in any filing or recording office in any county or other jurisdiction in which the Debtor

has real or personal property and such filing or recording shall constitute further evidence of the

DIP Lender's interest in the DIP Collateral.

17.    <u>Indemnity</u>. The Debtor agrees to indemnify, defend, and hold harmless the DIP

Lender, and its officers, directors, employees, agents, advisors, attorneys, and representatives from

and against all losses, claims, liabilities, damages, and expenses (including, without limitation,

fees and expenses of counsels) for any actions, omissions, or events arising from or directly related

to the DIP Financing, except to the extent resulting from the DIP Lender's gross negligence or

willful misconduct.

18.    <u>Preservation of Rights Granted Under this DIP Order</u>. No claim or lien having a

priority superior to or *pari passu* with those granted by the DIP Orders to the DIP Lender shall be

granted or allowed until the occurrence of (a) the payment in full in cash of immediately available

funds of all of the DIP Obligations, (b) the termination or expiration of all commitments to extend

credit to the Debtor under the DIP Documents, and (c) the cash collateralization in respect of any

asserted claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs,

penalties, or damages for which the DIP Lender or Prepetition Lender may be entitled to

indemnification by the Debtor ("**Paid in Full**"). While any portion of the DIP Financing (or any

refinancing thereof) or the DIP Obligations remain outstanding and the commitments thereunder

have not been terminated, the DIP Liens shall not be (x) subject or junior to any lien or security

interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (y) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise except as provided in this DIP Order.

19.     If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is entered at any time prior to the DIP Obligations being Paid in Full, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims and DIP Liens granted to the DIP Lender shall continue in full force and effect and shall maintain their priorities as provided in the DIP Orders until all DIP Obligations have been indefeasibly Paid in Full (and that such Superpriority Claims, and DIP Liens, shall, notwithstanding such dismissal, remain binding on all parties-in-interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

20.     If any or all of the provisions of this DIP Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of the Superpriority Claims, DIP Liens and Adequate Protection Obligations granted hereby with respect to any DIP Obligations. To the extent permitted by applicable law, notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral or DIP Obligations incurred by the Debtor or its estate prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of the DIP Orders, and the DIP

20

Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this DIP Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral and the DIP Obligations.

21.     Except as expressly provided in the DIP Orders or in the DIP Documents, or until the DIP Obligations are Paid in Full, the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of the DIP Orders and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (a) the entry of an order converting the Chapter 11 Case to a case under chapter 7, or dismissing the Chapter 11 Case or (b) the entry of an order confirming a plan of reorganization in the Chapter 11 Case (other than a plan of reorganization which is consistent with the terms of the Plan) and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor waives any discharge as to any remaining DIP Obligations. The terms and provisions of the DIP Orders and the DIP Documents shall continue in the Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this DIP Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are Paid in Full.

22.     Treatment of DIP Obligations in the Plan. Notwithstanding anything to the contrary in the DIP Orders or in the DIP Documents, any plan of reorganization proposed by the Debtor shall provide for the treatment of the DIP Obligations, the DIP Liens and the Superpriority Claim on terms that are consistent with the terms of the Plan.

23.     Right to Credit Bid. Subject to section 363(k) of the Bankruptcy Code and entry of a Final DIP Order, the DIP Lender shall have the right to "credit bid" the full amount of its claims in connection with any sale of all or any portion of the Debtor's assets, including, without

limitation, a sale transaction under section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

24. <u>Insurance and Taxes</u>. The Debtor shall maintain insurance on all insurable property now or hereafter owned against such risks and to the extent customary in its industry. The Debtor shall further maintain or cause to be maintained general liability and worker's compensation insurance in amounts customary in its industry. The Debtor shall provide to the DIP Lender the number(s) of any and all insurance policies in effect, the names, addresses, and contact persons of any entities issuing such insurance and a summary of the terms and payment arrangement for any such insurance policies. The DIP Lender shall be named the loss payee on such insurance policies.

25. <u>Financial Reporting</u>. The Debtor shall provide any reporting provided for under the DIP Term Sheet and the Prepetition Loan Documents to the DIP Lender.

26. <u>Covenants</u>. Unless otherwise modified pursuant to this DIP Order, the Debtor acknowledges and agrees that it shall cause the timely compliance with all of the covenants set forth in this DIP Order and the DIP Documents.

27. <u>No Modification of DIP Orders</u>. The Debtor shall not, without the DIP Lender's prior written consent (which shall be given or refused in the DIP Lender's sole discretion) seek to modify, vacate or amend the DIP Orders or any DIP Documents.

28. <u>Prepetition Lender's Rights</u>. Notwithstanding anything to the contrary contained in the  Interim DIP Order, the Prepetition Lender shall not be entitled to the benefit of any of the stipulations, rights or protections set out in that order which are not expressly set forth in this Final Order..

29.     <u>Binding Effect on Successors and Assigns</u>. The DIP Documents and the provisions of the DIP Order, including all findings herein except for those set forth in paragraph J herein, shall be binding upon all parties-in-interest in the Subchapter V of Chapter 11 Case, including, without limitation, the Debtor, the Prepetition Lender, and the DIP Lender, but shall not be binding upon each of their respective successors and assigns, including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender, the Debtor, and each of their respective successors and assigns, *provided, however,* that the DIP Lender shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for the estate of the Debtor. In determining to make any loan (whether under the DIP Promissory Note or otherwise) or permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the DIP Orders or the DIP Documents, the DIP Lender shall not be deemed (i) to be in control of the operations of the Debtor, (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate or (iii) to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

30.     <u>Effectiveness</u>. This DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules

4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, the DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this DIP Order.

31.    Waiver of any Applicable Stay. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this DIP Order.

32.    Timeliness. Time is of the essence with respect to all performance required by this DIP Order.

33.    Objections Overruled or Withdrawn. All objections to the entry of the DIP Order have been withdrawn or are hereby overruled.

34.    Controlling Effect of DIP Order. To the extent any provisions in this DIP Order conflict with any provisions of the Motion, the Interim DIP Order or any DIP Document the provisions of this DIP Order shall control.

35.    Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this DIP Order according to its terms.

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

Dated: January 14th, 2021
Wilmington, Delaware

24