# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MEDIA LODGE, INC., | ) | Case No. 20-12969 (JTD) |
| | ) | |
| Media Lodge. | ) | |
| | ) | |
| MEDIA LODGE, INC., | ) | Adv. Pro. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GUNUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ADVERSARY COMPLAINT

Media Lodge, Inc., debtor and debtor-in-possession ("Media Lodge" or "Plaintiff"), in the above-captioned proceeding under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), hereby files this Adversary Complaint in order to subordinate, pursuant to § 510(b) of the Bankruptcy Code, the claim of GunUp, Inc. ("GunUp" or "Defendant"), and, in support thereof, respectfully states the following against the Defendant:

### JURISDICTION AND VENUE

1.  The Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (K) and, pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiff

consents to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue of these proceedings and this Complaint is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

3. Plaintiff is a Delaware Corporation with its principal place of business in the State of Georgia and is a debtor-in-possession in the above-captioned proceeding under chapter 11 of title 11 of the United States Code.

4. The Defendant is a Delaware corporation with its principal place of business in the State of Washington.

## BACKGROUND

**A.   General Background**

5. Media Lodge is an advertising brokerage. Website owners contract with Media Lodge to sell advertising space on their websites and related media. In exchange, Media Lodge remits a share of the advertising revenue. In large part, the advertisements are in the form of banner advertisements—ads in the form of images, email ads and video ads generally 15 to 30 seconds in length.

6. Media Lodge was created in 2014 to manage the sale of advertising on GunBroker.com, and it has the exclusive right to sell advertising on that website. Media Lodge and GunBroker.com are sister companies; GunBroker.com is owned by IA Tech, LLC ("IA Tech"), and, before the merger with Defendant, IA Tech was also Media Lodge's sole owner. GunBroker.com is the world's largest online-auction website for firearms and hunting and

shooting gear.  Until 2015, Media Lodge placed advertisements only on GunBroker.com.

7. On November 10, 2020 (the "Petition Date"), Media Lodge filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

### B. The Washington Action

8. In late 2014, Media Lodge sought to expand advertising beyond GunBroker.com and began discussing a merger with GunUp Publishing Inc. who ran a similar business.  The parties ultimately agreed on a transaction in which GunUp Publishing Inc. would merge with Media Lodge.

9. On or about March 31, 2015, Media Lodge purchased GunUp Publishing Inc. with a mixture of cash and Stock in Media Lodge pursuant to that certain Agreement of Merger and Plan of Reorganization by and among Media Lodge, MLA Acquisition Corp., GunUp and GunUp Publishing Inc. (the "Merger Agreement").  A true and correct copy of the Merger Agreement is attached hereto, and incorporated herein by reference, as Exhibit A.

10. Pursuant to the Merger Agreement, GunUp was contributing all of the equity interests in GunUp Publishing Inc.  In exchange, GunUp was to receive $1 million in cash and 845,986 shares of common stock in Media Lodge.  The consideration to be paid to GunUp was based on Media Lodge being valued at $38.25 million and shares of GunUp Publishing Inc. being valued at $4 million in the aggregate.  The common stock to be transferred under the Merger Agreement would have resulted in GunUp owning 7.8% of Media Lodge.

11. GunUp was to receive the consideration in stages.  The stock consideration was to be paid in the form of: (i) 281,996 shares on the Closing Date; (ii) 281,995 shares on September 15, 2016; and (iii) 281,995 shares on March 15, 2018.  The cash consideration was to be paid as follows: (i) on the Closing Date, $300,000, less the amount of certain outstanding liabilities; (ii)

Case 20-12969-JTD    Doc 106    Filed 03/15/21    Page 4 of 9

$200,000 on July 1, 2015; (iii) $250,000 on May 15, 2016; and (iv) $250,000 on May 15, 2017. In 2015, Media Lodge made the first two cash payments to GunUp totaling $500,000.

12. Media Lodge subsequently determined that the value of GunUp's assets was far less than what GunUp represented them to be and that GunUp had made a number of other material misrepresentations regarding its operations. As a result, Media Lodge did not make the payment which would have been due on May 15, 2016, and Media Lodge did not make any of the remaining transfers of cash or common stock to GunUp.

