**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MEDIA LODGE, INC.,[1] | ) | Case No. 20-12969 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**FOURTH AMENDED PLAN OF**
**REORGANIZATION OF MEDIA LODGE, INC.**

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR SEPTEMBER 15, 2021 AT 9:30 AM (ET) IN COURTROOM No. 5 AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated:  September 10, 2021
Wilmington, Delaware

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
1201 N. Orange St., Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
rgellert@gsbblaw.com

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan provides for the full payment of administrative, and priority claims.  General unsecured claims shall be paid in full no later than (60) days following the entry of an order approving this Plan. The Plan further provides for the payment to the Class 3 Creditor of $1,000,000 on account of its claims and the release of Class 2 Claims in accordance with the GunUp Settlement Agreement. The following represents an estimate of the distribution of the Debtor's plan payments:

A. Administrative/Priority Claims

      1. Attorney's fees and Costs                         $300,000.00

      2.  Subchapter V Trustee fees                 $12,000.00

      3.  DIP Lender (Gemini)                     up to $500,000.00[1]

B. Total Distribution to Class 1 Creditors       $231,000.00

C. Total Distribution to Class 2 Creditors       $0.00

D. Total Distribution to Class 3 Creditors       $1,000,000.00

E.  Total Distribution to Class 4 Equity       $0.00

---

[1]    As of September 8, 2021, the Debtor owes $ $162,023.14 on account of the DIP Lender Claim.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1.    The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code. The classification of claims and proposed treatment within each class is as follows:

A.    **Administrative Priority**. Administrative Priority claims pursuant to § 507(a)(2) of the Bankruptcy Code who are treated as such in this Plan include the Subchapter V Trustee and Debtor's Counsel, Gellert Scali Busenkell & Brown, LLC. Any other parties claiming administrative expense priority shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date of the Plan. Administrative Priority Claims will be paid in full. Debtor estimates Administrative Priority Claims to total approximately $325,000.00.

B.    **DIP Lender Claims**: Upon confirmation of the Plan, the claims of Gemini Direct, LLC ("Gemini" or the "DIP Lender") as successor to Gemini Direct Investment, LLC ("GDI") pursuant to the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(2), 364(d)(1), 364(e) and 507 (I) Authorizing Debtor to (A) Obtain Post-Petition Secured Financing From Gemini Direct Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees and Charges; (II) Modifying the Automatic Stay and (III) Granting Certain Related Relief and term sheet attached thereto as Exhibit 1, dated January 14, 2021 [D.I. 90], as amended by the Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtors to Continue Using Cash Collateral Through July 25, 2021, and (III) Authorizing Change in DIP Lender [D.I. 168] under which the DIP Lender agreed to loan the Debtor up to $500,000 in post-petition financing (the "DIP Loan") will be refinanced with the DIP Lender issuing a new loan to the Debtor in an amount necessary to (i) repay the DIP Loan in full; and (ii) provide the reorganized

Debtor with a new $1,500,000 multi-draw facility (the "Exit Facility"). The Exit Facility shall bear interest at the rate of 7% per annum and shall be amortized over a sixty (60) month term as of the Effective Date. The Exit Facility will be guaranteed by the Debtor's subsidiaries, Media Lodge, LLC ("LLC Sub") and GunUp LLC ("Acquisition Sub," and with LLC Sub, the "Subsidiaries") and will be fully secured by a blanket lien upon all of the Debtor's and the Subsidiaries' assets. The DIP Lender's agreement to provide the Exit Facility is conditioned upon the GDI Claim (as defined below) being allowed as a Class 2 Claim. The Exit Facility is attached hereto as Exhibit G.

        C.    **Class 1 Unsecured Claims**.  Class 1 claims are holders of allowed General Unsecured Claims without Priority. Holders of Allowed General Unsecured Claims shall be paid in full by the Debtor no later than sixty (60) days following the entry of a final order of the Bankruptcy Court approving this Plan. The Debtor estimates the aggregate amount to be distributed to Holders of General Unsecured Claims to be approximately $231,000.00.

        D.    **Class 2 GDI Claim.**  Class 2 consists of  the allowed unsecured claim of Gemini in the amount of $9,382,132.00 (the "GDI Claim"). The GDI Claim arises out of a Secured Promissory Note originally in the amount of $2 million and payable to IA Tech, LLC ("IA Tech") and which was subsequently transferred to GDI and then Gemini (as described below). The remainder of the GDI Claim consists of intercompany advances made by IA Tech and then GDI after the indebtedness was transferred to GDI. The GDI Claim will be waived and released on the Effective Date.

        E.    **Class 3 – GunUp Claim**.  Class 3 consists of the GunUp Claim, which will be an allowed General Unsecured Claim in the amount of $1,000,000.  The GunUp Claim will be paid within fifteen (15) days after the Effective Date.

3

F. **Class 4 Common Stock Interests.** Class 4 consists of the stockholder of the Debtor. The Class 4 interest holder shall receive no payments but shall retain its ownership interest in the Debtor.

