# **EXHIBIT C**
GunUp Settlement Agreement

**SETTLEMENT AGREEMENT AND MUTUAL RELEASES**

This Settlement Agreement and Mutual Releases (the "Agreement") is entered into by and among GunUp Holding Inc. d/b/a GunUp, Inc. ("GunUp"), Daniel M. Hall, Media Lodge, Inc. ("Media Lodge"), Gemini Direct, LLC ("Gemini"), Steve Urvan, Jeffrey Siegel, Kevin O'Connell and Susan Lokey (collectively, the "Parties"). GunUp and Mr. Hall are referred to herein as the "GunUp Parties." Media Lodge, Gemini, Mr. Urvan, Mr. Siegel, Mr. O'Connell and Ms. Lokey are referred to herein as the "Media Lodge Parties."

This Agreement will be effective on the date it has been approved by the Court pursuant to Federal Rule of Bankruptcy Procedure 9019.

**RECITALS**

A. The following legal proceedings between one or more of the GunUp Parties on the one hand, and one or more of the Media Lodge Parties on the other, are currently pending:

- *GunUp, Inc. v. Media Lodge, Inc., et al.*, King County, Washington Superior Court Cause No. 16-2-15005-5 SEA, on appeal before Division I of the Washington Court of Appeals under Case No. 80766-8 (the "Washington Lawsuit"). GunUp obtained a judgment in the Washington Lawsuit against Media Lodge and Mr. Siegel in the principal amount of $2,478,990.77 (the "Judgment").

- *GunUp, Inc. v. Urvan*, United States District Court for the Northern District of Georgia Cause No. 1:20-cv-02340-LMM (the "Urvan Lawsuit").

- *GunUp, Inc. v. O'Connell*, Orange County, California Superior Court Cause No. 30-2019-01117939-CU-MC-CJC (the "O'Connell Lawsuit").

- *GunUp, Inc. v. Media Lodge, Inc., et al.*, Fairfield, Connecticut Superior Court Cause No. FBT-CV20-4056725-S (the "Connecticut Enforcement Action").

- *GunUp, Inc. v. Media Lodge, Inc.*, Cobb County, Georgia Superior Court Cause No. 20-G-1509 (the Georgia Enforcement Action").

- *In re Media Lodge, Inc.*, United States Bankruptcy Court for the District of Delaware Cause No. 20-12969-JTD (the "Bankruptcy Proceeding"). GunUp filed a proof of claim in the Bankruptcy Proceeding in the amount of $2,673,883.59 as of January 11, 2021 (the "GunUp Claim").

- *Media Lodge, Inc. v. GunUp Holding, Inc. d/b/a GunUp, Inc.*, United States Bankruptcy Court for the District of Delaware Cause No. 21-50246-JTD (the "Adversary Proceeding").

B.   Other legal proceedings between one or more of the GunUp Parties on the one hand, and one or more of the Media Lodge Parties on the other, were previously dismissed. These include, but are not limited to, *Media Lodge, Inc., et al. v. GunUp, Inc., et al.*, United States District Court for the District of Delaware Cause No. 1:20-cv-00231-MN (the "Lanham Act Lawsuit").

C.   On May 3, 2021, AMMO, Inc. ("AMMO") purchased the GunBroker.com businesses, including several subsidiaries of Gemini Direct Investments, LLC.

D.   The Parties desire fully and finally to resolve the above-referenced matters, and to settle and mutually release any and all claims between and among the GunUp Parties, the Media Lodge Parties, and AMMO and its subsidiaries.

NOW, THEREFORE, in consideration of the mutual promises contained herein, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

## AGREEMENT

1.   **Settlement Amount.**  Media Lodge and Mr. Siegel will pay GunUp an aggregate amount of $1,000,000 (the "Settlement Payment").  Media Lodge will provide $950,000 of this amount, and Mr. Siegel will provide $50,000.  The Settlement Payment will be paid to GunUp within fifteen days after the effective date of a plan of reorganization for Media Lodge in the Bankruptcy Proceeding.  The payment will be made by ACH or wire transfer to the Savitt Bruce & Willey LLP Trust Account.

