# **<u>EXHIBIT G</u>**
Exit Facility
Agreement

# **LOAN AGREEMENT**

THIS LOAN AGREEMENT (this "**Agreement**"), dated as of September ___, 2021 (the "**Effective Date**"), is being entered into by and between Media Lodge Inc., a Delaware corporation (the "**Borrower**"), and Gemini Direct, LLC, a Nevada limited liability company (the "**Lender**").

NOW, THEREFORE, in consideration of the mutual covenants herein and for other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Borrower and Lender unconditionally agree as follows:

## **ARTICLE I**
## **THE LOAN**

1.1     The Loan.  Lender agrees to lend to Borrower, and Borrower agrees to borrow from Lender, the principal sum of up to One Million Five Hundred Thousand Dollars ($1,500,000) (the "**Loan**").  The proceeds of the Loan shall be paid in one or more advances to Borrower upon at least three (3) business days' prior written request therefor.  The date on which the initial advance is made to Borrower is referred to herein as the "**Loan Date**".  Lender reserves the right, in its sole and absolute discretion, to advance Borrower additional amounts, all of which shall be deemed to be included in the Loan for any and all purposes under this Agreement.

1.2     Interest.  Starting on the Loan Date until the principal amount of the Loan and all interest are paid in full, the outstanding principal amount of the Loan shall bear interest at the rate of seven percent (7%) per annum (the "**Interest Rate**"), compounded monthly.

1.3     Promise to Pay.  Borrower hereby unconditionally promises to pay Lender the outstanding principal amount of the Loan and all accrued and unpaid interest thereon, as and when due in accordance with the terms of this Agreement.

1.4     Repayment.  Borrower agrees to make monthly interest payments due on the Loan on the first business day of each month over a five year period, beginning on October 1, 2021. rBorrower agrees to repay the principal amount of the Loan, along with any other amounts outstanding, to Lender in full on October 1, 2026.

1.5     Prepayment.  Borrower may prepay the unpaid principal amount of the Loan, in full at any time or in part from time to time, without fee, premium or penalty.

1.6     Security.

(a)     To secure the payment and performance in full of all of Borrower's obligations hereunder, Borrower hereby grants to Lender a continuing security interest in all of its rights, title, and interests in and to the assets of Borrower listed on Exhibit A (the

"**Collateral**"), which shall continue until all of Borrower's obligations hereunder are satisfied in full.

(b)     Borrower hereby authorizes Lender to file, and Lender shall be responsible for filing, Uniform Commercial Code financing statements with all appropriate jurisdictions to perfect or protect Lender's security interest in the Collateral.

(c)     Upon satisfaction in full of Borrower's obligations hereunder, Lender's security interest in the Collateral shall automatically terminate.  In connection with the foregoing, Lender shall (i) promptly terminate any applicable Uniform Commercial Code financing statements, if any, and (ii) execute any further instruments and take further action as Borrower reasonably requests to evidence the termination of Lender's security interest in the Collateral.  If Lender fails to terminate any applicable Uniform Commercial Code financing statements in a timely manner, Borrower may, in its discretion, take all reasonable actions to terminate such financing statements.

## ARTICLE II
## COVENANTS

2.1    <u>Affirmative Covenants</u>.  Until the Loan and all amounts due under this Agreement are paid in full, Borrower shall, unless Lender shall otherwise consent in writing:

(a)     Do all things necessary to keep in full force and effect its legal existence.

(b)     Carry on its operations in compliance with all applicable laws, statutes, ordinances, rules and regulations.

(c)     Immediately notify Lender of (i) the occurrence of any Event of Default or fact, condition or event which, with the giving of notice or the passage of time, or both, would be an Event of Default, and (ii) any actions, suits or proceedings pending or threatened against Borrower that might materially and adversely affect Borrower's ability to pay the Loan.

(d)     Use the proceeds of the Loan solely for the operations of its business, and not for any personal, family or household purpose.