13. On June 23, 2016, GunUp commenced an action in the Superior Court for the State of Washington, in and for the County of King, styled *GunUp, Inc. v. Media Lodge, Inc., et al., Case No. 16-2-15005-5 SEA*, against, among others, Media Lodge seeking rescissory damages arising from the securities transaction reflected by the Merger Agreement (the "Washington Action"). A true and correct copy of GunUp's complaint in the Washington Action (the "GunUp Complaint") is attached hereto, and incorporated herein by reference, as Exhibit B.

14. On October 23, 2016, GunUp subsequently amended the complaint in the Washington Action to add claims under the Washington State Securities Act ("WSSA") against Media Lodge, as well as to add IA Tech, Susan Lokey ("Lokey"), and then-directors Jeff Siegel ("Siegel"), Steve Urvan, and Kevin O'Connell as additional defendants.[1]

15. Media Lodge also asserted counterclaims against GunUp and third-party claims against GunUp's director, Daniel M. Hall ("Hall").

16. On August 17, 2018, all parties filed motions for summary judgment seeking affirmative judgments in their favor on claims each party asserted and seeking judgments in their favor on claims asserted against them.

---

[1] The claims against IA Tech and Lokey were dismissed without prejudice for lack of personal jurisdiction.

4

17.     Specifically, with respect to Media Lodge, GunUp requested a judgment that Media Lodge and Siegel had violated the WSSA and that GunUp was entitled to rescission of the Merger Agreement.

18.     On October 29, 2018, the Washington trial court issued an order granting GunUp's and Hall's motions for summary judgment and denying Media Lodge's and Siegel's summary judgment motions (the "Summary Judgment Order"). A true and correct copy of the Summary Judgment Order is attached hereto, and incorporated herein by reference, as Exhibit C.

19.     In the Summary Judgment Order, the Washington trial court found that "[a]s a matter of law, Media Lodge and Mr. Siegel are liable to GunUp for violating the Washington State Securities Act ("WSSA"), RCW 21.20.010(2), and RCW 21.20.430(1), (3)." See, Exhibit C, F.2.

20.     The Washington trial court further found that "[a]s a matter of law, Media Lodge breached the merger agreement at issue in this case (the "Agreement") by failing to make the May 15, 2016 and May 15, 2017 cash payments and the September 15, 2016 and March 15, 2018 stock transfers required by Section 1.06 of the Agreement." See, Exhibit C, F.3.

21.     Following a subsequent trial held for the purpose of valuing GunUp's rescissory damages arising from its purchase of Media Lodge securities pursuant to the Merger Agreement and Media Lodge's alleged violations of Washington securities law, GunUp obtained a judgment against Media Lodge and Siegel in the amount of $1,240,852, along with $1,094,589.71 in attorney's fees and $138,956.13 in costs in a supplemental judgment. Including accrued interest, the Washington trial court entered a final judgment in the amount of $2,478,990.77 (with additional interest and costs, the "Judgment"). A true and correct copy of the Judgment is attached hereto, and incorporated herein by reference, as Exhibit D.

22. The Judgment provides that "[j]udgment is entered for GunUp and against Media Lodge and Mr. Siegel on GunUp's claims that Media Lodge and Mr. Siegel violated the Washington State Securities Act. RCW 21.20.010(2) and RCW 21.20.430(1), (3)." See Judgment 1(a)(i).

23. Underlying the Judgment was the Washington Court's findings of facts and conclusions of law dated July 8, 2019 (the "FFCL"). A true and correct copy of the FFCL is attached hereto, and incorporated herein by reference, as Exhibit E. In the FFCL, the Washington Court noted that "[t]he only issues remaining for trial concerned GunUp's recessionary [sic] remedy under the WSSA." See, FFCL at 2. The Washington Court determined that "GunUp is entitled to recessionary [sic] relief for Media Lodge's and Mr. Siegel's WSSA violations…." See, FCCL at 19.