2. **Disputed Claims**

A. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order of the Bankruptcy Court and, either:

i. is a Proof of Claim that has been timely filed or deemed timely filed, and to which the Debtor or another party in interest has filed an objection, and/or has indicated that the Proof of Claim is disputed no later than sixty (60) days following the Effective Date of the Plan; or

ii. no Proof of Claim has been timely filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated; or

iii. the claim is subject to litigation in any appropriate forum.

B. **Delay of Distribution on a Disputed Claim**

No distribution will be made on a disputed claim unless and until the claim is allowed by a Final Order.

C. **Settlement of Disputed Claims**

The Debtor will have the power and authority to settle and compromise disputed claims only with court approval and in compliance with Federal Rule of Bankruptcy Procedure 9019.

3. **General**

The payments, distributions, and other treatments provided in respect of each Allowed Claim or Interest set forth herein shall be in complete satisfaction, discharge, and release of such Allowed Claim, except as otherwise expressly provided. Notwithstanding any other provision of

4

the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim or Interest which at such date or time is disputed, unliquidated, or contingent shall not be made until such Claim or Interest becomes an Allowed Claim or Allowed Interest, whereupon such payment and distributions shall be made promptly, together with any interest accrued thereon in accordance with the provisions of this Plan.

### PAYMENTS TO CREDITORS UNDER THE PLAN

Unless otherwise provided in this Plan, funds received by the Debtor or otherwise included in this Plan but not specifically disbursed directly to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1. Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid in full prior to the payment of all other claims.

2. Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code.

3. All other claims shall be paid in accordance with the Bankruptcy Code.

4. In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor shall retain the Debtor's interest in property of the estate.

### TRUSTEE COMPENSATION

The Trustee shall be paid for services rendered in this Chapter 11 case an Administrative Priority Claim under § 507 of the Bankruptcy Code and pursuant to Article V of this Plan. All fees and expenses requested by the Trustee are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code.

**ATTORNEY COMPENSATION**

The Debtor's attorneys, Gellert Scali Busenkell & Brown, LLC and appellate counsel, shall be paid for the services rendered to the Debtor herein as an Administrative Priority Claim under § 507 of the Bankruptcy Code and pursuant to Article V of this Plan. All fees and expenses requested by the Debtor's attorney are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code.

**ARTICLE 1**
**HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**

**1.1.    Nature of the Debtor's Business.**

1.      Debtor was created in 2014 to manage the sale of advertising on GunBroker.com, and it has the exclusive right to sell advertising on that website. Debtor and GunBroker.com were sister companies; GunBroker.com was owned by IA Tech, LLC, and, before the merger with GunUp, Inc. ("GunUp"), IA Tech was also Debtor's sole owner. GunBroker.com is the world's largest online-auction website for firearms and hunting and shooting gear. As of 2018, GunBroker.com had more than 3.5 million registered users and had sold more than $4 billion in merchandise. Until 2015, Debtor placed advertisements only on GunBroker.com.

2.      In late 2014, Debtor sought to expand advertising beyond GunBroker.com and began discussing a merger with GunUp who ran a similar business. The parties ultimately agreed on a transaction in which GunUp would merge with Debtor. The final merger agreement signed by the parties was dated March 31, 2015, and the transaction closed the following day. Under the agreement, Debtor was to pay GunUp $300,000 at closing and issue 281,996 shares of stock to GunUp. Debtor was scheduled to pay additional money as follows: $200,000 on July 1, 2015, and $250,000 on each of May 15, 2016, and May 15, 2017. In addition, Debtor was scheduled to issue 563,990 more shares of stock—half on each of September 15, 2016, and March 15, 2018.

3.      After the transaction closed, the Debtor and GunUp engaged in extensive litigation in the Washington Action over the value of the assets that each party contributed to the transaction, and other matters.

4.      On May 3, 2021, AMMO, Inc. ("AMMO") purchased the Gunbroker.com businesses. As part of that transaction, Gemini was formed to retain certain assets under the ownership of Mr. Urvan. Among those assets were (i) the equity interests in the Debtor; (ii) the GDI Claim; and (iii) the DIP Lender Claim.

**A. Debtor's Business Operations**

5.      Media Lodge is an advertising brokerage. Website owners contract with Media Lodge to sell advertising space on their websites and related media. In exchange, Media Lodge remits a share of the advertising revenue, plus management fees. In large part, the advertisements are in the form of *banner advertisements*—ads in the form of images.

6.      Media Lodge's right to sell advertising on GunBroker.com has no expiration date. Under an oral contract, Media Lodge bills the advertisers, collects all advertising revenue, and remits to GunBroker.com its share, plus a management fee. GunBroker.com's overall share is about 40% to 50% (with specific underlying percentages depending on the form of media) (compare revenue for *Banner Ads* with *Banner Exchange*).[2] GunBroker.com invoices Media Lodge monthly for its share of advertising revenue.

7.      In 2014, at Media Lodge's beginning, GunBroker.com received and deposited the advertiser payments in its bank account; thereafter, Media Lodge received the advertiser payments. But regardless of which entity received the payments, Media Lodge recorded 100% of the

---

[2] GunBroker.com's invoices and Media Lodge's financial statements refer to GunBroker.com's share as *Banner Exchange*.

advertising revenue and expenses on its books, listing the amounts due to GunBroker.com on an intercompany account. This was consistent with the oral contract and Generally Accepted Accounting Principles (GAAP).