2.   **Plan of Reorganization.**  Assuming the court in the Bankruptcy Proceeding approves this Agreement, GunUp will not oppose or object to Media Lodge's proposed plan of reorganization, provided the proposed plan substantially parallels the form of proposed plan attached hereto as **Exhibit A**.

3.   **Releases.**

   a.   In exchange for the consideration set forth in paragraphs 1 and 4, and the releases set forth in paragraph 3(b), and the AMMO Consent attached hereto as **Exhibit B**, each of the GunUp Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors) releases and forever discharges each of the Media Lodge Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors) and AMMO (and its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors), to the maximum extent permitted by law and unless barred by law, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, attorneys' fees or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the GunUp Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, under the laws of the United States, any of its states, or any other country.

b.  In exchange for the consideration set forth in paragraphs 2 and 4, and the releases set forth in paragraph 3(a), each of the Media Lodge Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors) and AMMO (and its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors, pursuant to the AMMO Consent) releases and forever discharges each of the GunUp Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors), to the maximum extent permitted by law and unless barred by law, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, attorneys' fees or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the GunUp Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, under the laws of the United States, any of its states, or any other country (including without limitation claims under the federal Lanham Act and claims asserted in the Lanham Act Lawsuit).

c.  The releases set forth in this paragraph 3 are contingent on timely remittance of the Settlement Payment in accordance with paragraph 1, and on GunUp meeting its obligations under paragraph 2.  Should the Settlement Payment not be timely made, or should GunUp fail to meet its obligations under paragraph 2, the releases set forth in paragraph 3 will be of no force or effect, and the Settlement Payment shall be refunded, if previously made.

4.  **Dismissal of Actions.**  Within fifteen days after GunUp's receipt of the Settlement Payment, Media Lodge will dismiss its appeal in the Washington Lawsuit, GunUp will dismiss the Urvan Lawsuit and the O'Connell Lawsuit with prejudice, and Media Lodge and GunUp will dismiss the Adversary Proceeding with prejudice.  In addition, after GunUp receives the Settlement Payment:

a.  GunUp will take no further action in any court to enforce the Judgment, including, without limitation, in the Connecticut Enforcement Action or the Georgia Enforcement Action;

b.  GunUp will cooperate with counsel for Media Lodge and Mr. Siegel in the Connecticut Enforcement Action to give the court prompt notice that a settlement has been reached and the pending motion to stay execution of the judgment is moot and GunUp will withdraw the Connecticut Enforcement Action within fifteen days after GunUp's receipt of the Settlement Payment;

c.  GunUp will withdraw or dismiss the Georgia Enforcement Action with prejudice within fifteen days after GunUp's receipt of the Settlement Payment;

d.  GunUp will cause the funds garnished from Media Lodge's bank account in the Georgia Enforcement Action to be released to Media Lodge; and

      e.    IA Tech, LLC and Ms. Lokey will not enforce the award of attorneys' fees they received after their dismissal from the Washington Lawsuit.

5.    **Attorneys' fees.**  The Parties will be responsible for their own attorneys' fees and costs, including attorneys' fees and costs incurred in connection with any of the actions described in paragraph 4 above.  However, in any action or proceeding to enforce this Agreement, the substantially prevailing Party shall be entitled to recover its, his or her reasonable costs and expenses (including but not limited to attorneys' fees, expert fees and other litigation expenses) incurred in such action or proceeding.

6.    **Nondisparagement.**  The Parties will not disparage each other in any manner likely to be harmful to their business, business reputation or personal reputation; provided that the Parties may respond accurately and fully to questions, inquiries and requests for information when required by legal process.

7.    **Miscellaneous Provisions.**

      a.    In entering into this Agreement, the Parties acknowledge that they have not relied on any representation, warranty, promise or condition not specifically and expressly set forth in this document.

      b.    This Agreement constitutes the entire agreement between the Parties and supersedes, substitutes for, and replaces all prior negotiations, agreements, and understandings.

      c.    The Parties acknowledge, represent, and agree that they have read this Agreement, have been represented by counsel in negotiating and entering into this Agreement, and fully understand and agree to its terms.

      d.    Each individual signing in a representative capacity represents and warrants that he or she has the authority to sign for, and to bind, the represented entity for which he or she is signing.