2.2    <u>Negative Covenants</u>.  Until the Loan is fully paid, Borrower will not, without the prior written consent of Lender:

(a)     Enter into or effect any merger, consolidation, share exchange, division, conversion, reclassification, recapitalization, restructuring, reorganization or any other transaction of like effect, dissolve, sell or otherwise dispose of substantially all of its assets or cease to conduct operations.

(b)     Lend funds to, or guaranty debts of, its shareholders, directors, officers, or other principals.

(c)     Sell, transfer, convey or lease a substantial part of its assets, or at any time sell all or substantially all of its assets, except for (i) the sale or other disposition of assets in the ordinary course of Borrower's operations, (ii) assets no longer used or useful in the conduct of Borrower's operations, or (iii) assets that are replaced immediately with similar assets of greater or equal value.

(d)     Purchase or otherwise acquire any shares of stock of, or similar interest in, any other Person or all or substantially all the assets or business of any other Person.

(e)     Amend any of its organizational documents in any manner which would be reasonably likely to materially adversely affect Borrower's ability to perform its obligations under this Agreement.

## ARTICLE III
## DEFAULTS AND REMEDIES

3.1     <u>Events of Default</u>.  Each of the following events and occurrences shall constitute an "**<u>Event of Default</u>**" under this Agreement:

(a)     Borrower fails to pay when due and payable any amount that Borrower is obligated to pay under this Agreement;

(b)     Borrower fails to perform or violates any provision, covenant, condition or agreement in Article II of this Agreement;

(c)     Borrower is adjudicated a bankrupt or insolvent, or admits in writing its inability to pay its debts as they become due or makes an assignment for the benefit of creditors, or ceases doing business as a going concern or applies for or consents to the appointment of any receiver or trustee, or such receiver, trustee or similar officer is appointed with the application or consent of Borrower, or bankruptcy, dissolution, liquidation or reorganization proceedings (or proceedings similar in purpose and effect) are instituted by or against Borrower;

(d)     The validity or enforceability of this Agreement, or any provisions hereof or thereof, is contested by or on behalf of Borrower, or a proceeding is commenced by any governmental authority having jurisdiction over Borrower seeking to establish the invalidity of this Agreement, or Borrower denies that it has any further liability or obligation under this Agreement; or

3.2     <u>Remedies</u>.  At the option of Lender, upon the occurrence of an Event of Default, or at any time thereafter during the continuance thereof:

(a)     the entire unpaid principal of the Loan, all charges and all fees due hereunder and all other obligations of Borrower to Lender under this Agreement, or otherwise arising, will become immediately due and payable without any further demand or notice;

(b)     Lender may exercise each and every right and remedy granted to it under this Agreement and under any other applicable law or at equity; and/or

(c)     The Interest Rate on the unpaid principal amount of the Loan shall be increased to [ten percent (10%)].

## ARTICLE IV
## MISCELLANEOUS

4.1     <u>Time of Essence.</u> Time is of the essence offor each and every provision of this Agreement.

4.2     <u>No Waivers</u>.  No failure or delay by Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies provided under this Agreement shall be cumulative and not exclusive of any rights or remedies provided by law.

4.3     <u>Indemnification</u>.  Borrower agrees to indemnify Lender, its affiliates and its directors, officers, agents and employees (each an "**<u>Indemnitee</u>**") and hold each Indemnitee harmless from and against any and all liabilities, losses, damages, costs and expenses of any kind, including, without limitation, the reasonable fees and disbursements of counsel, which may be incurred by such Indemnitee in connection with any investigative, administrative or judicial proceeding (whether or not such Indemnitee shall be designated a party thereto) brought or threatened relating to or arising out of Borrower's operations or assets, the Loan, this Agreement or any actual or proposed use of the proceeds of the Loan, provided that no Indemnitee shall have the right to be indemnified hereunder for such Indemnitee's own gross negligence or willful misconduct as determined by a court of competent jurisdiction.  All obligations provided for in this Section shall survive the repayment of the Loan and the termination of this Agreement.