24. With the Washington Court having determined that GunUp was entitled to rescissory damages in connection with its purchase of Media Lodge stock under the Merger Agreement, the Judgment further provides that "Judgment is entered for GunUp and against Media Lodge on GunUp's claim that Media Lodge breached the parties' merger agreement." See Judgment 1(a)(ii).

25. The Judgment represents the alleged value of GunUp's alleged interest in Media Lodge, to which it alleged it is entitled to in the Washington Action in the form of damages for rescission in connection with GunUp's acquisition of equity interests in Media Lodge.

26. Media Lodge and Siegel timely appealed the Judgment to the Court of Appeals, Division I of the State of Washington, Case No. 80766-8 (the "Appeal"), which challenged the trial court's entry of summary judgment on the WSSA claims as well as the court's calculation of the Judgment.

27. On March 4, 2021, GunUp filed its corrected answering brief (the "GunUp Brief") in the Appeal, in which GunUp refers to its award of damages as damages for rescission. A true and correct copy of the GunUp Brief is attached hereto, and incorporated herein by reference, as Exhibit F. GunUp acknowledges at page 4 of the GunUp Brief that the damages awarded to it by the Washington Court were for rescission ("The trial court did not err in entering findings of fact 88 and 101 or in awarding damages for rescission.")

### C. The GunUp Claim

28. On January 11, 2021, GunUp filed proof of claim 3-1 in Media Lodge's chapter 11 proceeding (the "GunUp Claim").

29. The GunUp Claim arises solely from the Judgment and asserts a general unsecured claim in the amount of $2,673,883.59. The GunUp Claim asserts as its basis the "Judgment entered against Media Lodge, Inc. in favor of GunUp, Inc." GunUp holds no other claim against Media Lodge.

### COUNT I - SUBORDINATION OF CLAIM - 11 U.S.C. 510(b)

30. Media Lodge repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

31. The Bankruptcy Code requires the subordination of certain types of claims based upon the purchase or sale of a security.

32. Section 510(b) of the Bankruptcy Code specifically provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security…shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C.§ 510(b).

33. The essential nature of the Merger Agreement is that GunUp sold its stock in GunUp Publishing Inc. to Media Lodge in exchange for cash and Media Lodge common stock.

34. GunUp's claim arises from its alleged purchase of such a security; namely, the sale of GunUp Publishing Inc. common stock and the purchase of Media Lodge common stock. See Exhibit A.

35. Specifically, GunUp admits that Media Lodge purchased GunUp with a "mixture of Media Lodge stock and cash." Ex. B, ¶ 13. As a result of the merger, GunUp was to acquire 845,986 shares of Media Lodge.

36. The Judgment entered, which forms the basis of the GunUp Claim, was based upon the alleged value of Defendant's alleged equity interest in Media Lodge. The trial court specifically stated that it was a judgment for rescission of the Merger Agreement, a securities transaction. See, FFCL at 19.

37. Given that the Judgment relates directly to stock conveyed to GunUp by Media Lodge and Media Lodge's alleged fraudulent representations in connection with the Merger Agreement, these claims plainly arise "from recission of a purchase or sale of a security of [Media Lodge] or of an affiliate of [Media Lodge], for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under § 510 on account of such a claim." 11 U.S.C. § 510(b).

38. As a result, the GunUp Claim "shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock. " 11 U.S.C. § 510(b).

WHEREFORE, Media Lodge, Inc. requests this honorable Court issue an order subordinating the GunUp Claim to all other allowed claims of Media Lodge in this chapter 11 case, including allowed general unsecured claims, and granting such other and further relief as this Court may deem just and proper.

Dated: March 15, 2021      GELLERT SCALI BUSENKELL & BROWN LLC

/*s/ Michael Busenkell*/
Michael Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
Bradley P. Lehman (DE 5921)
1201 North Orange Street, 3rd Floor
Wilmington, DE 19801
Telephone: 302-425-5800
Email: mbusenkell@gsbblaw.com
       rgellert@gsbblaw.com
       blehman@gsbblaw.com

*Counsel to Plaintiff Media Lodge, Inc.*