8.        Led by CEO Jeff Siegel, Media Lodge quickly became successful, bringing in $1,833,674 in revenue in 2014 and over $3 million the following year. Setting aside the management fee it paid to its parent, IA Tech, Media Lodge essentially broke even in 2014 (add *Net Management Fee* of $376,535 to *Net Income* of negative $383,687.29). But, because Media Lodge in fact operated at a loss, IA Tech funded its operating shortfall with loans, recorded on the intercompany account.

9.        Media Lodge had four full-time employees and was a valuable company. Its assets included $429,991 in accounts receivable as of year-end 2014, that figure would grow to $973,138 by the end of the first quarter of 2015. Meanwhile, Media Lodge had $28,762 in cash.

10.        The Debtor's corporate headquarters is located at 11095 Viking Drive, Eden Prairie, MN 55344.

**B. Organizational Structure, Governance, and Current Management**

11.        The Debtor is wholly owned by Gemini, which is in turn wholly owned by Steve Urvan.

12.        The Debtor has two wholly owned subsidiaries:  LLC Sub and Acquisition Sub. LLC Sub is a non-debtor entity that Media Lodge, LLC that holds the contracts with third party publishers and partners for which the Media Lodge organization sells advertising. LLC Sub receives and books the ad revenue and pays the publisher/partner their cut of the revenue according to the terms of the contract with that publisher/partner. Acquisition Sub is a non-debtor entity that sells advertising for in-house and third party web sites, social media, email lists and other media.

The Debtor has a single member board of director comprised of Jeff Siegel. The officers of the Debtor include a President, Vice President and Secretary. The Debtor's' current management consists of Jeff Siegel, as CEO; and Susan Lokey, Managing Member and Secretary.

13.     The Debtor is a corporate entity organized under the laws of the State of Delaware. The Debtor's Chief Executive Officer at the time of the filing of this case was Jeff Siegel.

### C. Capital Structure

14.     As of the Petition Date, the Debtor was indebted to its ultimate parent, GDI, pursuant to that certain Secured Promissory Note dated March 31, 2015, originally between the Debtor and IA Tech and other intercompany advances made by IA Tech and then GDI in the aggregate amount of $9,382,132.  Neither IA Tech nor GDI ever perfected a security interest with respect to the Secured Promissory Note and the entirety of the obligation is unsecured.

15.     In addition, as of the Petition Date, the Debtor's other major creditor was GunUp, to whom the Debtor is obligated on a judgment in the face amount of $2,478,990.77 (the "Judgment") issued by the Superior Court for the State of Washington in and for King County in Case No. 16-2-15005-5 SEA. The Debtor disputes the court's findings in the Washington Action and has appealed the Judgment. On January 11, 2021, GunUp filed Claim No. 3-1 in the amount of $2,673,883.59 on account of the Judgment (the "GunUp Claim").

16.     As of the Petition Date, the Debtor's remaining obligations constituted unsecured debt of approximately $231,000 owed to trade creditors and intercompany claims of other affiliates.

### D. Circumstances Leading to Chapter 11 Filing.

17.     After the failed merger with GunUp, GunUp filed the Washington Action against the Debtor in June 2016. GunUp alleged multiple claims against Debtor, including breach of

contract. The parties filed cross-motions for summary judgment. GunUp sought a determination that Debtor had breached the merger agreement. GunUp also sought to dismiss Debtor's counterclaims and third-party claims. Meanwhile, Debtor moved for summary judgment, seeking dismissal of GunUp's claims and affirmative relief on its breach-of-contract counterclaim.

18.     The trial court granted GunUp's motions and denied Debtor's motions. The court determined as a matter of law that Debtor had made material misrepresentations to GunUp and failed to disclose material information to GunUp and granted rescission of the transaction. This meant that that GunUp would return to Debtor the shares of stock it received, and Debtor would compensate GunUp for the value of the consideration it gave for those shares.

19.     After a nine-day valuation trial, the court found that GunUp was worth $1.411 million as of March 2015. After applying a $500,000 credit for Media Lodge's payments to GunUp, the court entered a principal judgment of $911,000, plus 8% prejudgment interest, for a total judgment of $1,240,852.

20.     The court subsequently awarded GunUp $1,094,589.71 in attorney's fees and $138,956.13 in costs and entered a supplemental judgment. With accrued interest on the initial judgment, the supplemental judgment totaled $2,478,990.77.

21.     In July 2020, the Debtor timely appealed the Judgment to the Court of Appeals, Division I of the State of Washington, Case No. 80766-8 (the "Appeal"), which challenged the trial court's entry of the Judgment on a summary judgment basis as well as the court's calculation of damages.

22.     After the Debtor filed the Appeal, GunUp commenced garnishment actions against customers of Debtor's affiliate, Media Lodge, LLC ("LLC Sub") seeking to garnish funds that those customers owe to the Debtor.

23.     Since the filing of the of the Washington Action by GunUp, the Debtor has been significantly cash-flow negative, as legal fees and other litigation costs have far exceeded the Debtor's assets, which primarily consist of its equity interests in the Subsidiaries.  These excess costs have largely been funded by intercompany debt, which is reflected in the GDI Claim.