      e.    The Parties acknowledge and agree that each Party has participated in the drafting and negotiation of this Agreement, and that each provision was jointly drafted by all Parties.  The Parties intend for this Agreement to be construed and interpreted neutrally, in accordance with the plain meaning of its language, and not presumptively construed against any actual or purported drafter of specific language.

      f.    The Parties acknowledge and agree that the language of this Agreement will be construed as a whole according to its fair meaning and not strictly for or against any of the Parties.  The execution of this Agreement affects the settlement of claims that are disputed, contested, or denied.  Each Party understands and agrees that nothing herein is intended, nor will be deemed nor construed, to be an admission of liability in any respect.

  g. This Agreement will be binding upon and inure to the benefit of the Parties and their legal representatives, heirs, beneficiaries, administrators, executors, successors, and assigns.

  h. This Agreement may not be changed, amended, modified, terminated, waived, or discharged except by a subsequent written agreement signed by all the Parties hereto.

  i. This Agreement may be executed in any number of counterparts, all of which together will comprise a single agreement. Copies, scans, or facsimiles of original signature pages will be as effective as originals.

  j. As the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, the Parties elect and consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") or the United States District Court for the District of Delaware in the event the Bankruptcy Court declines to exercise jurisdiction. This Agreement will be construed in accordance with the laws of the State of Washington, without regard to its choice of law rules or provisions.

[Remainder of page left blank.]

**GunUp Holding Inc.**

By: _(signed) Dal M Hall_

Its: President

Date: 08/30/21

**Daniel M. Hall**

_(signed) Dal M Hall_

Date: 08/30/21

**Media Lodge, Inc.**

By: _(signed) Jeff Siegel_

Its: CEO

Date: 8/31/21

**Gemini Direct, LLC**

By: _____

Its: _____

Date: _____

**Steve Urvan**

_____

Date: _____

**Jeffrey Siegel**

_(signed) Jeff Siegel_

Date: 8/31/21

**Kevin O'Connell**

_____

Date: _____

**Susan Lokey**

_____

Date: _____

6

**GunUp Holding Inc.**

By: *Dal M Hall*

Its: President

Date: 08/30/21

**Daniel M. Hall**

*Dal M Hall*

Date: 08/30/21

**Media Lodge, Inc.**

By: _____

Its: _____

Date: _____

**Gemini Direct, LLC**

By: _____

Its: _____

Date: _____

**Steve Urvan**

_____

Date: _____

**Jeffrey Siegel**

_____

Date: _____

**Kevin O'Connell**

*Kev O'Canll*

Date: 8/31/21

**Susan Lokey**

_____

Date: _____

6

| GunUp Holding Inc. | Media Lodge, Inc. |
|---|---|
| By: _____ | By: _____ |
| Its: _____ | Its: _____ |
| Date: _____ | Date: _____ |
| **Daniel M. Hall** | **Gemini Direct, LLC** |
| | By: _[signature]_____ |
| | Its: ___CEO_____ |
| _____ | Date: __9/2/2021_____ |
| Date: _____ | **Steve Urvan** |
| | _[signature]_____ |
| | Date: __9/2/2021_____ |
| | **Jeffrey Siegel** |
| | _____ |
| | Date: _____ |
| | **Kevin O'Connell** |
| | _____ |
| | Date: _____ |
| | **Susan Lokey** |
| | _____ |
| | Date: _____ |

6

| | |
|---|---|
| **GunUp Holding Inc.** | **Media Lodge, Inc.** |
| By: _/s/ Dan M Hall_ | By: _____ |
| Its: President | Its: _____ |
| Date: 08/30/21 | Date: _____ |
| **Daniel M. Hall** | **Gemini Direct, LLC** |
| _/s/ Dan M Hall_ | By: _____ |
| Date: 08/30/21 | Its: _____ |
| | Date: _____ |
| | **Steve Urvan** |
| | _____ |
| | Date: _____ |
| | **Jeffrey Siegel** |
| | _____ |
| | Date: _____ |
| | **Kevin O'Connell** |
| | _____ |
| | Date: _____ |
| | **Susan Lokey** |
| | _/s/ Susan Lokey_ |
| | Date: 9/3/2021 |

6