4.4     <u>Amendments and Waivers</u>.  Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by Borrower and Lender.

4.5     <u>Successors and Assigns</u>.  The provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, except that Borrower may not assign or otherwise transfer any of its rights under this Agreement without the prior written consent of Lender.

4.6     <u>Counterparts; Integration; Effectiveness</u>.  This Agreement may be signed in any number of counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument.  This Agreement constitutes the entire agreement and understanding between the parties hereto with respect to the Loan and supersede any and all prior agreements and understandings, oral or written, relating to the Loan.

4.7     <u>Governing Law; Venue; Consent to Jurisdiction</u>.  This Agreement and the right and obligations of the parties thereto shall be governed by and construed and interpreted in

accordance with the laws of the State of Delaware, excluding the impact of its conflict of laws doctrines.  Each of Borrower and Lender (i) irrevocably submits to the exclusive jurisdiction and venue of any Delaware State court or Federal court sitting in Wilmington, Delaware in any action arising out of this Agreement, and (ii) consents to the service of process by mail.  Nothing herein shall affect the right of any party to serve legal process in any manner permitted by law or affect its right to bring any action in any other court.

4.8    <u>Waiver of Jury Trial</u>.    BORROWER EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THE LOAN AND THE TRANSACTION CONTEMPLATED HEREUNDER.

4.9    <u>Waiver of Punitive Damages</u>.  BORROWER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY EXEMPLARY, PUNITIVE OR OTHER DAMAGES IN CONNECTION WITH THE LOAN OTHER THAN, OR IN ADDITION TO, COMPENSATORY DAMAGES.

4.10    <u>Severability</u>.  If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

4.11    <u>No Party Deemed Drafter</u>.  Borrower and Lender agree that no party hereto shall be deemed to be the drafter of this Agreement.

**END OF TEXT – SIGNATURES ON FOLLOWING PAGE(S)**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed under seal as of the date first written above.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

**Media Lodge Inc.**
A Delaware corporation

_____
Witness

By: _____ (Seal)
Name: _____
Title: _____

**Gemini Direct, LLC**
A Nevada limited liability company

_____
Witness

By: _____ (Seal)
Name: _____
Title: _____

EXHIBIT A

Collateral Security

To secure Borrower's obligations to Lender under this Agreement, Borrower hereby unconditionally grants, assigns, and pledges to Lender a continuing security interest (hereinafter referred to as the "**Security Interest**") in all tangible and intangible personal property of Borrower whether now owned or hereafter acquired or arising and wherever located, including, without limitation, all of Borrower's right, title, and interest in and to the following items (collectively, but without duplication, the "**Collateral**"):

(a)      all Accounts;

(b)      all Books;

(c)      all Chattel Paper;

(d)      all Deposit Accounts;

(e)      all Securities Accounts;

(f)      all Goods, Inventory, Equipment and fixtures;

(g)      all Negotiable Collateral;

(h)      all General Intangibles (including, without limitation, all Intellectual Property);

(i)      all Investment Property, Stock and Pledged Interests and all distributions, funds, revenues, income, profits, rights, title, interest and claims whatsoever, at law as well as in equity, which Grantor may have or possess on the date of this Agreement or to which Grantor may hereafter become legally or equitably entitled, directly or indirectly, from, in or to such Investment Property, Stock and Pledged Interests;

(j)      all rights in respect of any Supporting Obligations;

(k)      all rights in with respect to any Commercial Tort Claims;

(l)      all money and other financial assets; and

(m)      all Proceeds, whether tangible or intangible, of any of the foregoing,

Capitalized terms used herein but not defined herein shall have the meanings ascribed thereto in the Delaware Uniform Commercial Code.

A-1