24.     GunUp also filed additional litigation seeking to recover from all of the Debtor's current and former directors in connection with the assertions directly at issue in the GunUp litigation. While these certain individuals are no longer directors of the Debtor, they continue to serve important roles for the Subsidiaries.  For these reasons, the Debtor sought bankruptcy protection so it may obtain post-petition funding in order to preserve the value of the Debtor's business operations in the ordinary course as well as to fund the appeal, which if successful, would reduce, if not eliminate, substantially all of the Debtor's non-intercompany debt.

### 1.2     Filing of the Debtor's Chapter 11 Case.

On November 10, 2020, the Debtor filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code.  The Chapter 11 case is pending in the Bankruptcy Court in the District of Delaware.

### 1.3     Debtor's Assets.

The Debtor's Assets as of the Petition Date were comprised of the following.

| Asset | Scheduled Value |
|---|---|
| Operating Account | $0.00 |
| EJJ Realty/NOAVA Deposit | $2,400.00 |
| Park Ridge Utilities Deposit | $350.00 |
| Ryan Companies US Deposit | $10,888.73 |
| SalesForce 1 Year License Deposit | $18,781.46 |
| JW Player 1 Year License (2/19 - 1/20) - Ad Ops Expense Deposit | $36,000.00 |
| Claudia Bircau - Outdoor Wire - 2020 Corporate Membership Industry Newsletter Deposit | $3,500.00 |
| Christen Everly - Flight for NRA Deposit | $583.80 |
| Sprout Social - Social Media Advertising Deposit | $2,608.96 |
| JW Player - Ad Operations Deposit | $21,392.30 |
| 360 Outdoors Media - In the Hunt 2020-2021 - 1/2 Payment Deposit | $25,000.00 |
| Karin Levin - Flight for NRA Deposit | $345.19 |
| Katey Powers - NRA Flight Deposit | $271.40 |

| | |
|---|---|
| Katey Powers - NRA Flight Deposit | $291.50 |
| Claudia Bircau - CoSchedule - Annual Fee Deposit | $1,440.00 |
| Zoom (JS Exp Rep) - Zoom annual fee Deposit | $159.53 |
| Surfwriter Inc (pd to CE) -Rev Cloud App Annual Subscription Deposit | $1,152.00 |
| JW Player - Ad Operations Deposit | $6,784.60 |
| 360 Outdoors Media -In the Hunt 2020-2021 - 1/2 Payment Deposit | $25,000.00 |
| Sprout Social - Social Media Advertising Deposit | $2,608.96 |
| Claudia Bircau (JW Player) - Quarterly ads Deposit | $21,392.30 |
| Thomas Merriott (Appriver) Host - annual subscription Deposit | $1,166.24 |
| Accounts Receivable | $155,151.37 |
| Office furniture | $0.00 |
| Website Design | $33,585.20 |
| Good Will - GunUp Publishing, Inc. | $476,043.58 |
| Net operating losses exist since date of inception | $0.00 |
| Misc. due from related party | $236.46 |
| Listrak Fees - 0920 - GunGenius | $50.63 |
| Listrak Fees - 0920 - FC | $12.53 |
| Listrak Fees - 0920 - 50CF | $98.27 |
| Listrak Fees - 0920 - Outdoors.com | $75.03 |
| **TOTAL** | **$847,370.04** |

### 1.4.  Debtor's Liabilities.

The Debtor's Liabilities as of the Petition Date are as follows:

| Creditor | Nature of Debt | Amount Owed |
|---|---|---|
| Gemini Direct Investments, LLC | Unsecured debt | $9,382,132.00 |
| 50 Campfires, LLC | Unsecured claim | $11,778.84 |
| Armory Forums LLC | Unsecured claim | $8,150.89 |
| Auction Armory | Unsecured claim | $14,040.54 |
| Austin Bhatt | Unsecured claim | $25.43 |
| AvidOutdoorsman | Unsecured claim | $2,073.66 |
| Catch All Media | Unsecured claim | $350.00 |
| Christina Myers | Unsecured claim | $100.00 |
| Christopher Serrano | Unsecured claim | $14,877.80 |
| Claudia Bircu | Unsecured claim | $440.26 |
| Clifton Reinwand | Unsecured claim | $1,925.00 |
| Comcast | Unsecured claim | $69.95 |
| Concealed Nation, LLC | Unsecured claim | $8,527.02 |
| Don Porter | Unsecured claim | $3,750.00 |
| Eric Cilli | Unsecured claim | $217.35 |
| FirstPro | Unsecured claim | $649.58 |
| Forward Media Partners, LLC | Unsecured claim | $991.41 |
| GATE 37B, LLC | Unsecured claim | $240.03 |
| Gordon & Rees LLP | Unsecured claim | $120.00 |
| GunGenius | Unsecured claim | $4,287.00 |
| GunUp, Inc. | Disputed unsecured claim pursuant to judgment | $2,478,990.77 |
| HuntStand (Terra Stride, Inc.) | Unsecured claim | $0.02 |
| i156 LLC (USA CARRY) | Unsecured claim | $585.00 |
| Jeff Siegel | Unsecured claim | $1,152.72 |
| Karen Lynn Pikula | Unsecured claim | $1,200.00 |
| Karlo Jularic | Unsecured claim | $82.51 |

| Listrak | Unsecured claim | $115,475.34 |
| Nelson Mullins Riley & Scarborough LLP | Unsecured claim | $717.30 |
| Outdoors.com | Unsecured claim | $11,323.12 |
| R.M. Warner, PLC | Unsecured claim | $10,129.88 |
| Registered Agent Solutions Inc. | Unsecured claim | $104.00 |
| Robert Todd Bergin - The Gun Wire | Unsecured claim | $1.36 |
| Ryan Companies US, Inc. | Unsecured claim | $1,598.77 |
| Scott Kenneth Ferguson | Unsecured claim | $219.67 |
| The Ardent Group | Unsecured claim | $920.17 |
| Wiggin and Dana LLP | Unsecured claim | $4,392.12 |
| **TOTAL** | | **$12,081,639.51** |

### 1.5.    Current and Historical Financial Conditions.

The Debtor's financial condition is reflected in the financial statement attached

hereto as Exhibit B.

### 1.6.    Significant Events During the Bankruptcy Case.

Since the Petition Date, the Debtor sought up to $500,000 in financing from GDI and

then Gemini, to finance the Debtor's post-petition operations pending the filing of this Plan. The

Debtor also retained Gellert Scali Busenkell & Brown, LLC as Debtor's counsel. Debtor filed its

Schedules of Assets and Liabilities and Statement of Financial Affairs on November 24, 2020.

The following pleadings have been filed by the Debtor to date:

| Pleading | Date Filed | Docket Number |
|---|---|---|
| Declaration of Jeff Siegel in Support of the Debtor's Petition and First Day Motions | 11/10/2020 | 4 |
| Motion of The Debtor for Entry of Interim and Final Orders (I) Authorizing Payment of Certain Amounts Due to Employees, (II) Confirming Right to Continue Employee Programs on A Post-Petition Basis, (III) Authorizing Payment Of Withholding And Payroll-Related Taxes, and (IV) Granting Such Other and Further Relief | 11/10/2020 | 5 |
| Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (II) Granting Related Relief [D.I. 6; Filed November 10, 2020]. | 11/10/2020 | 6 |
| Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Use of Prepetition Bank Account and Certain Payment Methods, and (II) Waiving the Requirements of 11 U.S.C. Section 345(b) [D.I.7; Filed November 10, 2020]. | 11/10/2020 | 7 |
| Motion to Approve Debtor in Possession Financing | 11/10/2020 | 8 |
| Affidavit/Declaration in Support of First Day Motion Amended Declaration of Jeff Siegel in Support of First Day Motions | 11/12/2020 | 13 |

| | | |
|---|---|---|
| Application/Motion to Employ/Retain Gellert Scali Busenkell & Brown, LLC as Counsel to Debtor | 11/19/2021 | 31 |
| Second Amended Declaration of Jeff Siegel in Support of First Day Motions | 12/3/2020 | 47 |
| Debtor's Motion for Limited Relief from The Automatic Stay Pursuant to Bankruptcy Code Section 362 | 12/16/2020 | 59 |
| Debtor's Opposition to GunUp, Inc.'s Motion to Dismiss | 12/17/2020 | 61 |
| Declaration of Jeff Siegel in Support of Debtor's Opposition to GunUp,Inc.'s Motion to Dismiss | 12/17/2020 | 63 |
| Initial Reporting Requirements Filed by Media Lodge, Inc | 12/17/2020 | 64 |
| Motion for Authority to File Exhibit B to Debtors Opposition to GunUp,Inc.s Motion to Dismiss Under Seal | 12/22/2020 | 68 |
| Proposed Redacted Version of Exhibit B to Debtor's Opposition to GunUp, Inc.'s Motion to Dismiss | 12/22/2020 | 69 |
| Notice of Filing of Debtor's Witness and Exhibit List In Connection With The HearingScheduled for January 11, 2021 | 1/8/2021 | 82 |
| Notice of Filing Revised Debtor-in-Possession Budget | 1/11/2021 | 84 |
| Application to Employ Carney Badley Spellman, P.S. as Appellate Litigation Counsel | 1/29/2021 | 94 |
| Application to Employ Professionals Utilizes in the Ordinary Course of Business *Nunc Pro Tunc* to the Petition Date | 2/26/2021 | 103 |
| Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 For Authority to Enter Into First Amendment to Lease Agreement With OSWX Ridge LLC | 3/23/2021 | 116 |
| Motion of Debtor for an Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtor to Continue to Use Cash Collateral Through July 25, 2021, and (III) Authorizing Change in DIP Lender | 5/18/2021 | 148 |
| First Interim Fee Application of Gellert Scali Busenkell & Brown, LLC as Counsel to the Debtors and Debtors-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period November 10, 2021 to March 31, 2021 | 6/11/2021 | 170 |
| First Interim Fee Application of Carney Badley Spellman, P.S as Appellate Litigation Counsel to the Debtor and Debtor-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period February 16, 2021 to May 31, 2021 | 6/25/2021 | 178 |
| Motion of Media Lodge, Inc., for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Media Lodge, Inc.s Settlement with Gemini Direct LLC, and GunUp Holding, Inc. | 9/3/2021 | 193 |
| Motion to Shorten Notice With Respect to  Motion of Media Lodge, Inc., for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Media Lodge, Inc.s Settlement with Gemini Direct LLC, and GunUp Holding, Inc. | 9/3/2021 | 194 |

The following substantive Orders have been entered by the Bankruptcy Court to date:

| Order | Date | Docket Number |
|---|---|---|
| Interim Order (I) Authorizing Debtor To Pay Prepetition Claims Of Critical Vendors And (II) Granting Related Relief | 11/13/20 | 19 |
| Interim Order (I) Authorizing The Debtor To (A) Pay Certain Employee Compensation And Benefits, (B) Maintain And Continue Such Benefits And Other Employee-Related Programs, And (II) Granting Related Relief | 11/13/20 | 18 |
| Interim Order Pursuant To 11 U.S.C. §§105, 361, 362, 363(C), 364(C)(1), 364(C)(2), 364(D)(1), 364(E) And 507 (I) Authorizing Debtor To (A) Obtain Postpetition Secured Financing From Gemini Direct Investment, LLC; (B) Utilize Cash Collateral And (C) Pay Certain Related Fees And Charges; (Ii) Granting Adequate Protection To The Prepetition Lender; (Iii) Modifying The Automatic Stay; (Iv) Scheduling A Final Hearing And (V) Granting Certain Related Relief | 11/13/20 | 21 |
| Interim Order (I) Authorizing Use Of Prepetition Bank Account And Certain Payment Methods, And (II) Waiving The Requirements Of 11 U.S.C. 345(B) | 11/13/20 | 20 |
| Order (INTERIM) (I) Authorizing Debtor to (A) Obtain Postpetition Secured Financing from Gemini Direct Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees and Charges; (II) Granting Adequate Protection to the Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing, and (V) Granting Certain Related Relief | 11/13/2020 | 21 |
| Order Authorizing the Debtor to Employ Gellert Scali Busenkell & Brown, LLC as Bankruptcy Counsel Nunc Pro Tunc to the Petition Date | 12/10/2020 | 58 |
| Order for Limited Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362 | 1/4/2021 | 72 |
| Final Order (I) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (II) Granting Related Relief | 1/6/2021 | 75 |
| Order Denying Motion by GunUp, Inc. to Dismiss Chapter 11 Case | 1/14/2021 | 89 |
| Final Order (I) Authorizing Debtor to (A) Obtain Postpetition Secured Financing from GeminiDirect Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees And Charges; (II) Modifying the Automatic Stay; and (III) Granting Certain Related Relief | 1/14/2021 | 90 |
| Order Authorizing the Debtor to Employ Carney Badley Spellman, P.S. as Appellate Litigation Counsel | 2/16/2021 | 99 |
| Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 Authorizing the Debtors to Enter Into First Amendment to Lease Agreement With OSWX Ridge LLC | 4/1/2021 | 120 |
| Order Pursuant to Sections 105, 327, 328 and 330 of the Bankruptcy Code, Authorizing the Debtor to Retain and Compensate Professionals Utilized in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date | 4/7/2021 | 125 |
| Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtor to Continue to Use Cash Collateral | 6/9/2021 | 168 |

| | | |
|---|---|---|
| Through July 25, 2021, and (III) Authorizing Change in DIP Lender | | |
| Order Granting First Interim Fee Application of Gellert Scali Busenkell & Brown, LLC as Counsel to the Debtors and Debtors-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the Period from November 10, 2020 Through March 31, 2021 | 7/12/2021 | 184 |
| Order Granting First Interim Fee Application of Carney Badley Spellman, P.S as Appellate Litigation Counsel to the Debtor and Debtor-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period February 16, 2021 to May 31, 2021 | 7/15/2021 | 186 |

On March 15, 2021, the Debtor commenced an adversary proceeding against GunUp by filing a complaint (as amended, the "Complaint") seeking to subordinate the GunUp Claim pursuant to section 510(b) of the Bankruptcy Code. The Complaint was amended on April 12, 2021. The Complaint alleged that because the GunUp Claim arose from the rescission of a purchase of a security of the Debtor, the GunUp Claim must be subordinated to all other claims against the Debtor. Moreover, because the security at issue in the Merger Agreement was the Debtor's common stock, the Complaint sought to subordinate the GunUp Claim to the same priority as the Debtor's common stock.

On May 28, 2021, GunUp responded to the Complaint, asserted counterclaims against the Debtor for non-dischargeability of the GunUp Claim, and asserted claims against Gemini for equitable subordination or recharacterization of the GDI Claim.

In July 2021, the parties agreed to resolve all claims between GunUp, the Debtor and its subsidiaries and Gemini.  This resulted in the Settlement Agreement and Mutual Releases, annexed hereto as Exhibit C (the "GunUp Settlement Agreement"). The Court will consider the GunUp Settlement Agreement on September 15, 2021. Under the GunUp Settlement Agreement, GunUp will be paid $1,000,000 in satisfaction of the GunUp Claim (the "GunUp Settlement Payment"). The Debtor will contribute $950,000 and Jeff Siegel will contribute $50,000 toward the GunUp

Settlement Payment. Court approval of the GunUp Settlement is a condition precedent to confirmation of this Plan. Should the Court decline to approve the GunUp Settlement, the hearing on confirmation of the Plan shall be adjourned to a date to be determined by the Debtor and GunUp or otherwise ordered by the Court.

### 1.7.    Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions. A review of the Debtor's books and records indicates Debtor generally paid all of its debts when they were due, in the ordinary course of business.

## ARTICLE 2

## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

### 2.1.    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and DIP Lender claims are not classified. They are not considered impaired. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following

Claims in any class:

## A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    The Debtor's secured debtor-in-possession financing.

2.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | Utilities: $27.00 per month<br>Payroll: $79,548 per month<br>Lease: $1,767.00 per month<br>Insurance: $600.00 per month | Payment through the Plan as follows: expenses that arise in the ordinary course of business will be paid in the ordinary course and pursuant to the business practices between the Debtor and creditor. |
| Administrative Tax Claim | $0 | Payment through the Plan as follows: taxes that arise in the ordinary course of business will be paid in the ordinary course and pursuant to the business practices between the Debtor and the taxing authorities. |
| Professional fees, as approved by the Bankruptcy Court | $300,000 | Payment through the Plan as follows: the Debtor's Professionals will be able to draw down its |

| | | approved fees from the retainer and the balance will be paid as those fees are incurred in the ordinary course and pursuant to the business practices of the Debtor, |
|---|---|---|
| Subchapter V Trustee | $12,000 | Payment through the Plan as follows: The Subchapter V Trustee will be paid out of the anticipated distributions. |
| DIP Lender (GDI) | Up to $500,0000[3] | To be refinanced by the Exit Facility The Exit Facility shall bear interest at the rate of 7% per annum and shall be amortized over a sixty (60) month term as of the Effective Date. |

**B.    Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

There are no Priority Tax Claims.

## 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**A.    Classes of General Unsecured Claims**

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of General Unsecured Claims against the Debtor:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | General Unsecured Claims | No | Claims shall be paid in full no later than (60) days following the entry of an order approving this Plan. Estimated percent of claim paid = 100% |

---

[3]  As of September 8, 2021, the Debtor owes $ 162,023.14 on account of the DIP Lender Claim.

| | | | |
|---|---|---|---|
| 2 | GDI Claim | Yes | The GDI Claim shall be waived and released as of the Petition Date.  Accordingly, Gemini will receive no distribution on account of the GDI Claim. |
| 3 | GunUp Claim | Yes | This Claim will be paid $1,000,000 within fifteen (15) days after the Effective Date. |

## B.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity Holders | No | Current existing equity holders shall retain their equity interests on a pro rata basis. |

### 2.3.    Claims Objections.

The Debtor may object to the amount or validity of any Claim, other than the GunUp Claim, within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4.    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Executory Contracts shown on Exhibit D shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the

Bankruptcy Code, if any.

Exhibit D also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

The Debtor will reject any Executory Contract and Unexpired Lease that is not expressly assumed and is not listed in Exhibit D.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract is 30 days from the Effective Date.** Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise. Allowed Rejection Damages claims will be treated as Class 1 claims.

### 2.5.    <u>Means for Implementation of the Plan.</u>

The Plan will be funded by the proceeds realized from the continued operations of the Debtor with the assistance of capital obtained through Exit Facility in the amount of up to $1,500,000. The Plan will also be funded by a $50,000.00 contribution from Jeff Siegel in consideration for the Releases set forth in the GunUp Settlement Agreement.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

### 2.6.    <u>Payments.</u>

Under § 1191(a), unless otherwise ordered by the Bankruptcy Court, payments to Creditors provided for in the Plan will be made by the Debtor

2.7.    **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| Jeff Siegel | Chief Executive Officer | $200,000 base salary plus $200,000 commission (based on performance). |

2.8.    **Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

2.9.    **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.**

Debtor has provided projected financial information. Those projections are listed in Exhibit A.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

3.1.    **Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan and available under the Exit Facility to pay all the Claims and expenses that are entitled to be paid on or after that date.

3.2.    **Ability to Make Future Plan Payments and Operate Without Further Reorganization**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit A.

The Debtor's financial projections show that the Debtor will have an aggregate disposable income over the five (5) year projection period, after paying operating expenses and post-confirmation taxes, of $2.5 million.  All payments required to pre-petition creditors under the plan will be made within sixty (60) days of the Effective Date.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER**

**FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

## ARTICLE 4
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit E.

## ARTICLE 5
## DISCHARGE

As soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan.

## ARTICLE 6
## GENERAL PROVISIONS

### 6.1.    Title to Assets.

Under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders.

### 6.2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they vote to accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any

modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. <u>Captions.</u>

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. <u>Modification of Plan.</u>

The Debtor may modify any term of the Plan that does not affect the GunUp Settlement Agreement or the GunUp Settlement Payment at any time before confirmation of the Plan pursuant to § 1193(a).  The Debtor may not modify any term of the Plan that affects the GunUp Settlement Agreement or the GunUp Settlement Payment without the written consent of GunUp. However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. <u>Dischare of Subchapter V Trustee.</u>

Upon the effective date of the plan, the Trustee is discharged from and relieved of her trust and her duties and responsibilities are terminated.

### 6.8. <u>Final Decree.</u>

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.  Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 6.8 <u>Default; Accelerated Judgment.</u>

In the event of a post-Effective Date payment default by the Debtor under Sections 2.1, 2.2, 2.4 or 2.5 of this Plan, the affected creditor may give notice to the Debtor of the default; and if the default is not cured and remains unresolved fourteen (14) days after such notice has been

given, the Court may enter judgment in favor of the affected creditor and against the Debtor on motion of the affected creditor supported by an affidavit attesting as to the Debtor's payment default, the Debtor's failure to timely cure the same and the giving of notice to the Debtor as provided herein.

## ARTICLE 7
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**7.1**    **Conditions to Confirmation.** Unless duly waived pursuant to section 7.3 of the Plan, confirmation shall not occur until the Confirmation Order is entered by the Bankruptcy Court and is in form and substance reasonably satisfactory to the Debtor and the DIP Lender.

**7.2**    **Conditions to the Effective Date.** The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to section 7.3 of the Plan: (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor and the DIP Lender; (ii) the Confirmation Order shall have become a Final Order; (iii) the Exit Facility has been executed by the Debtor and the DIP Lender.

**7.3**    **Waiver of Conditions to Confirmation or the Effective Date.** The conditions to Confirmation and the conditions to the Effective Date set forth in sections 7.1 and 7.2 of the Plan may be waived in whole or part in writing by the Debtor and the DIP Lender, as applicable, at any time without further Order.

**7.4**    **Effect of Nonoccurrence of Conditions to the Effective Date.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with sections 7.1, 7.2, and 7.3 of the Plan, then upon motion by the Debtor made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this section 7.4, (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the rights of the Debtor, the DIP Lender, or any other party in interest.

## ARTICLE 8
## ATTACHMENTS

The following documents accompany the Plan:

- Five Year Projections, annexed as Exhibit A.
- Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit B.

- GunUp Settlement Agreement, annexed as Exhibit C.
- Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit D.
- Liquidation Analysis, annexed as Exhibit E.
- Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit F.
- Exit Facility Agreement, annexed as Exhibit G.

## ARTICLE 8
## DEFINITIONS

**8.1**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**8.2     Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**8.3     Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, postpetition financing obtained by the Debtor, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**8.4     Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code**.**

**8.5     Allowed Claim**: Any Claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**8.6     Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.7     Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.8**     **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**8.9**     **Bankruptcy Court**: The United States Bankruptcy Court for the District of Delaware.

**8.10**     **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**8.11**     **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**8.12**     **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Media Lodge, Inc. is the Debtor-in-Possession.

**8.13**     **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**8.14**     **Class**: A category of holders of Claims or Equity Interests which are substantially similar to the other Claims or Interests in such class.

**8.15**     **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**8.16**     **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**8.17**     **Confirmation Hearing**: The hearing to be held on September 15, 2021 to consider confirmation of the Plan.

**8.18**     **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**8.19**     **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**8.20    Debtor** and **Debtor-in-Possession**: Media Lodge, Inc., the debtor-in-possession in this Chapter 11 Case.

**8.21    Disputed Claim:** Any Claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**8.22    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**8.23    Effective Date**: The effective date of a chapter 11 plan is date on which all the conditions precedent to the effective date set forth in section 7.2 of the Plan are first satisfied,

**8.24    Equity Interest**: An ownership interest in the Debtor.

**8.25    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**8.26    Final Order**: An order or judgment of the Bankruptcy Court or other Court of competent jurisdiction that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**8.27    Interest** means (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all units, shares, common stock, preferred stock, partnership interests, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, whether or not transferable and whether fully vested or vesting in the future, that existed immediately before the Effective Date and (b) any Claim against the Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

**8.28    Petition Date**: November 10, 2020, the date the chapter 11 petition for relief was filed.

**8.29    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**8.30    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**8.31    GunUp Settlement Agreement**: The Settlement Agreement and Mutual Releases entered into by and among the Debtor, GunUp Holdings, Inc., et. al., on September 3, 2021, annexed as Exhibit C.

**8.32    GunUp Settlement Payment**: The payment due to GunUp under the GunUp Settlement Agreement.

**8.33    Reorganized Debtor**: The Debtor after the Effective Date.

**8.34    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**8.35    Trustee**: Natasha Songonuga, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**8.36    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated: September 10, 2021
Wilmington, Delaware                            GELLERT SCALI BUSENKELL & BROWN, LLC

                                                */s/ Michael Busenkell*
                                                Michael Busenkell (DE 3933)
                                                Ronald S. Gellert (DE 4259)
                                                1201 N. Orange St., Suite 300
                                                Wilmington, Delaware 19801
                                                Telephone: (302) 425-5800
                                                Facsimile: (302) 425-5814
                                                Email: mbusenkell@gsbblaw.com
                                                        rgellert@gsbblaw.com