## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MEDIA LODGE, INC.,[1] | ) | Case No. 20-12969 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## FOURTH AMENDED PLAN OF
## REORGANIZATION OF MEDIA LODGE, INC.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR SEPTEMBER 15, 2021 AT 9:30 AM (ET) IN COURTROOM No. 5 AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated:  September 10, 2021
Wilmington, Delaware

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
1201 N. Orange St., Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
          rgellert@gsbblaw.com

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

The Plan provides for the full payment of administrative, and priority claims. General unsecured claims shall be paid in full no later than (60) days following the entry of an order approving this Plan. The Plan further provides for the payment to the Class 3 Creditor of $1,000,000 on account of its claims and the release of Class 2 Claims in accordance with the GunUp Settlement Agreement. The following represents an estimate of the distribution of the Debtor's plan payments:

A. Administrative/Priority Claims

      1. Attorney's fees and Costs                $300,000.00

      2. Subchapter V Trustee fees             $12,000.00

      3. DIP Lender (Gemini)               up to $500,000.00[1]

B. Total Distribution to Class 1 Creditors       $231,000.00

C. Total Distribution to Class 2 Creditors       $0.00

D. Total Distribution to Class 3 Creditors       $1,000,000.00

E. Total Distribution to Class 4 Equity        $0.00

---

[1] As of September 8, 2021, the Debtor owes $ $162,023.14 on account of the DIP Lender Claim.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1.      The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code. The classification of claims and proposed treatment within each class is as follows:

A.      **Administrative Priority**. Administrative Priority claims pursuant to § 507(a)(2) of the Bankruptcy Code who are treated as such in this Plan include the Subchapter V Trustee and Debtor's Counsel, Gellert Scali Busenkell & Brown, LLC. Any other parties claiming administrative expense priority shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date of the Plan. Administrative Priority Claims will be paid in full. Debtor estimates Administrative Priority Claims to total approximately $325,000.00.

B.      **DIP Lender Claims**: Upon confirmation of the Plan, the claims of Gemini Direct, LLC ("Gemini" or the "DIP Lender") as successor to Gemini Direct Investment, LLC ("GDI") pursuant to the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(2), 364(d)(1), 364(e) and 507 (I) Authorizing Debtor to (A) Obtain Post-Petition Secured Financing From Gemini Direct Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees and Charges; (II) Modifying the Automatic Stay and (III) Granting Certain Related Relief and term sheet attached thereto as Exhibit 1, dated January 14, 2021 [D.I. 90], as amended by the Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtors to Continue Using Cash Collateral Through July 25, 2021, and (III) Authorizing Change in DIP Lender [D.I. 168] under which the DIP Lender agreed to loan  the Debtor up to $500,000 in post-petition financing (the "DIP Loan") will be refinanced with the DIP Lender issuing a new loan to the Debtor in an amount necessary to (i) repay the DIP Loan in full; and (ii) provide the reorganized

2

Debtor with a new $1,500,000 multi-draw facility (the "Exit Facility"). The Exit Facility shall bear interest at the rate of 7% per annum and shall be amortized over a sixty (60) month term as of the Effective Date. The Exit Facility will be guaranteed by the Debtor's subsidiaries, Media Lodge, LLC ("LLC Sub") and GunUp LLC ("Acquisition Sub," and with LLC Sub, the "Subsidiaries") and will be fully secured by a blanket lien upon all of the Debtor's and the Subsidiaries' assets. The DIP Lender's agreement to provide the Exit Facility is conditioned upon the GDI Claim (as defined below) being allowed as a Class 2 Claim.  The Exit Facility is attached hereto as Exhibit G.

   C. **Class 1 Unsecured Claims**.  Class 1 claims are holders of allowed General Unsecured Claims without Priority. Holders of Allowed General Unsecured Claims shall be paid in full by the Debtor no later than sixty (60) days following the entry of a final order of the Bankruptcy Court approving this Plan. The Debtor estimates the aggregate amount to be distributed to Holders of General Unsecured Claims to be approximately $231,000.00.

   D. **Class 2 GDI Claim.**  Class 2 consists of  the allowed unsecured claim of Gemini in the amount of $9,382,132.00 (the "GDI Claim"). The GDI Claim arises out of a Secured Promissory Note originally in the amount of $2 million and payable to IA Tech, LLC ("IA Tech") and which was subsequently transferred to GDI and then Gemini (as described below). The remainder of the GDI Claim consists of intercompany advances made by IA Tech and then GDI after the indebtedness was transferred to GDI. The GDI Claim will be waived and released on the Effective Date.

   E. **Class 3 – GunUp Claim**.  Class 3 consists of the GunUp Claim, which will be an allowed General Unsecured Claim in the amount of $1,000,000.  The GunUp Claim will be paid within fifteen (15) days after the Effective Date.

3

F. **Class 4 Common Stock Interests.** Class 4 consists of the stockholder of the Debtor. The Class 4 interest holder shall receive no payments but shall retain its ownership interest in the Debtor.

2. **Disputed Claims**

A. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order of the Bankruptcy Court and, either:

i. is a Proof of Claim that has been timely filed or deemed timely filed, and to which the Debtor or another party in interest has filed an objection, and/or has indicated that the Proof of Claim is disputed no later than sixty (60) days following the Effective Date of the Plan; or

ii. no Proof of Claim has been timely filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated; or

iii. the claim is subject to litigation in any appropriate forum.

B. **Delay of Distribution on a Disputed Claim**

No distribution will be made on a disputed claim unless and until the claim is allowed by a Final Order.

C. **Settlement of Disputed Claims**

The Debtor will have the power and authority to settle and compromise disputed claims only with court approval and in compliance with Federal Rule of Bankruptcy Procedure 9019.

3. **General**

The payments, distributions, and other treatments provided in respect of each Allowed Claim or Interest set forth herein shall be in complete satisfaction, discharge, and release of such Allowed Claim, except as otherwise expressly provided. Notwithstanding any other provision of

the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim or Interest which at such date or time is disputed, unliquidated, or contingent shall not be made until such Claim or Interest becomes an Allowed Claim or Allowed Interest, whereupon such payment and distributions shall be made promptly, together with any interest accrued thereon in accordance with the provisions of this Plan.

### PAYMENTS TO CREDITORS UNDER THE PLAN

Unless otherwise provided in this Plan, funds received by the Debtor or otherwise included in this Plan but not specifically disbursed directly to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1.      Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid in full prior to the payment of all other claims.

2.      Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code.

3.      All other claims shall be paid in accordance with the Bankruptcy Code.

4.      In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor shall retain the Debtor's interest in property of the estate.

### TRUSTEE COMPENSATION

The Trustee shall be paid for services rendered in this Chapter 11 case an Administrative Priority Claim under § 507 of the Bankruptcy Code and pursuant to Article V of this Plan. All fees and expenses requested by the Trustee are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code.

**ATTORNEY COMPENSATION**

The Debtor's attorneys, Gellert Scali Busenkell & Brown, LLC and appellate counsel, shall be paid for the services rendered to the Debtor herein as an Administrative Priority Claim under § 507 of the Bankruptcy Code and pursuant to Article V of this Plan. All fees and expenses requested by the Debtor's attorney are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code.

## ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business.

1.      Debtor was created in 2014 to manage the sale of advertising on GunBroker.com, and it has the exclusive right to sell advertising on that website. Debtor and GunBroker.com were sister companies; GunBroker.com was owned by IA Tech, LLC, and, before the merger with GunUp, Inc. ("GunUp"), IA Tech was also Debtor's sole owner. GunBroker.com is the world's largest online-auction website for firearms and hunting and shooting gear. As of 2018, GunBroker.com had more than 3.5 million registered users and had sold more than $4 billion in merchandise. Until 2015, Debtor placed advertisements only on GunBroker.com.

2.      In late 2014, Debtor sought to expand advertising beyond GunBroker.com and began discussing a merger with GunUp who ran a similar business. The parties ultimately agreed on a transaction in which GunUp would merge with Debtor. The final merger agreement signed by the parties was dated March 31, 2015, and the transaction closed the following day. Under the agreement, Debtor was to pay GunUp $300,000 at closing and issue 281,996 shares of stock to GunUp. Debtor was scheduled to pay additional money as follows: $200,000 on July 1, 2015, and $250,000 on each of May 15, 2016, and May 15, 2017. In addition, Debtor was scheduled to issue 563,990 more shares of stock—half on each of September 15, 2016, and March 15, 2018.

6

3.      After the transaction closed, the Debtor and GunUp engaged in extensive litigation in the Washington Action over the value of the assets that each party contributed to the transaction, and other matters.

4.      On May 3, 2021, AMMO, Inc. ("AMMO") purchased the Gunbroker.com businesses. As part of that transaction, Gemini was formed to retain certain assets under the ownership of Mr. Urvan. Among those assets were (i) the equity interests in the Debtor; (ii) the GDI Claim; and (iii) the DIP Lender Claim.

## A. Debtor's Business Operations

5.      Media Lodge is an advertising brokerage. Website owners contract with Media Lodge to sell advertising space on their websites and related media. In exchange, Media Lodge remits a share of the advertising revenue, plus management fees. In large part, the advertisements are in the form of *banner advertisements*—ads in the form of images.

6.      Media Lodge's right to sell advertising on GunBroker.com has no expiration date. Under an oral contract, Media Lodge bills the advertisers, collects all advertising revenue, and remits to GunBroker.com its share, plus a management fee. GunBroker.com's overall share is about 40% to 50% (with specific underlying percentages depending on the form of media) (compare revenue for *Banner Ads* with *Banner Exchange*).[2] GunBroker.com invoices Media Lodge monthly for its share of advertising revenue.

7.      In 2014, at Media Lodge's beginning, GunBroker.com received and deposited the advertiser payments in its bank account; thereafter, Media Lodge received the advertiser payments. But regardless of which entity received the payments, Media Lodge recorded 100% of the

---

[2] GunBroker.com's invoices and Media Lodge's financial statements refer to GunBroker.com's share as *Banner Exchange*.

advertising revenue and expenses on its books, listing the amounts due to GunBroker.com on an intercompany account. This was consistent with the oral contract and Generally Accepted Accounting Principles (GAAP).

8.      Led by CEO Jeff Siegel, Media Lodge quickly became successful, bringing in $1,833,674 in revenue in 2014 and over $3 million the following year. Setting aside the management fee it paid to its parent, IA Tech, Media Lodge essentially broke even in 2014 (add *Net Management Fee* of $376,535 to *Net Income* of negative $383,687.29). But, because Media Lodge in fact operated at a loss, IA Tech funded its operating shortfall with loans, recorded on the intercompany account.

9.      Media Lodge had four full-time employees and was a valuable company. Its assets included $429,991 in accounts receivable as of year-end 2014, that figure would grow to $973,138 by the end of the first quarter of 2015. Meanwhile, Media Lodge had $28,762 in cash.

10.     The Debtor's corporate headquarters is located at 11095 Viking Drive, Eden Prairie, MN 55344.

**B. Organizational Structure, Governance, and Current Management**

11.     The Debtor is wholly owned by Gemini, which is in turn wholly owned by Steve Urvan.

12.     The Debtor has two wholly owned subsidiaries: LLC Sub and Acquisition Sub. LLC Sub is a non-debtor entity that Media Lodge, LLC that holds the contracts with third party publishers and partners for which the Media Lodge organization sells advertising. LLC Sub receives and books the ad revenue and pays the publisher/partner their cut of the revenue according to the terms of the contract with that publisher/partner. Acquisition Sub is a non-debtor entity that sells advertising for in-house and third party web sites, social media, email lists and other media.

8

The Debtor has a single member board of director comprised of Jeff Siegel. The officers of the Debtor include a President, Vice President and Secretary. The Debtor's' current management consists of Jeff Siegel, as CEO; and Susan Lokey, Managing Member and Secretary.

13.    The Debtor is a corporate entity organized under the laws of the State of Delaware. The Debtor's Chief Executive Officer at the time of the filing of this case was Jeff Siegel.

## C.  Capital Structure

14.    As of the Petition Date, the Debtor was indebted to its ultimate parent, GDI, pursuant to that certain Secured Promissory Note dated March 31, 2015, originally between the Debtor and IA Tech and other intercompany advances made by IA Tech and then GDI in the aggregate amount of $9,382,132.  Neither IA Tech nor GDI ever perfected a security interest with respect to the Secured Promissory Note and the entirety of the obligation is unsecured.

15.    In addition, as of the Petition Date, the Debtor's other major creditor was GunUp, to whom the Debtor is obligated on a judgment in the face amount of $2,478,990.77 (the "Judgment") issued by the Superior Court for the State of Washington in and for King County in Case No. 16-2-15005-5 SEA. The Debtor disputes the court's findings in the Washington Action and has appealed the Judgment. On January 11, 2021, GunUp filed Claim No. 3-1 in the amount of $2,673,883.59 on account of the Judgment (the "GunUp Claim").

16.    As of the Petition Date, the Debtor's remaining obligations constituted unsecured debt of approximately $231,000 owed to trade creditors and intercompany claims of other affiliates.

## D.  Circumstances Leading to Chapter 11 Filing.

17.    After the failed merger with GunUp, GunUp filed the Washington Action against the Debtor in June 2016. GunUp alleged multiple claims against Debtor, including breach of

9

contract. The parties filed cross-motions for summary judgment. GunUp sought a determination that Debtor had breached the merger agreement. GunUp also sought to dismiss Debtor's counterclaims and third-party claims. Meanwhile, Debtor moved for summary judgment, seeking dismissal of GunUp's claims and affirmative relief on its breach-of-contract counterclaim.

18.     The trial court granted GunUp's motions and denied Debtor's motions. The court determined as a matter of law that Debtor had made material misrepresentations to GunUp and failed to disclose material information to GunUp and granted rescission of the transaction. This meant that that GunUp would return to Debtor the shares of stock it received, and Debtor would compensate GunUp for the value of the consideration it gave for those shares.

19.     After a nine-day valuation trial, the court found that GunUp was worth $1.411 million as of March 2015. After applying a $500,000 credit for Media Lodge's payments to GunUp, the court entered a principal judgment of $911,000, plus 8% prejudgment interest, for a total judgment of $1,240,852.

20.     The court subsequently awarded GunUp $1,094,589.71 in attorney's fees and $138,956.13 in costs and entered a supplemental judgment. With accrued interest on the initial judgment, the supplemental judgment totaled $2,478,990.77.

21.     In July 2020, the Debtor timely appealed the Judgment to the Court of Appeals, Division I of the State of Washington, Case No. 80766-8 (the "Appeal"), which challenged the trial court's entry of the Judgment on a summary judgment basis as well as the court's calculation of damages.

22.     After the Debtor filed the Appeal, GunUp commenced garnishment actions against customers of Debtor's affiliate, Media Lodge, LLC ("LLC Sub") seeking to garnish funds that those customers owe to the Debtor.

10

23.     Since the filing of the of the Washington Action by GunUp, the Debtor has been significantly cash-flow negative, as legal fees and other litigation costs have far exceeded the Debtor's assets, which primarily consist of its equity interests in the Subsidiaries.  These excess costs have largely been funded by intercompany debt, which is reflected in the GDI Claim.

24.     GunUp also filed additional litigation seeking to recover from all of the Debtor's current and former directors in connection with the assertions directly at issue in the GunUp litigation. While these certain individuals are no longer directors of the Debtor, they continue to serve important roles for the Subsidiaries.  For these reasons, the Debtor sought bankruptcy protection so it may obtain post-petition funding in order to preserve the value of the Debtor's business operations in the ordinary course as well as to fund the appeal, which if successful, would reduce, if not eliminate, substantially all of the Debtor's non-intercompany debt.

### 1.2    Filing of the Debtor's Chapter 11 Case.

On November 10, 2020, the Debtor filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code.  The Chapter 11 case is pending in the Bankruptcy Court in the District of Delaware.

### 1.3    Debtor's Assets.

The Debtor's Assets as of the Petition Date were comprised of the following.

| Asset | Scheduled Value |
|---|---|
| Operating Account | $0.00 |
| EJJ Realty/NOAVA Deposit | $2,400.00 |
| Park Ridge Utilities Deposit | $350.00 |
| Ryan Companies US Deposit | $10,888.73 |
| SalesForce 1 Year License Deposit | $18,781.46 |
| JW Player 1 Year License (2/19 - 1/20) - Ad Ops Expense Deposit | $36,000.00 |
| Claudia Bircau - Outdoor Wire - 2020 Corporate Membership Industry Newsletter Deposit | $3,500.00 |
| Christen Everly - Flight for NRA Deposit | $583.80 |
| Sprout Social - Social Media Advertising Deposit | $2,608.96 |
| JW Player - Ad Operations Deposit | $21,392.30 |
| 360 Outdoors Media - In the Hunt 2020-2021 - 1/2 Payment Deposit | $25,000.00 |
| Karin Levin - Flight for NRA Deposit | $345.19 |
| Katey Powers - NRA Flight Deposit | $271.40 |

11

| | |
|---|---|
| Katey Powers - NRA Flight Deposit | $291.50 |
| Claudia Bircau - CoSchedule - Annual Fee Deposit | $1,440.00 |
| Zoom (JS Exp Rep) - Zoom annual fee Deposit | $159.53 |
| Surfwriter Inc (pd to CE) -Rev Cloud App Annual Subscription Deposit | $1,152.00 |
| JW Player - Ad Operations Deposit | $6,784.60 |
| 360 Outdoors Media -In the Hunt 2020-2021 - 1/2 Payment Deposit | $25,000.00 |
| Sprout Social - Social Media Advertising Deposit | $2,608.96 |
| Claudia Bircau (JW Player) - Quarterly ads Deposit | $21,392.30 |
| Thomas Merriott (Appriver) Host - annual subscription Deposit | $1,166.24 |
| Accounts Receivable | $155,151.37 |
| Office furniture | $0.00 |
| Website Design | $33,585.20 |
| Good Will - GunUp Publishing, Inc. | $476,043.58 |
| Net operating losses exist since date of inception | $0.00 |
| Misc. due from related party | $236.46 |
| Listrak Fees - 0920 - GunGenius | $50.63 |
| Listrak Fees - 0920 - FC | $12.53 |
| Listrak Fees - 0920 - 50CF | $98.27 |
| Listrak Fees - 0920 - Outdoors.com | $75.03 |
| **TOTAL** | **$847,370.04** |

## 1.4. Debtor's Liabilities.

The Debtor's Liabilities as of the Petition Date are as follows:

| Creditor | Nature of Debt | Amount Owed |
|---|---|---|
| Gemini Direct Investments, LLC | Unsecured debt | $9,382,132.00 |
| 50 Campfires, LLC | Unsecured claim | $11,778.84 |
| Armory Forums LLC | Unsecured claim | $8,150.89 |
| Auction Armory | Unsecured claim | $14,040.54 |
| Austin Bhatt | Unsecured claim | $25.43 |
| AvidOutdoorsman | Unsecured claim | $2,073.66 |
| Catch All Media | Unsecured claim | $350.00 |
| Christina Myers | Unsecured claim | $100.00 |
| Christopher Serrano | Unsecured claim | $14,877.80 |
| Claudia Bircu | Unsecured claim | $440.26 |
| Clifton Reinwand | Unsecured claim | $1,925.00 |
| Comcast | Unsecured claim | $69.95 |
| Concealed Nation, LLC | Unsecured claim | $8,527.02 |
| Don Porter | Unsecured claim | $3,750.00 |
| Eric Cilli | Unsecured claim | $217.35 |
| FirstPro | Unsecured claim | $649.58 |
| Forward Media Partners, LLC | Unsecured claim | $991.41 |
| GATE 37B, LLC | Unsecured claim | $240.03 |
| Gordon & Rees LLP | Unsecured claim | $120.00 |
| GunGenius | Unsecured claim | $4,287.00 |
| GunUp, Inc. | Disputed unsecured claim pursuant to judgment | $2,478,990.77 |
| HuntStand (Terra Stride, Inc.) | Unsecured claim | $0.02 |
| i156 LLC (USA CARRY) | Unsecured claim | $585.00 |
| Jeff Siegel | Unsecured claim | $1,152.72 |
| Karen Lynn Pikula | Unsecured claim | $1,200.00 |
| Karlo Jularic | Unsecured claim | $82.51 |

| | | |
|---|---|---|
| Listrak | Unsecured claim | $115,475.34 |
| Nelson Mullins Riley & Scarborough LLP | Unsecured claim | $717.30 |
| Outdoors.com | Unsecured claim | $11,323.12 |
| R.M. Warner, PLC | Unsecured claim | $10,129.88 |
| Registered Agent Solutions Inc. | Unsecured claim | $104.00 |
| Robert Todd Bergin - The Gun Wire | Unsecured claim | $1.36 |
| Ryan Companies US, Inc. | Unsecured claim | $1,598.77 |
| Scott Kenneth Ferguson | Unsecured claim | $219.67 |
| The Ardent Group | Unsecured claim | $920.17 |
| Wiggin and Dana LLP | Unsecured claim | $4,392.12 |
| **TOTAL** | | **$12,081,639.51** |

## 1.5.    Current and Historical Financial Conditions.

The Debtor's financial condition is reflected in the financial statement attached

hereto as Exhibit B.

## 1.6.    Significant Events During the Bankruptcy Case.

Since the Petition Date, the Debtor sought up to $500,000 in financing from GDI and

then Gemini, to finance the Debtor's post-petition operations pending the filing of this Plan. The

Debtor also retained Gellert Scali Busenkell & Brown, LLC as Debtor's counsel. Debtor filed its

Schedules of Assets and Liabilities and Statement of Financial Affairs on November 24, 2020.

The following pleadings have been filed by the Debtor to date:

| Pleading | Date Filed | Docket Number |
|---|---|---|
| Declaration of Jeff Siegel in Support of the Debtor's Petition and First Day Motions | 11/10/2020 | 4 |
| Motion of The Debtor for Entry of Interim and Final Orders (I) Authorizing Payment of Certain Amounts Due to Employees, (II) Confirming Right to Continue Employee Programs on A Post-Petition Basis, (III) Authorizing Payment Of Withholding And Payroll-Related Taxes, and (IV) Granting Such Other and Further Relief | 11/10/2020 | 5 |
| Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (II) Granting Related Relief [D.I. 6; Filed November 10, 2020]. | 11/10/2020 | 6 |
| Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Use of Prepetition Bank Account and Certain Payment Methods, and (II) Waiving the Requirements of 11 U.S.C. Section 345(b) [D.I.7; Filed November 10, 2020]. | 11/10/2020 | 7 |
| Motion to Approve Debtor in Possession Financing | 11/10/2020 | 8 |
| Affidavit/Declaration in Support of First Day Motion Amended Declaration of Jeff Siegel in Support of First Day Motions | 11/12/2020 | 13 |

| | | |
|---|---|---|
| Application/Motion to Employ/Retain Gellert Scali Busenkell & Brown, LLC as Counsel to Debtor | 11/19/2021 | 31 |
| Second Amended Declaration of Jeff Siegel in Support of First Day Motions | 12/3/2020 | 47 |
| Debtor's Motion for Limited Relief from The Automatic Stay Pursuant to Bankruptcy Code Section 362 | 12/16/2020 | 59 |
| Debtor's Opposition to GunUp, Inc.'s Motion to Dismiss | 12/17/2020 | 61 |
| Declaration of Jeff Siegel in Support of Debtor's Opposition to GunUp,Inc.'s Motion to Dismiss | 12/17/2020 | 63 |
| Initial Reporting Requirements Filed by Media Lodge, Inc | 12/17/2020 | 64 |
| Motion for Authority to File Exhibit B to Debtors Opposition to GunUp,Inc.s Motion to Dismiss Under Seal | 12/22/2020 | 68 |
| Proposed Redacted Version of Exhibit B to Debtor's Opposition to GunUp, Inc.'s Motion to Dismiss | 12/22/2020 | 69 |
| Notice of Filing of Debtor's Witness and Exhibit List In Connection With The HearingScheduled for January 11, 2021 | 1/8/2021 | 82 |
| Notice of Filing Revised Debtor-in-Possession Budget | 1/11/2021 | 84 |
| Application to Employ Carney Badley Spellman, P.S. as Appellate Litigation Counsel | 1/29/2021 | 94 |
| Application to Employ Professionals Utilizies in the Ordinary Course of Business *Nunc Pro Tunc* to the Petition Date | 2/26/2021 | 103 |
| Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 For Authority to Enter Into First Amendment to Lease Agreement With OSWX Ridge LLC | 3/23/2021 | 116 |
| Motion of Debtor for an Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtor to Continue to Use Cash Collateral Through July 25, 2021, and (III) Authorizing Change in DIP Lender | 5/18/2021 | 148 |
| First Interim Fee Application of Gellert Scali Busenkell & Brown, LLC as Counsel to the Debtors and Debtors-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period November 10, 2021 to March 31, 2021 | 6/11/2021 | 170 |
| First Interim Fee Application of Carney Badley Spellman, P.S as Appellate Litigation Counsel to the Debtor and Debtor-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period February 16, 2021 to May 31, 2021 | 6/25/2021 | 178 |
| Motion of Media Lodge, Inc., for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Media Lodge, Inc.s Settlement with Gemini Direct LLC, and GunUp Holding, Inc. | 9/3/2021 | 193 |
| Motion to Shorten Notice With Respect to  Motion of Media Lodge, Inc., for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Media Lodge, Inc.s Settlement with Gemini Direct LLC, and GunUp Holding, Inc. | 9/3/2021 | 194 |

The following substantive Orders have been entered by the Bankruptcy Court to date:

| Order | Date | Docket Number |
|---|---|---|
| Interim Order (I) Authorizing Debtor To Pay Prepetition Claims Of Critical Vendors And (II) Granting Related Relief | 11/13/20 | 19 |
| Interim Order (I) Authorizing The Debtor To (A) Pay Certain Employee Compensation And Benefits, (B) Maintain And Continue Such Benefits And Other Employee-Related Programs, And (II) Granting Related Relief | 11/13/20 | 18 |
| Interim Order Pursuant To 11 U.S.C. §§105, 361, 362, 363(C), 364(C)(1), 364(C)(2), 364(D)(1), 364(E) And 507 (I) Authorizing Debtor To (A) Obtain Postpetition Secured Financing From Gemini Direct Investment, LLC; (B) Utilize Cash Collateral And (C) Pay Certain Related Fees And Charges; (Ii) Granting Adequate Protection To The Prepetition Lender; (Iii) Modifying The Automatic Stay; (Iv) Scheduling A Final Hearing And (V) Granting Certain Related Relief | 11/13/20 | 21 |
| Interim Order (I) Authorizing Use Of Prepetition Bank Account And Certain Payment Methods, And (II) Waiving The Requirements Of 11 U.S.C. 345(B) | 11/13/20 | 20 |
| Order (INTERIM) (I) Authorizing Debtor to (A) Obtain Postpetition Secured Financing from Gemini Direct Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees and Charges; (II) Granting Adequate Protection to the Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing, and (V) Granting Certain Related Relief | 11/13/2020 | 21 |
| Order Authorizing the Debtor to Employ Gellert Scali Busenkell & Brown, LLC as Bankruptcy Counsel Nunc Pro Tunc to the Petition Date | 12/10/2020 | 58 |
| Order for Limited Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362 | 1/4/2021 | 72 |
| Final Order (I) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (II) Granting Related Relief | 1/6/2021 | 75 |
| Order Denying Motion by GunUp, Inc. to Dismiss Chapter 11 Case | 1/14/2021 | 89 |
| Final Order (I) Authorizing Debtor to (A) Obtain Postpetition Secured Financing from GeminiDirect Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees And Charges; (II) Modifying the Automatic Stay; and (III) Granting Certain Related Relief | 1/14/2021 | 90 |
| Order Authorizing the Debtor to Employ Carney Badley Spellman, P.S. as Appellate Litigation Counsel | 2/16/2021 | 99 |
| Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 Authorizing the Debtors to Enter Into First Amendment to Lease Agreement With OSWX Ridge LLC | 4/1/2021 | 120 |
| Order Pursuant to Sections 105, 327, 328 and 330 of the Bankruptcy Code, Authorizing the Debtor to Retain and Compensate Professionals Utilized in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date | 4/7/2021 | 125 |
| Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtor to Continue to Use Cash Collateral | 6/9/2021 | 168 |

| | | |
|---|---|---|
| Through July 25, 2021, and (III) Authorizing Change in DIP Lender | | |
| Order Granting First Interim Fee Application of Gellert Scali Busenkell & Brown, LLC as Counsel to the Debtors and Debtors-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the Period from November 10, 2020 Through March 31, 2021 | 7/12/2021 | 184 |
| Order Granting First Interim Fee Application of Carney Badley Spellman, P.S as Appellate Litigation Counsel to the Debtor and Debtor-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period February 16, 2021 to May 31, 2021 | 7/15/2021 | 186 |

On March 15, 2021, the Debtor commenced an adversary proceeding against GunUp by filing a complaint (as amended, the "Complaint") seeking to subordinate the GunUp Claim pursuant to section 510(b) of the Bankruptcy Code. The Complaint was amended on April 12, 2021. The Complaint alleged that because the GunUp Claim arose from the rescission of a purchase of a security of the Debtor, the GunUp Claim must be subordinated to all other claims against the Debtor. Moreover, because the security at issue in the Merger Agreement was the Debtor's common stock, the Complaint sought to subordinate the GunUp Claim to the same priority as the Debtor's common stock.

On May 28, 2021, GunUp responded to the Complaint, asserted counterclaims against the Debtor for non-dischargeability of the GunUp Claim, and asserted claims against Gemini for equitable subordination or recharacterization of the GDI Claim.

In July 2021, the parties agreed to resolve all claims between GunUp, the Debtor and its subsidiaries and Gemini. This resulted in the Settlement Agreement and Mutual Releases, annexed hereto as Exhibit C (the "GunUp Settlement Agreement"). The Court will consider the GunUp Settlement Agreement on September 15, 2021. Under the GunUp Settlement Agreement, GunUp will be paid $1,000,000 in satisfaction of the GunUp Claim (the "GunUp Settlement Payment"). The Debtor will contribute $950,000 and Jeff Siegel will contribute $50,000 toward the GunUp

Settlement Payment. Court approval of the GunUp Settlement is a condition precedent to confirmation of this Plan. Should the Court decline to approve the GunUp Settlement, the hearing on confirmation of the Plan shall be adjourned to a date to be determined by the Debtor and GunUp or otherwise ordered by the Court.

1.7.    <u>**Projected Recovery of Avoidable Transfers**</u>

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions. A review of the Debtor's books and records indicates Debtor generally paid all of its debts when they were due, in the ordinary course of business.

**ARTICLE 2**

**THE PLAN**

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

2.1.    <u>**Unclassified Claims.**</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and DIP Lender claims are not classified. They are not considered impaired. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following

17

Claims in any class:

### A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. The Debtor's secured debtor-in-possession financing.

2. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | Utilities: $27.00 per month Payroll: $79,548 per month Lease: $1,767.00 per month Insurance: $600.00 per month | Payment through the Plan as follows: expenses that arise in the ordinary course of business will be paid in the ordinary course and pursuant to the business practices between the Debtor and creditor. |
| Administrative Tax Claim | $0 | Payment through the Plan as follows: taxes that arise in the ordinary course of business will be paid in the ordinary course and pursuant to the business practices between the Debtor and the taxing authorities. |
| Professional fees, as approved by the Bankruptcy Court | $300,000 | Payment through the Plan as follows: the Debtor's Professionals will be able to draw down its |

| | | approved fees from the retainer and the balance will be paid as those fees are incurred in the ordinary course and pursuant to the business practices of the Debtor, |
| Subchapter V Trustee | $12,000 | Payment through the Plan as follows: The Subchapter V Trustee will be paid out of the anticipated distributions. |
| DIP Lender (GDI) | Up to $500,0000[3] | To be refinanced by the Exit Facility The Exit Facility shall bear interest at the rate of 7% per annum and shall be amortized over a sixty (60) month term as of the Effective Date. |

### B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

There are no Priority Tax Claims.

### 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.    Classes of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of General Unsecured Claims against the Debtor:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | General Unsecured Claims | No | Claims shall be paid in full no later than (60) days following the entry of an order approving this Plan. Estimated percent of claim paid = 100% |

---

[3]  As of September 8, 2021, the Debtor owes $ 162,023.14 on account of the DIP Lender Claim.

| | | | |
|---|---|---|---|
| 2 | GDI Claim | Yes | The GDI Claim shall be waived and released as of the Petition Date. Accordingly, Gemini will receive no distribution on account of the GDI Claim. |
| 3 | GunUp Claim | Yes | This Claim will be paid $1,000,000 within fifteen (15) days after the Effective Date. |

### B. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity Holders | No | Current existing equity holders shall retain their equity interests on a pro rata basis. |

### 2.3. <u>Claims Objections.</u>

The Debtor may object to the amount or validity of any Claim, other than the GunUp Claim, within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4. <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Executory Contracts shown on Exhibit D shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the

Bankruptcy Code, if any.

Exhibit D also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

The Debtor will reject any Executory Contract and Unexpired Lease that is not expressly assumed and is not listed in Exhibit D.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract is 30 days from the Effective Date.** Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise. Allowed Rejection Damages claims will be treated as Class 1 claims.

## 2.5.   Means for Implementation of the Plan.

The Plan will be funded by the proceeds realized from the continued operations of the Debtor with the assistance of capital obtained through Exit Facility in the amount of up to $1,500,000. The Plan will also be funded by a $50,000.00 contribution from Jeff Siegel in consideration for the Releases set forth in the GunUp Settlement Agreement.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

## 2.6.   Payments.

Under § 1191(a), unless otherwise ordered by the Bankruptcy Court, payments to Creditors provided for in the Plan will be made by the Debtor

21

### 2.7. **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| Jeff Siegel | Chief Executive Officer | $200,000 base salary plus $200,000 commission (based on performance). |

### 2.8. **Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

### 2.9. **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.**

Debtor has provided projected financial information. Those projections are listed in Exhibit A.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. **Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan and available under the Exit Facility to pay all the Claims and expenses that are entitled to be paid on or after that date.

### 3.2. **Ability to Make Future Plan Payments and Operate Without Further Reorganization**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit A.

The Debtor's financial projections show that the Debtor will have an aggregate disposable income over the five (5) year projection period, after paying operating expenses and post-confirmation taxes, of $2.5 million. All payments required to pre-petition creditors under the plan will be made within sixty (60) days of the Effective Date.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER**

**FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

## ARTICLE 4
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit E.

## ARTICLE 5
## DISCHARGE

As soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan.

## ARTICLE 6
## GENERAL PROVISIONS

### 6.1. Title to Assets.

Under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders.

### 6.2. Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they vote to accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any

modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. __Captions.__

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. __Modification of Plan.__

The Debtor may modify any term of the Plan that does not affect the GunUp Settlement Agreement or the GunUp Settlement Payment at any time before confirmation of the Plan pursuant to § 1193(a). The Debtor may not modify any term of the Plan that affects the GunUp Settlement Agreement or the GunUp Settlement Payment without the written consent of GunUp. However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. __Dischare of Subchapter V Trustee.__

Upon the effective date of the plan, the Trustee is discharged from and relieved of her trust and her duties and responsibilities are terminated.

### 6.8. __Final Decree.__

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 6.8 __Default; Accelerated Judgment.__

In the event of a post-Effective Date payment default by the Debtor under Sections 2.1, 2.2, 2.4 or 2.5 of this Plan, the affected creditor may give notice to the Debtor of the default; and if the default is not cured and remains unresolved fourteen (14) days after such notice has been

given, the Court may enter judgment in favor of the affected creditor and against the Debtor on motion of the affected creditor supported by an affidavit attesting as to the Debtor's payment default, the Debtor's failure to timely cure the same and the giving of notice to the Debtor as provided herein.

## ARTICLE 7
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**7.1** **Conditions to Confirmation.** Unless duly waived pursuant to section 7.3 of the Plan, confirmation shall not occur until the Confirmation Order is entered by the Bankruptcy Court and is in form and substance reasonably satisfactory to the Debtor and the DIP Lender.

**7.2** **Conditions to the Effective Date.** The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to section 7.3 of the Plan: (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor and the DIP Lender; (ii) the Confirmation Order shall have become a Final Order; (iii) the Exit Facility has been executed by the Debtor and the DIP Lender.

**7.3** **Waiver of Conditions to Confirmation or the Effective Date.** The conditions to Confirmation and the conditions to the Effective Date set forth in sections 7.1 and 7.2 of the Plan may be waived in whole or part in writing by the Debtor and the DIP Lender, as applicable, at any time without further Order.

**7.4** **Effect of Nonoccurrence of Conditions to the Effective Date.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with sections 7.1, 7.2, and 7.3 of the Plan, then upon motion by the Debtor made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this section 7.4, (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the rights of the Debtor, the DIP Lender, or any other party in interest.

## ARTICLE 8
## ATTACHMENTS

The following documents accompany the Plan:

- Five Year Projections, annexed as Exhibit A.
- Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit B.

25

- GunUp Settlement Agreement, annexed as Exhibit C.
- Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit D.
- Liquidation Analysis, annexed as Exhibit E.
- Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit F.
- Exit Facility Agreement, annexed as Exhibit G.

## ARTICLE 8
## DEFINITIONS

**8.1**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**8.2**     **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**8.3**     **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, postpetition financing obtained by the Debtor, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**8.4**     **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code**.**

**8.5**     **Allowed Claim**: Any Claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**8.6**     **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.7**     **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.8     Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**8.9     Bankruptcy Court**: The United States Bankruptcy Court for the District of Delaware.

**8.10     Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**8.11     Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**8.12     Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Media Lodge, Inc. is the Debtor-in-Possession.

**8.13     Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**8.14     Class**: A category of holders of Claims or Equity Interests which are substantially similar to the other Claims or Interests in such class.

**8.15     Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**8.16     Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**8.17     Confirmation Hearing**: The hearing to be held on September 15, 2021 to consider confirmation of the Plan.

**8.18     Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**8.19     Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

27

**8.20    Debtor** and **Debtor-in-Possession**: Media Lodge, Inc., the debtor-in-possession in this Chapter 11 Case.

**8.21    Disputed Claim:** Any Claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**8.22    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**8.23    Effective Date**: The effective date of a chapter 11 plan is date on which all the conditions precedent to the effective date set forth in section 7.2 of the Plan are first satisfied,

**8.24    Equity Interest**: An ownership interest in the Debtor.

**8.25    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**8.26    Final Order**: An order or judgment of the Bankruptcy Court or other Court of competent jurisdiction that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**8.27    Interest** means (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all units, shares, common stock, preferred stock, partnership interests, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, whether or not transferable and whether fully vested or vesting in the future, that existed immediately before the Effective Date and (b) any Claim against the Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

**8.28    Petition Date**: November 10, 2020, the date the chapter 11 petition for relief was filed.

**8.29    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**8.30    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**8.31    GunUp Settlement Agreement**: The Settlement Agreement and Mutual Releases entered into by and among the Debtor, GunUp Holdings, Inc., et. al., on September 3, 2021, annexed as Exhibit C.

**8.32    GunUp Settlement Payment**: The payment due to GunUp under the GunUp Settlement Agreement.

28

**8.33    Reorganized Debtor**: The Debtor after the Effective Date.

**8.34    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**8.35    Trustee**: Natasha Songonuga, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**8.36    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated:  September 10, 2021
Wilmington, Delaware

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
1201 N. Orange St., Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
          rgellert@gsbblaw.com

# EXHIBIT A

Five Year Projections

|  | 2018 | 2019 | 2020 FC* |
|---|---|---|---|
| ML Inc Recognized Revenue | $ 4,770,404 | $ 4,145,423 | $ 2,523,235 |
| GB Top Line Recognized Revenue | $ - | $ 1,323,577 | $ 1,700,000 |
| **Sub-Total** | **$ 4,770,404** | **$ 5,469,000** | **$ 4,223,235** |
|  |  |  |  |
| Net Income (Loss) | $ (3,028,789) | $ (1,659,187) | $ (2,702,748) |
| Litigation Liability | $ - | $ 1,061,859 | $ 1,494,628 |
| Depreciation | $ 15,357 | $ 20,028 | $ 12,318 |
| Amortization | $ 100,220 | $ 100,220 | $ 100,220 |
| Legal Expenses Related to Suit | $ 1,703,451 | $ 501,151 | $ 532,799 |
| **EBITDA** | **$ (1,209,761)** | **$ 24,071** | **$ (562,783)** |

| 2021 | 2022 | 2023 | 2024 | 2025 | TOTAL |
|---|---|---|---|---|---|
| $ 2,979,183 | $ 3,366,476 | $ 3,703,124 | $ 4,036,405 | $ 4,440,046 | $ 18,525,234 |
| $ 1,904,000 | $ 2,113,440 | $ 2,324,784 | $ 2,534,015 | $ 2,736,736 | $ 11,612,974 |
| **$ 4,883,183** | **$ 5,479,916** | **$ 6,027,908** | **$ 6,570,420** | **$ 7,176,782** | **$ 30,138,208** |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| **$ (126,027)** | **$ 217,581** | **$ 527,009** | **$ 798,034** | **$ 1,141,606** | **$ 2,558,203** |

**MEDIA LODGE INC.**
Proforma Statement of Income/(Loss)
For the Twelve Months Ending Tuesday, December 31, 2019

| | Consolidated Fiscal 2019 | Consolidated Fiscal 2018 |
|---|---|---|
| **ORDINARY INCOME / EXPENSE** | | |
| | | |
| **Income** | | |
| Affiliate Revenue | $2,319 | $778 |
| Banner Ads | $822,049 | $914,200 |
| Banner Ads - Programmatic Ads | $323,705 | $371,888 |
| Mobile Banner Ads | $36,517 | $46,096 |
| Email | $2,558,770 | $1,846,525 |
| eNewsletter | $446,069 | $394,035 |
| Video Advertising | $3,439 | $267,654 |
| Video Advertising - GetZone | $268,493 | $232,183 |
| Media Lodge Network | $767,077 | $497,940 |
| GunGenius Advertising | | $202 |
| Lead Generation Program | $103,689 | $196,190 |
| Comp Ad Space for failed svc | | $2,714 |
| Banner Exchange | $136,920 | $954,081 |
| Miscellaneous Income | $14 | |
| **Total Income** | **$5,469,062** | **$5,724,485** |
| | | |
| **Cost of Goods Sold** | | |
| Hosting / Data Center | $21,789 | $51,472 |
| **Production Costs** | **$21,789** | **$51,472** |
| | | |
| Commission | $471,160 | $526,957 |
| Advertising Consult - Programmatic | $72,437 | $72,589 |
| Publisher Costs (Bloggers) | $419,646 | $369,450 |
| Banner Exchange | $1,815,785 | $926,768 |
| Ad Creation/Graphic Desogn (For Advertisers) | $29,341 | $62,486 |
| Advertising Joint Venture | $38,642 | $136,642 |
| Ad Operations | $249,173 | $454,396 |
| Graphic Design | | $2,278 |
| Print Placements | | $3,200 |
| Video Production | $268,568 | $186,109 |
| Video Production Get Zone | $20,350 | $13,035 |
| Billable Expenses | $21,302 | $2,283 |
| Credit Card fees | $29,692 | $25,861 |
| Gateway Fees | $180 | $176 |
| Advance Retail Segmentation Expense | $507,331 | $287,721 |
| | | |
| **Selling Costs** | **$3,943,606** | **$3,069,950** |
| **Total Cost of Goods Sold** | **$3,965,395** | **$3,121,423** |
| **Gross Profit** | **$1,503,667** | **$2,603,062** |
| | | |
| | | |
| **Expenses** | | |
| **Administrative Expense** | | |
| Liability Insurance | $99 | |
| Accounting | $3,552 | $9,028 |
| Legal Fees | $531,151 | $1,733,451 |
| Professional Fees | | $10,000 |
| Consulting Fees | $5,695 | $9,163 |
| Business Development | $840 | $7,500 |
| **Total Administrative Expense** | **$541,337** | **$1,769,142** |
| | | |
| **Expense** | | |
| Bank Service Charges | $8,749 | $12,814 |
| Wire Fees | $191 | $182 |
| Domain Registration Fees | $26 | $159 |
| Software Subscriptions & Licenses | $40,281 | $54,139 |
| Trade Organizations | $250 | |

**MEDIA LODGE INC.**
Proforma Statement of Income/(Loss)
For the Twelve Months Ending Tuesday, December 31, 2019

|  | Consolidated | Consolidated |
|---|---|---|
|  | Fiscal 2019 | Fiscal 2018 |
| **ORDINARY INCOME / EXPENSE** |  |  |
| Licenses and Permits | $2,092 | $750 |
| Office Supplies | $1,200 | $1,238 |
| Postage and Delivery | $110 | $451 |
| Recruiting | $247 |  |
| Telephone | $5,385 | $6,603 |
| Internet (Wi-Fi or Wired) | $2,688 | $3,086 |
| Miscellaneous | $657 | $532 |
| Office Equipment | $992 | $1,589 |
| Ad Production | $5,289 | $24,999 |
| Press Releases | $3,500 | $5,200 |
| Technology | $5,667 |  |
| Rent | $22,992 | $30,905 |
| Utilities | $1,182 | $474 |
| Operating Expenses for Buildings (part of Rent) | $5,304 |  |
| Other Taxes | $1,725 | $19,754 |
| State Tax |  | $793 |
| NRA | $7,230 | $5,537 |
| SHOT Show | $29,403 | $82,565 |
| Other Trade Shows | $3,186 | $5,994 |
| Conference Registration | $200 | $50 |
| Airfare | $7,430 | $27,194 |
| Ground Transportation | $2,960 | $7,299 |
| Lodging | $1,222 | $10,001 |
| Meals | $3,406 | $9,485 |
| Bad Debt |  | $34,400 |
| Depreciation - Website Design | $9,116 | $4,445 |
| Depreciation - Adv Ret Seg | $10,912 | $10,912 |
| Amortization of GunUp | $100,220 | $100,220 |
| Wages | $997,882 | $1,233,497 |
| Contract Labor | $46,530 | $45,440 |
| Bonuses, Other Wages | $46,250 | ($11,384) |
| Benefits | $20,710 | $24,931 |
| Employee Profit Sharing | $42,471 | $49,933 |
| Federal Unemployment tax | $294 | $672 |
| State Unemployment tax | $18,102 | $16,205 |
| Medicare tax | $21,638 | $25,893 |
| Workers Comp | $6,902 | $9,166 |
| Social Security tax | $66,406 | $78,829 |
| Administration Fee | $8,663 | $10,302 |
| **Total Expense** | **$1,559,658** | **$1,945,255** |
|  |  |  |
| **Other (Income) Expense** |  |  |
| Other Expense | $1,061,859 | $9,292 |
| **Total Other (Income) Expense** | **$1,061,859** | **$9,292** |
| **Net Income (Loss)** | **($1,659,187)** | **($1,120,627)** |
|  |  |  |
| Depreciation | $20,028 | $15,357 |
| Amortization | $100,220 | $100,220 |
| Litigation Liability | $1,061,859 | $0 |
| Legal Expenses Related to Lawsuit (Estimated) | $501,151 | $1,703,451 |
|  |  |  |
| **EBITDA (Proforma)** | **$24,071** | **$698,401** |

ML INC. 2020
ML Inc '20 Oct Actuals
For the Ten Months Ending Saturday, October 31, 2020

| | ORDINARY INCOME / EXPENSE | January | February | March | April | May | June | July | August | September | October | Nov FC | Dec FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $3 | $25 | $195 | $193,529 | $176 | $426 | $651 | $697 | | | $217 | $217 | $2,608 |
| 41800 | Banner Exchange | $224,599 | $180,075 | $185,608 | $193,529 | $235,952 | $194,968 | $180,986 | $204,800 | $240,075 | $259,929 | $210,052 | $210,052 | $2,520,627 |
| | **Total Income** | $224,602 | $180,100 | $185,803 | $193,529 | $236,128 | $195,394 | $181,637 | $205,497 | $240,075 | $259,929 | $210,270 | $210,270 | $2,523,235 |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| 51000 | Commission | $59,756 | $27,583 | $26,624 | $26,032 | $14,983 | $31,951 | $21,290 | $17,101 | $33,388 | $21,381 | $28,009 | $28,009 | $336,108 |
| 51010 | Advertising Consult - Programmatic | $4,953 | $3,916 | $1,952 | $1,542 | $1,135 | $1,255 | $1,273 | $953 | $991 | $1,648 | $1,962 | $1,962 | $23,542 |
| 51020 | Publisher Costs (Bloggers) | $27,195 | $28,294 | $36,302 | $32,262 | $38,458 | $44,103 | $37,032 | $41,038 | $55,121 | $71,663 | $41,147 | $41,147 | $493,763 |
| 51040 | Banner Exchange | $7,066 | | | | $9,764 | $12,203 | $13,121 | | | | $576 | $576 | $6,916 |
| 51060 | Advertising Expense | | | | | | | | | | $520 | $430 | $0 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $3,200 | | $430 | $0 | $4,730 |
| 51410 | Advertising Joint Venture | | | | | | | | | $11,158 | | | | $11,158 |
| 51430 | Ad Operations | $20,883 | $28,385 | $36,619 | $32,604 | $24,665 | $25,792 | $26,403 | $32,453 | $17,631 | $34,430 | $27,986 | $27,986 | $335,835 |
| 56110 | Video Production | ($1,613) | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $84,665 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 56120 | Credit Card fees | $3,357 | $1,374 | $2,154 | $2,672 | | | | | | | | | $9,556 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | | $4 | $4 | $53 |
| 56200 | Advance Retail Seg Expense | $28,029 | $26,886 | $27,024 | $28,356 | $25,415 | $22,864 | $21,062 | $32,607 | $44,148 | $42,429 | $29,882 | $29,882 | $358,584 |
| | **Selling Costs** | $158,886 | $175,103 | $88,493 | $138,301 | $118,805 | $144,297 | $122,923 | $128,349 | $183,975 | $197,185 | $143,560 | $143,130 | $1,743,007 |
| | **Total Cost of Goods Sold** | $159,141 | $175,358 | $88,802 | $138,576 | $119,100 | $144,592 | $123,218 | $128,644 | $184,081 | $197,586 | $143,838 | $143,408 | $1,746,345 |
| | **Gross Profit** | $65,461 | $4,743 | $97,001 | $54,952 | $117,028 | $50,802 | $58,419 | $76,853 | $55,994 | $62,343 | $66,431 | $66,861 | $776,890 |
| | | | | | | | | | | | | | | |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $49,112 | $53,178 | $60,835 | $62,215 | $55,094 | $124,791 | $57,086 | $34,331 | $19,235 | $8,922 | $4,000 | $4,000 | $532,799 |
| | **Total Administrative Expense** | $49,112 | $53,178 | $60,835 | $62,215 | $55,094 | $124,791 | $57,086 | $34,331 | $19,235 | $8,922 | $4,000 | $4,000 | $532,799 |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,849 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,128 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | ($0) | | | | | | | | | | |
| 60610 | Office Equipment | $194 | | | | | | | | | | $19 | $19 | $232 |
| 61410 | Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,782 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,500 |
| 61750 | Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,400 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | $70 | | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,076 |
| 64040 | NRA | | | | $929 | | | | | | | | | $929 |
| 64070 | SHOT Show | $39,411 | $15,000 | | $750 | | | | | | | | | $55,161 |
| 64350 | Ground Transportation | | | | | | | | $96 | | $24 | | | $120 |
| 64500 | Meals | | | | | | | | $264 | | $74 | | | $338 |
| 66500 | Depreciation - Website Design | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $11,998 |

Case 20-12969-JTD    Doc 197-1    Filed 09/10/21    Page 6 of 17

ML INC. 2020
ML Inc '20 Oct Actuals
For the Ten Months Ending Saturday, October 31, 2020

| | ORDINARY INCOME / EXPENSE | January | February | March | April | May | June | July | August | September | October | Nov FC | Dec FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66550 | Depreciation - Adv Ret Seg | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $320 |
| 67010 | Amortization of GunUp | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $100,220 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,245 |
| 71010 | Contract Labor | $3,440 | $3,183 | $2,829 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $39,441 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $55,000 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,461 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,701 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,362 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,610 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| 99999 | Suspense Accounts | | | | | | | ($6,785) | $6,785 | | | | | |
| | **Total Expense** | $136,867 | $136,009 | $116,798 | $117,653 | $115,858 | $141,454 | $96,638 | $109,870 | $142,226 | $108,704 | $115,067 | $115,067 | $1,452,211 |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | $1,494,628 | | | | | | | | | | | | $1,494,628 |
| | **Total Other (Income) Expense** | $1,494,628 | | | | | | | | | | | | $1,494,628 |
| | **Net Income (Loss)** | ($1,615,146) | ($184,444) | ($80,632) | ($124,915) | ($53,924) | ($215,442) | ($95,304) | ($67,347) | ($105,467) | ($55,283) | ($52,636) | ($52,206) | ($2,702,748) |

Minus Legal ($2,169,949)
Minus Depreciation Web ($2,157,951)
Minus Deprec. Adv Retail ($2,157,631)
Minus Ammor. GU ($2,057,412)
Minus Other Exp Jan ($562,783)

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '21 - Dec '21

| | | Jan '21 FC | Feb '21 FC | Mar '21 FC | Apr '21 FC | May '21 FC | Jun '21 FC | Jul '21 FC | Aug '21 FC | Sept '21 FC | Oct '21 FC | Nov '21 FC | Dec '21 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $300 | $300 | $230 | $300 | $208 | $503 | $768 | $822 | $500 | $400 | $256 | $256 | $4,843 |
| 41800 | Banner Exchange | $265,027 | $212,489 | $219,018 | $228,364 | $278,424 | $230,063 | $213,563 | $241,664 | $283,288 | $306,716 | $247,861 | $247,861 | $2,974,339 |
| | **Total Income** | **$265,327** | **$212,789** | **$219,248** | **$228,664** | **$278,631** | **$230,565** | **$214,331** | **$242,487** | **$283,788** | **$307,116** | **$248,117** | **$248,117** | **$2,979,183** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,009 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51020 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | | $576 | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | | $520 | $52 | $52 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | | $4 | $4 | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | **Selling Costs** | **$139,472** | **$176,100** | **$90,272** | **$139,552** | **$121,511** | **$136,985** | **$125,400** | **$131,946** | **$174,812** | **$201,851** | **$143,560** | **$143,130** | **$1,724,591** |
| | **Total Cost of Goods Sold** | **$139,727** | **$176,355** | **$90,581** | **$139,827** | **$121,806** | **$137,280** | **$125,695** | **$132,241** | **$174,919** | **$202,252** | **$143,838** | **$143,408** | **$1,727,928** |
| | **Gross Profit** | **$125,600** | **$36,434** | **$128,667** | **$88,837** | **$156,826** | **$93,286** | **$88,637** | **$110,246** | **$108,870** | **$104,864** | **$104,279** | **$104,709** | **$1,251,254** |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $84,000 |
| | **Total Administrative Expense** | **$1,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$84,000** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | | $19 | $19 | $232 |
| 61410 | Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | | $70 | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | | | | | | | | | | | | | $0 |
| 64350 | Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '21 - Dec '21

| | | Jan '21 FC | Feb '21 FC | Mar '21 FC | Apr '21 FC | May '21 FC | Jun '21 FC | Jul '21 FC | Aug '21 FC | Sept '21 FC | Oct '21 FC | Nov '21 FC | Dec '21 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,889 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | **$92,638** | **$116,448** | **$112,591** | **$106,596** | **$106,480** | **$132,076** | **$94,394** | **$93,707** | **$133,298** | **$99,678** | **$105,689** | **$105,689** | **$1,299,282** |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | **$31,963** | **($87,014)** | **$9,077** | **($24,758)** | **$43,346** | **($45,790)** | **($12,758)** | **$9,539** | **($31,428)** | **($1,814)** | **($8,410)** | **($7,980)** | **($126,027)** |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '22 - Dec '22

| | | Jan '22 FC | Feb '22 FC | Mar '22 FC | Apr '22 FC | May '22 FC | Jun '22 FC | Jul '22 FC | Aug '22 FC | Sept '22 FC | Oct '22 FC | Nov '22 FC | Dec '22 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $339 | $339 | $260 | $339 | $235 | $568 | $868 | $929 | $565 | $452 | $289 | $289 | $5,473 |
| 41800 | Banner Exchange | $299,481 | $240,113 | $247,490 | $258,051 | $314,619 | $259,971 | $241,327 | $273,080 | $320,116 | $346,590 | $280,083 | $280,083 | $3,361,003 |
| | **Total Income** | **$299,820** | **$240,452** | **$247,750** | **$258,390** | **$314,853** | **$260,539** | **$242,195** | **$274,010** | **$320,681** | **$347,042** | **$280,373** | **$280,373** | **$3,366,476** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,009 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51020 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | $576 | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | $520 | $52 | $52 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | | $4 | $4 | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | | | | | | | | | | | | | | $0 |
| | **Selling Costs** | **$139,472** | **$176,100** | **$90,272** | **$139,552** | **$121,511** | **$136,985** | **$125,400** | **$131,946** | **$174,812** | **$201,851** | **$143,560** | **$143,130** | **$1,724,591** |
| | **Total Cost of Goods Sold** | **$139,727** | **$176,355** | **$90,581** | **$139,827** | **$121,806** | **$137,280** | **$125,695** | **$132,241** | **$174,919** | **$202,252** | **$143,838** | **$143,408** | **$1,727,928** |
| | **Gross Profit** | **$160,093** | **$64,096** | **$157,169** | **$118,564** | **$193,048** | **$123,259** | **$116,500** | **$141,769** | **$145,762** | **$144,789** | **$136,535** | **$136,965** | **$1,638,548** |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| | **Total Administrative Expense** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$60,000** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | $19 | $19 | | $232 |
| 51410 | Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $2,833 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | | | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | | $70 | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | $35,000 | | | | | | | | | | | | $35,000 |
| 64350 | Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '22 - Dec '22

| | ORDINARY INCOME / EXPENSE | Jan '22 FC | Feb '22 FC | Mar '22 FC | Apr '22 FC | May '22 FC | Jun '22 FC | Jul '22 FC | Aug '22 FC | Sept '22 FC | Oct '22 FC | Nov '22 FC | Dec '22 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,889 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | $130,190 | $118,777 | $114,843 | $108,727 | $108,609 | $134,717 | $96,282 | $95,581 | $135,964 | $101,671 | $107,803 | $107,803 | $1,360,968 |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | $24,902 | ($59,680) | $37,327 | $4,836 | $79,438 | ($16,458) | $15,217 | $41,188 | $4,799 | $38,118 | $23,732 | $24,162 | $217,581 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '23 - Dec '23

| | Jan '23 FC | Feb '23 FC | Mar '23 FC | Apr '23 FC | May '23 FC | Jun '23 FC | Jul '23 FC | Aug '23 FC | Sept '23 FC | Oct '23 FC | Nov '23 FC | Dec '23 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | |
| 41010  Banner Ads - Programmatic Ads | $339 | $339 | $260 | $339 | $235 | $568 | $868 | $929 | $565 | $452 | $289 | $289 | $5,473 |
| 41800  Banner Exchange | $299,481 | $240,113 | $247,490 | $258,051 | $314,619 | $259,971 | $241,327 | $273,080 | $320,116 | $346,590 | $280,083 | $280,083 | $3,361,003 |
| **Total Income** | $329,802 | $264,497 | $272,525 | $284,229 | $346,339 | $288,593 | $266,414 | $301,411 | $352,749 | $381,746 | $308,410 | $308,410 | $3,703,124 |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000  Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| **Production Costs** | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| 51000  Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,000 | $306,419 |
| 51010  Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51020  Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040  Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | | $576 | $576 | $6,915 |
| 51060  Advertising Expense | | | | | | | | | | $520 | $52 | $52 | $624 |
| 51070  Ad Creation/Graphic (For Ads) | | $650 | | | | | | | $450 | $1,500 | $430 | $0 | $3,030 |
| 51410  Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430  Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110  Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120  Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150  Billable Expenses | | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | | $780 | $780 | $9,359 |
| 60120  Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130  Gateway Fees | $11 | $11 | $11 | $11 | | | | | | | $4 | $4 | $52 |
| 56200  Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| **Selling Costs** | $139,472 | $176,100 | $90,272 | $139,552 | $121,511 | $136,985 | $125,400 | $131,946 | $174,812 | $201,851 | $143,560 | $143,130 | $1,724,591 |
| **Total Cost of Goods Sold** | $139,727 | $176,355 | $90,581 | $139,827 | $121,806 | $137,280 | $125,695 | $132,241 | $174,919 | $202,252 | $143,838 | $143,408 | $1,727,928 |
| **Gross Profit** | $190,075 | $88,142 | $181,945 | $144,403 | $224,533 | $149,313 | $140,719 | $169,170 | $177,830 | $179,493 | $164,572 | $165,002 | $1,975,196 |
| **Expenses** | | | | | | | | | | | | | |
| **Administrative Expense** | | | | | | | | | | | | | |
| 61100  Legal Fees | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| **Total Administrative Expense** | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| **Expense** | | | | | | | | | | | | | |
| 60100  Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140  Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240  Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250  Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340  Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350  Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380  Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381  Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390  Miscellaneous | | | | | | | | | | | | | $0 |
| 60610  Office Equipment | $194 | | | | | | | | | | $19 | $19 | $232 |
| 61410  Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,783 |
| 61420  Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500  Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750  Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,399 |
| 62000  Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400  Utilities | $27 | $27 | $27 | | | | | $70 | | | $15 | $15 | $181 |
| 62450  Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000  Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040  NRA | | | | | | | | | | | | | $0 |
| 64070  SHOT Show | $35,000 | | | | | | | | | | | | $35,000 |
| 64350  Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500  Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500  Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '23 - Dec '23

| | | Jan '23 FC | Feb '23 FC | Mar '23 FC | Apr '23 FC | May '23 FC | Jun '23 FC | Jul '23 FC | Aug '23 FC | Sept '23 FC | Oct '23 FC | Nov '23 FC | Dec '23 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,989 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | **$132,794** | **$121,152** | **$117,139** | **$110,902** | **$110,782** | **$137,412** | **$98,208** | **$97,493** | **$138,683** | **$103,705** | **$109,959** | **$109,959** | **$1,388,187** |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | **$52,281** | **($38,011)** | **$59,805** | **$28,500** | **$108,751** | **$6,901** | **$37,511** | **$66,877** | **$34,148** | **$70,789** | **$49,613** | **$50,043** | **$527,009** |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '24 - Dec '24

| | | Jan '24 FC | Feb '24 FC | Mar '24 FC | Apr '24 FC | May '24 FC | Jun '24 FC | Jul '24 FC | Aug '24 FC | Sept '24 FC | Oct '24 FC | Nov '24 FC | Dec '24 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $339 | $339 | $260 | $339 | $235 | $568 | $868 | $929 | $565 | $452 | $289 | $289 | $5,473 |
| 41800 | Banner Exchange | $299,481 | $240,113 | $247,490 | $258,051 | $314,619 | $259,971 | $241,327 | $273,080 | $320,116 | $346,590 | $280,083 | $280,083 | $3,361,003 |
| | **Total Income** | **$359,484** | **$288,301** | **$297,052** | **$309,810** | **$377,509** | **$312,386** | **$290,391** | **$328,538** | **$384,496** | **$416,103** | **$336,167** | **$336,167** | **$4,036,405** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,000 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51020 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | $576 | | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | $520 | $52 | $624 | |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | $4 | | $4 | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | | | | | | | | | | | | | | $0 |
| | **Selling Costs** | **$139,472** | **$176,100** | **$90,272** | **$139,552** | **$121,511** | **$136,985** | **$125,400** | **$131,946** | **$174,812** | **$201,851** | **$143,560** | **$143,130** | **$1,724,591** |
| | **Total Cost of Goods Sold** | **$142,517** | **$179,877** | **$92,386** | **$142,618** | **$124,236** | **$140,020** | **$128,203** | **$134,880** | **$178,415** | **$206,289** | **$146,709** | **$146,271** | **$1,762,420** |
| | **Gross Profit** | **$216,967** | **$108,424** | **$204,666** | **$167,192** | **$253,273** | **$172,367** | **$162,188** | **$193,658** | **$206,082** | **$209,813** | **$189,458** | **$189,896** | **$2,273,985** |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| | **Total Administrative Expense** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$60,000** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | $19 | $19 | $232 |
| 61410 | Ad Misc. | | | | | | $1,485 | | | | $149 | $149 | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | $2,833 | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | $70 | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | $35,000 | | | | | | | | | | | $35,000 |
| 64350 | Ground Transportation | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '24 - Dec '24

| | | Jan '24 FC | Feb '24 FC | Mar '24 FC | Apr '24 FC | May '24 FC | Jun '24 FC | Jul '24 FC | Aug '24 FC | Sept '24 FC | Oct '24 FC | Nov '24 FC | Dec '24 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,889 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | $135,450 | $123,575 | $119,482 | $113,120 | $112,997 | $140,160 | $100,172 | $99,442 | $141,456 | $105,779 | $112,158 | $112,158 | $1,415,951 |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | $76,517 | ($20,151) | $80,184 | $49,072 | $135,276 | $27,207 | $57,016 | $89,215 | $59,625 | $99,035 | $72,300 | $72,738 | $798,034 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '25 - Dec '23

| Acct | Description | Jan '25 FC | Feb '25 FC | Mar '25 FC | Apr '25 FC | May '25 FC | Jun '25 FC | Jul '25 FC | Aug '25 FC | Sept '25 FC | Oct '25 FC | Nov '25 FC | Dec '25 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $339 | $339 | $260 | $339 | $235 | $568 | $868 | $929 | $565 | $452 | $289 | $289 | $5,473 |
| 41800 | Banner Exchange | $299,481 | $240,113 | $247,490 | $258,051 | $314,619 | $259,971 | $241,327 | $273,080 | $320,116 | $346,590 | $280,083 | $280,083 | $3,361,003 |
| | **Total Income** | **$395,433** | **$317,132** | **$326,758** | **$340,791** | **$415,280** | **$343,625** | **$319,430** | **$361,392** | **$422,946** | **$457,713** | **$380,784** | **$369,784** | **$4,440,046** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,000 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51020 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | | $576 | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | | $520 | $52 | $52 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | $4 | | $4 | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | **Selling Costs** | **$139,472** | **$176,100** | **$90,272** | **$139,552** | **$121,511** | **$136,985** | **$125,400** | **$131,946** | **$174,812** | **$201,851** | **$143,560** | **$143,130** | **$1,724,591** |
| | **Total Cost of Goods Sold** | **$143,939** | **$181,673** | **$93,307** | **$144,041** | **$125,475** | **$141,417** | **$129,482** | **$136,226** | **$180,198** | **$208,348** | **$148,174** | **$147,731** | **$1,780,011** |
| | **Gross Profit** | **$251,493** | **$135,458** | **$233,451** | **$196,750** | **$289,785** | **$202,208** | **$189,948** | **$225,166** | **$242,748** | **$249,365** | **$221,610** | **$222,053** | **$2,660,035** |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| | **Total Administrative Expense** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$60,000** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | | $19 | $19 | $232 |
| 51410 | Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | | $70 | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | $35,000 | | | | | | | | | | | | $35,000 |
| 64350 | Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '25 - Dec '23

| | ORDINARY INCOME / EXPENSE | Jan '25 FC | Feb '25 FC | Mar '25 FC | Apr '25 FC | May '25 FC | Jun '25 FC | Jul '25 FC | Aug '25 FC | Sept '25 FC | Oct '25 FC | Nov '25 FC | Dec '25 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,989 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | **$139,513** | **$127,283** | **$123,067** | **$116,514** | **$116,387** | **$144,365** | **$103,177** | **$102,426** | **$145,700** | **$108,952** | **$115,523** | **$115,523** | **$1,458,429** |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | **$106,980** | **$3,176** | **$105,384** | **$75,236** | **$168,398** | **$52,843** | **$81,771** | **$117,740** | **$92,048** | **$135,413** | **$101,087** | **$101,530** | **$1,141,806** |

## 2018 & 2019
Actuals

## 2020
Actuals through end of October.  Nov and Dec are straightline revenue and expenses based on 2020 monthly averages
Revenue down from 2019 due to: Elimination of direct response emails (~$500k), reduction in programmatic (~$300k) and self service reven
Eliminated credit card fees in latter part of year.
No ad creation for December
Legal fees reduced due to pre-petition expenses (Siegel, O'connel, Urvan defense as well as Cybersquatting defense and Washington State
No NRA Show in 2020.

## 2021
18% revenue growth based on stronger gun sales in 2020 (marketing budgets tend to lag 12-18 months behind sales), increased self
service revenue moving to Danads platform, growth in email lists, reassignment of accounts, focused efforts on hunting, retail and
Reduced programmatic expense by 50% due to elimination on GB Home page and Search pages.
2% Growth in Publisher costs, more impressions delivered on GetZone and owned sites.
5% growth in email expense due to more sends and growing list
No NRA Expense due to COVID
No SHOT Show due to Covid
T&E begins slowly in July after vaccine becomes widly available
Eliminated Depreciation and Amortization
Increased legal from $1k to $7k per month in anticipation of D&O defense against Washington suit

## 2022
13% revenue growth based on continued growth in commerce sales, more self service, hunting and retail.
Flat programmatic expense
2% growth in publisher costs
5% growth in ad ops (costs more to deliver higher revenue)
5% growth in email expense due to more sends and growing list
Increased Legal from $1k per month to $5k per month
SHOT Show added back
T&E growth
2% overall Expense growth (line 81)

## 2023
10% Growth in revenue
Flat programmatic expense
2% growth in publisher expenses
5% growth in email expense due to more sends and growing list
Increased Legal from $1k per month to $5k per month
2% overall Expense growth (salaries, T&E, etc)
5% Growth in ad ops expense

## 2024
9% growth in revenue
Programmatic expenses flat
2% growth in publisher costs
5% Ad ops growth due to increased revenue
2% growth in COGS (Line 34) commissions, etc
Increased Legal from $1k to $5k per month
2% Increase in Expenses

## 2025
10% revenue growth
2% publisher expense growth
Flat programmatic expense
1% increase in overall COGS
Increased legal from $1k per mo to $5k
3% Overall expense growth

# **EXHIBIT B**

Financial Statements Issued Before Bankruptcy

MEDIA LODGE INC.
Media Lodge Inc
For the Ten Months Ending October 31, 2020

|  |  | October |
|---|---|---:|
| | **ASSETS** | |
| | **Current Assets** | |
| 10000 | Cash - B of A Operating | ($23,180.43) |
| | **Total Cash** | **(23,180.43)** |
| | **Total Cash and Cash Equivalents** | **(23,180.43)** |
| | **Accounts Receivable** | |
| 12000 | Accounts Receivable | 283,907.43 |
| 12500 | Reserve for Bad Debts | (76,426.11) |
| | **Total Accounts Receivable** | **207,481.32** |
| | **Other Current Assets** | |
| 14000 | Prepaid Assets | 50,234.96 |
| 14200 | Other Current Assets | 64,317.20 |
| | **Total Other Current Assets** | **114,552.16** |
| | **Fixed Assets** | |
| 15500 | Website Design | 59,990.00 |
| 15550 | Advanced Retail Segmentation | 91,066.67 |
| | **Total Fixed Assets** | **151,056.67** |
| 16500 | Accum Deprec - Website Design | (30,884.10) |
| 16550 | Accum Deprec - Advanced Retail Segmentation | (33,003.20) |
| | **Total Accum Depreciation** | **(63,887.30)** |
| | **Net Fixed Assets** | **87,169.37** |
| 17100 | GunUp Website and App | 1,002,196.77 |
| | **Total Intangible Assets** | **1,002,196.77** |
| 17110 | Accum Amort - GunUp | (559,559.96) |
| | **Total Accum Amort** | **(559,559.96)** |
| | **Net Intangible Assets** | **442,636.81** |
| | **Other Assets** | |
| 19700 | Security Deposits | 13,638.73 |
| | **Total Other Assets** | **13,638.73** |
| | **Total Assets** | **842,297.96** |
| | **LIABILITIES & EQUITY** | |
| | **Current Liabilities** | |
| | **Accounts Payable** | |
| 20000 | Accounts Payable | 341,469.38 |
| | **Total Accounts Payable** | **341,469.38** |
| | **Accrued Expenses** | |
| 20500 | Accrued Expenses | 2,776,487.45 |
| 23000 | Bonus Accrual | 20,833.30 |
| | **Total Accrued Expenses** | **2,797,320.75** |

MEDIA LODGE INC.
Media Lodge Inc
For the Ten Months Ending October 31, 2020

|  |  | October |
|---|---|---:|
| | **ASSETS** | |
| | **Due to Parent** | **9,088,891.47** |
| | **Total Due to Parent** | **9,088,891.47** |
| | | |
| | **Oher Current Liabilities** | |
| 24010 | Deferred Rent | 64.12 |
| | **Total Oher Current Liabilities** | **64.12** |
| | | |
| | **Long Term Liabilities** | |
| | **Total Long Term Liabilities** | |
| | | |
| | **Equity** | |
| 31000 | Capital Stock | 1,000.00 |
| 32000 | Retained Earnings | (9,022,012.88) |
| 33000 | Shareholder Dividends | 441,575.45 |
| 34000 | Minority Interest | (208,104.70) |
| 40000:99999 | Net Income | (2,597,905.63) |
| | **Total Equity** | **(11,385,447.76)** |
| | | |
| | **Total Liabilities & Equity** | **842,297.96** |

MEDIA LODGE INC.
Media Lodge Inc
For the Nine Months Ending September 30, 2020

|  |  | September |
|---|---|---|
| **ORDINARY INCOME / EXPENSE** | | |
| | | |
| | **Income** | |
| 41010 | Banner Ads - Programmatic Ads | |
| 41800 | Banner Exchange | $240,075 |
| | **Total Income** | $240,075 |
| | | |
| | **Cost of Goods Sold** | |
| 50000 | Hosting / Data Center | $106 |
| | **Production Costs** | $106 |
| | | |
| 51000 | Commission | $33,388 |
| 51010 | Advertising Consult - Programmatic | $991 |
| 51020 | Publisher Costs (Bloggers) | $55,121 |
| 51040 | Banner Exchange | |
| 51060 | Advertising Expense | |
| 51070 | Ad Creation/Graphic Desogn (For Advertisers) | $3,200 |
| 51410 | Advertising Joint Venture | $11,158 |
| 51430 | Ad Operations | $17,631 |
| 56110 | Video Production | $9,133 |
| 56120 | Video Production Get Zone | $8,400 |
| 56150 | Billable Expenses | $805 |
| 60120 | Credit Card fees | |
| 60130 | Gateway Fees | |
| 56200 | Advance Retail Segmentation Expense | $44,148 |
| | | |
| | **Selling Costs** | $183,975 |
| | **Total Cost of Goods Sold** | $184,081 |
| | **Gross Profit** | $55,994 |
| | | |
| | | |
| | **Expenses** | |
| | **Administrative Expense** | |
| 61100 | Legal Fees | $19,235 |
| | **Total Administrative Expense** | $19,235 |
| | | |
| | **Expense** | |
| 60100 | Bank Service Charges | $257 |
| 60140 | Wire Fees | |
| 60240 | Software Subscriptions & Licenses | $2,907 |
| 60250 | Trade Organizations | |
| 60340 | Office Supplies | |
| 60350 | Postage and Delivery | |
| 60380 | Telephone | $300 |
| 60381 | Internet (Wi-Fi or Wired) | $144 |
| 60390 | Miscellaneous | |
| 60610 | Office Equipment | |
| 61410 | Ad Misc. | |
| 61420 | Ad Production | $1,300 |
| 61500 | Press Releases | $292 |
| 61750 | Technology | |
| 62000 | Rent | $867 |
| 62400 | Utilities | |
| 62450 | Operating Expenses for Buildings (part of Ren | $719 |
| 63000 | Other Taxes | |
| 64040 | NRA | |
| 64070 | SHOT Show | |
| 64350 | Ground Transportation | |

MEDIA LODGE INC.
Media Lodge Inc
For the Nine Months Ending September 30, 2020

|  |  | September |
|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | |
| 64500 | Meals | |
| 66500 | Depreciation - Website Design | $1,000 |
| 66550 | Depreciation - Adv Ret Seg | $27 |
| 67010 | Amortization of GunUp | $8,352 |
| 71000 | Wages | $82,469 |
| 71010 | Contract Labor | $4,626 |
| 71100 | Bonuses, Other Wages | $27,083 |
| 71200 | Benefits | $1,016 |
| 71210 | Employee Profit Sharing | $4,226 |
| 71300 | Federal Unemployment tax | |
| 71310 | State Unemployment tax | $368 |
| 71320 | Medicare tax | $2,042 |
| 71330 | Workers Comp | $592 |
| 71340 | Social Security tax | $2,965 |
| 71400 | Administration Fee | $675 |
| 99999 | Suspense Accounts | |
| | **Total Expense** | $142,226 |
| | | |
| | **Other (Income) Expense** | |
| 90000 | Other Expense | |
| | **Total Other (Income) Expense** | |
| | **Net Income (Loss)** | ($105,467) |

# EXHIBIT C
GunUp Settlement Agreement

## SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This Settlement Agreement and Mutual Releases (the "Agreement") is entered into by and among GunUp Holding Inc. d/b/a GunUp, Inc. ("GunUp"), Daniel M. Hall, Media Lodge, Inc. ("Media Lodge"), Gemini Direct, LLC ("Gemini"), Steve Urvan, Jeffrey Siegel, Kevin O'Connell and Susan Lokey (collectively, the "Parties"). GunUp and Mr. Hall are referred to herein as the "GunUp Parties." Media Lodge, Gemini, Mr. Urvan, Mr. Siegel, Mr. O'Connell and Ms. Lokey are referred to herein as the "Media Lodge Parties."

This Agreement will be effective on the date it has been approved by the Court pursuant to Federal Rule of Bankruptcy Procedure 9019.

### RECITALS

A.    The following legal proceedings between one or more of the GunUp Parties on the one hand, and one or more of the Media Lodge Parties on the other, are currently pending:

- *GunUp, Inc. v. Media Lodge, Inc., et al.*, King County, Washington Superior Court Cause No. 16-2-15005-5 SEA, on appeal before Division I of the Washington Court of Appeals under Case No. 80766-8 (the "Washington Lawsuit"). GunUp obtained a judgment in the Washington Lawsuit against Media Lodge and Mr. Siegel in the principal amount of $2,478,990.77 (the "Judgment").

- *GunUp, Inc. v. Urvan*, United States District Court for the Northern District of Georgia Cause No. 1:20-cv-02340-LMM (the "Urvan Lawsuit").

- *GunUp, Inc. v. O'Connell*, Orange County, California Superior Court Cause No. 30-2019-01117939-CU-MC-CJC (the "O'Connell Lawsuit").

- *GunUp, Inc. v. Media Lodge, Inc., et al.*, Fairfield, Connecticut Superior Court Cause No. FBT-CV20-4056725-S (the Connecticut Enforcement Action").

- *GunUp, Inc. v. Media Lodge, Inc.*, Cobb County, Georgia Superior Court Cause No. 20-G-1509 (the Georgia Enforcement Action").

- *In re Media Lodge, Inc.*, United States Bankruptcy Court for the District of Delaware Cause No. 20-12969-JTD (the "Bankruptcy Proceeding"). GunUp filed a proof of claim in the Bankruptcy Proceeding in the amount of $2,673,883.59 as of January 11, 2021 (the "GunUp Claim").

- *Media Lodge, Inc. v. GunUp Holding, Inc. d/b/a GunUp, Inc.*, United States Bankruptcy Court for the District of Delaware Cause No. 21-50246-JTD (the "Adversary Proceeding").

B.      Other legal proceedings between one or more of the GunUp Parties on the one hand, and one or more of the Media Lodge Parties on the other, were previously dismissed. These include, but are not limited to, *Media Lodge, Inc., et al. v. GunUp, Inc., et al.*, United States District Court for the District of Delaware Cause No. 1:20-cv-00231-MN (the "Lanham Act Lawsuit").

C.      On May 3, 2021, AMMO, Inc. ("AMMO") purchased the GunBroker.com businesses, including several subsidiaries of Gemini Direct Investments, LLC.

D.      The Parties desire fully and finally to resolve the above-referenced matters, and to settle and mutually release any and all claims between and among the GunUp Parties, the Media Lodge Parties, and AMMO and its subsidiaries.

NOW, THEREFORE, in consideration of the mutual promises contained herein, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

## AGREEMENT

1.      **Settlement Amount.**  Media Lodge and Mr. Siegel will pay GunUp an aggregate amount of $1,000,000 (the "Settlement Payment").  Media Lodge will provide $950,000 of this amount, and Mr. Siegel will provide $50,000.  The Settlement Payment will be paid to GunUp on the effective date of a plan of reorganization for Media Lodge in the Bankruptcy Proceeding. The payment will be made by ACH or wire transfer to the Savitt Bruce & Willey LLP Trust Account.

2.      **Plan of Reorganization.**  Assuming the court in the Bankruptcy Proceeding approves this Agreement, GunUp will not oppose or object to Media Lodge's proposed plan of reorganization, provided the proposed plan substantially parallels the form of proposed plan attached hereto as **Exhibit A**.

3.      **Releases.**

a.      In exchange for the consideration set forth in paragraphs 1 and 4, the releases set forth in paragraph 3(b), and the AMMO Consent attached hereto as **Exhibit B**, each of the GunUp Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers and directors) releases and forever discharges each of the Media Lodge Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers, and directors) and AMMO (and its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers, and directors), to the maximum extent permitted by law and unless barred by law, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, attorneys' fees or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the GunUp Parties, whether known or

unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, under the laws of the United States, any of its states, or any other country.

b.     In exchange for the consideration set forth in paragraphs 2 and 4, and the releases set forth in paragraph 3(a), each of the Media Lodge Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers, and directors) and AMMO (and its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers and directors, pursuant to the AMMO Consent) releases and forever discharges each of the GunUp Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers, and directors), to the maximum extent permitted by law and unless barred by law, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, attorneys' fees or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the GunUp Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, under the laws of the United States, any of its states, or any other country (including without limitation claims under the federal Lanham Act and claims asserted in the Lanham Act Lawsuit).

c.     The releases set forth in this paragraph 3 are contingent on timely remittance of the Settlement Payment in accordance with paragraph 1, and on GunUp meeting its obligations under paragraph 2.  Should the Settlement Payment not be timely made, or should GunUp fail to meet its obligations under paragraph 2, the releases set forth in paragraph 3 will be of no force or effect, and the Settlement Payment shall be refunded, if previously made.

4.     **Dismissal of Actions.**  Within fifteen days after GunUp's receipt of the Settlement Payment, Media Lodge will dismiss its appeal in the Washington Lawsuit, GunUp will dismiss the Urvan Lawsuit and the O'Connell Lawsuit with prejudice, and Media Lodge and GunUp will dismiss the Adversary Proceeding with prejudice.  In addition, after GunUp receives the Settlement Payment:

a.     GunUp will take no further action in any court to enforce the Judgment, including, without limitation, in the Connecticut Enforcement Action or the Georgia Enforcement Action;

b.     GunUp will cooperate with counsel for Media Lodge and Mr. Siegel in the Connecticut Enforcement Action to give the court prompt notice that a settlement has been reached and the pending motion to stay execution of the judgment is moot and GunUp will withdraw the Connecticut Enforcement Action within fifteen days after GunUp's receipt of the Settlement Payment.;

c.     GunUp will withdraw or dismiss the Georgia Enforcement Action with prejudice within fifteen days after GunUp's receipt of the Settlement Payment;

3

d.      GunUp will cause the funds garnished from Media Lodge's bank account in the Georgia Enforcement Action to be released to Media Lodge; and

e.      IA Tech, LLC and Ms. Lokey will not enforce the award of attorneys' fees they received after their dismissal from the Washington Lawsuit.

5.      **Attorneys' fees.**  The Parties will be responsible for their own attorneys' fees and costs, including attorneys' fees and costs incurred in connection with any of the actions described in paragraph 4 above.  However, in any action or proceeding to enforce this Agreement, the substantially prevailing Party shall be entitled to recover its, his or her reasonable costs and expenses (including but not limited to attorneys' fees, expert fees and other litigation expenses) incurred in such action or proceeding.

6.      **Nondisparagement.**  The Parties will not disparage each other in any manner likely to be harmful to their business, business reputation or personal reputation; provided that the Parties may respond accurately and fully to questions, inquiries and requests for information when required by legal process.

7.      **Miscellaneous Provisions.**

a.      In entering into this Agreement, the Parties acknowledge that they have not relied on any representation, warranty, promise or condition not specifically and expressly set forth in this document.

b.      This Agreement constitutes the entire agreement between the Parties and supersedes, substitutes for, and replaces all prior negotiations, agreements, and understandings.

c.      The Parties acknowledge, represent, and agree that they have read this Agreement, have been represented by counsel in negotiating and entering into this Agreement, and fully understand and agree to its terms.

d.      Each individual signing in a representative capacity represents and warrants that he or she has the authority to sign for, and to bind, the represented entity for which he or she is signing.

e.      The Parties acknowledge and agree that each Party has participated in the drafting and negotiation of this Agreement, and that each provision was jointly drafted by all Parties.  The Parties intend for this Agreement to be construed and interpreted neutrally, in accordance with the plain meaning of its language, and not presumptively construed against any actual or purported drafter of specific language.

f.      The Parties acknowledge and agree that the language of this Agreement will be construed as a whole according to its fair meaning and not strictly for or against any of the Parties.  The execution of this Agreement affects the settlement of claims that are disputed, contested, or denied.  Each Party understands and agrees that nothing herein

is intended, nor will be deemed nor construed, to be an admission of liability in any respect.

g.      This Agreement will be binding upon and inure to the benefit of the Parties and their legal representatives, heirs, beneficiaries, administrators, executors, successors, and assigns.

h.      This Agreement may not be changed, amended, modified, terminated, waived, or discharged except by a subsequent written agreement signed by all the Parties hereto.

i.      This Agreement may be executed in any number of counterparts, all of which together will comprise a single agreement.  Copies, scans, or facsimiles of original signature pages will be as effective as originals.

j.      As the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, the Parties elect and consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") or the United States District Court for the District of Delaware in the event the Bankruptcy Court declines to exercise jurisdiction.  This Agreement will be construed in accordance with the laws of the State of Washington, without regard to its choice of law rules or provisions.

[Remainder of page left blank.]

**GunUp Holding Inc.**

By: _Dal M Hall_

Its: President

Date: 09/14/21

**Daniel M. Hall**

_Dal M Hall_

Date: 09/14/21

**Media Lodge, Inc.**

By: _____

Its: _____

Date: _____

**Gemini Direct, LLC**

By: _____

Its: _____

Date: _____

**Steve Urvan**

_____

Date: _____

**Jeffrey Siegel**

_____

Date: _____

**Kevin O'Connell**

_____

Date: _____

**Susan Lokey**

_____

Date: _____

6

**GunUp Holding Inc.**

By: _Dal M Hall_

Its: President

Date: 09/14/21

**Daniel M. Hall**

_Dal M Hall_

Date: 09/14/21

**Media Lodge, Inc.**

By: _____

Its: _____

Date: _____

**Gemini Direct, LLC**

By: _____

Its: _____ CEO

Date: _____ 9/15/21

**Steve Urvan**

Date: _____ 9/15/21

**Jeffrey Siegel**

_____

Date: _____

**Kevin O'Connell**

_____

Date: _____

**Susan Lokey**

_____

Date: _____

6

**GunUp Holding Inc.**

By: _Dal M Hall_

Its: President

Date: 09/14/21

**Daniel M. Hall**

_Dal M Hall_

Date: 09/14/21

**Media Lodge, Inc.**

By: _____

Its: CEO

Date: 9/16/21

**Gemini Direct, LLC**

By: _____

Its: CEO

Date: 9/15/21

**Steve Urvan**

_____

Date: 9/15/21

**Jeffrey Siegel**

_____

Date: 9/16/21

**Kevin O'Connell**

_____

Date: _____

**Susan Lokey**

_____

Date: _____

6

**GunUp Holding Inc.**

By: _____

Its: _____

Date: _____

**Daniel M. Hall**

_____

Date: _____

**Media Lodge, Inc.**

By: _____

Its: _____

Date: _____

**Gemini Direct, LLC**

By: _____

Its: _____

Date: _____

**Steve Urvan**

_____

Date: _____

**Jeffrey Siegel**

_____

Date: _____

**Kevin O'Connell**

_____

Date: _____

**Susan Lokey**

_____

Date: 9/16/2021

6

**GunUp Holding Inc.**

By: _Dal M Hall_

Its: President

Date: 09/14/21

**Daniel M. Hall**

_Dal M Hall_

Date: 09/14/21

**Media Lodge, Inc.**

By: _____

Its: _____

Date: _____

**Gemini Direct, LLC**

By: _____

Its: _CEO_

Date: _9/15/21_

**Steve Urvan**

Date: _9/15/21_

**Jeffrey Siegel**

Date: _____

**Kevin O'Connell**

Date: _9/16/21_

**Susan Lokey**

Date: _____

6

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MEDIA LODGE, INC.,[1] | ) | Case No. 20-12969 (JTD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## FOURTH AMENDED PLAN OF
## REORGANIZATION OF MEDIA LODGE, INC.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR SEPTEMBER 15, 2021 AT 9:30 AM (ET) IN COURTROOM No. 5 AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated:  September 10, 2021
Wilmington, Delaware

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
1201 N. Orange St., Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
          rgellert@gsbblaw.com

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan provides for the full payment of administrative, and priority claims. General unsecured claims shall be paid in full no later than (60) days following the entry of an order approving this Plan. The Plan further provides for the payment to the Class 3 Creditor of $1,000,000 on account of its claims and the release of Class 2 Claims in accordance with the GunUp Settlement Agreement. The following represents an estimate of the distribution of the Debtor's plan payments:

A. Administrative/Priority Claims

        1. Attorney's fees and Costs       $300,000.00

        2. Subchapter V Trustee fees      $12,000.00

        3. DIP Lender (Gemini)        up to $500,000.00[1]

B. Total Distribution to Class 1 Creditors     $231,000.00

C. Total Distribution to Class 2 Creditors     $0.00

D. Total Distribution to Class 3 Creditors     $1,000,000.00

E. Total Distribution to Class 4 Equity     $0.00

---

[1] As of September 8, 2021, the Debtor owes $ $162,023.14 on account of the DIP Lender Claim.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1.      The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code. The classification of claims and proposed treatment within each class is as follows:

A.      **Administrative Priority**. Administrative Priority claims pursuant to § 507(a)(2) of the Bankruptcy Code who are treated as such in this Plan include the Subchapter V Trustee and Debtor's Counsel, Gellert Scali Busenkell & Brown, LLC. Any other parties claiming administrative expense priority shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date of the Plan. Administrative Priority Claims will be paid in full. Debtor estimates Administrative Priority Claims to total approximately $325,000.00.

B.      **DIP Lender Claims**: Upon confirmation of the Plan, the claims of Gemini Direct, LLC ("Gemini" or the "DIP Lender") as successor to Gemini Direct Investment, LLC ("GDI") pursuant to the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(2), 364(d)(1), 364(e) and 507 (I) Authorizing Debtor to (A) Obtain Post-Petition Secured Financing From Gemini Direct Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees and Charges; (II) Modifying the Automatic Stay and (III) Granting Certain Related Relief and term sheet attached thereto as Exhibit 1, dated January 14, 2021 [D.I. 90], as amended by the Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtors to Continue Using Cash Collateral Through July 25, 2021, and (III) Authorizing Change in DIP Lender [D.I. 168] under which the DIP Lender agreed to loan the Debtor up to $500,000 in post-petition financing (the "DIP Loan") will be refinanced with the DIP Lender issuing a new loan to the Debtor in an amount necessary to (i) repay the DIP Loan in full; and (ii) provide the reorganized

Debtor with a new $1,500,000 multi-draw facility (the "Exit Facility"). The Exit Facility shall bear interest at the rate of 7% per annum and shall be amortized over a sixty (60) month term as of the Effective Date. The Exit Facility will be guaranteed by the Debtor's subsidiaries, Media Lodge, LLC ("LLC Sub") and GunUp LLC ("Acquisition Sub," and with LLC Sub, the "Subsidiaries") and will be fully secured by a blanket lien upon all of the Debtor's and the Subsidiaries' assets. The DIP Lender's agreement to provide the Exit Facility is conditioned upon the GDI Claim (as defined below) being allowed as a Class 2 Claim.  The Exit Facility is attached hereto as Exhibit G.

C.      **Class 1 Unsecured Claims**.  Class 1 claims are holders of allowed General Unsecured Claims without Priority. Holders of Allowed General Unsecured Claims shall be paid in full by the Debtor no later than sixty (60) days following the entry of a final order of the Bankruptcy Court approving this Plan. The Debtor estimates the aggregate amount to be distributed to Holders of General Unsecured Claims to be approximately $231,000.00.

D.      **Class 2 GDI Claim.**  Class 2 consists of  the allowed unsecured claim of Gemini in the amount of $9,382,132.00 (the "GDI Claim"). The GDI Claim arises out of a Secured Promissory Note originally in the amount of $2 million and payable to IA Tech, LLC ("IA Tech") and which was subsequently transferred to GDI and then Gemini (as described below). The remainder of the GDI Claim consists of intercompany advances made by IA Tech and then GDI after the indebtedness was transferred to GDI. The GDI Claim will be waived and released on the Effective Date.

E.      **Class 3 – GunUp Claim**.  Class 3 consists of the GunUp Claim, which will be an allowed General Unsecured Claim in the amount of $1,000,000.  The GunUp Claim will be paid within fifteen (15) days after the Effective Date.

3

F. **Class 4 Common Stock Interests.** Class 4 consists of the stockholder of the Debtor. The Class 4 interest holder shall receive no payments but shall retain its ownership interest in the Debtor.

2. **Disputed Claims**

A. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order of the Bankruptcy Court and, either:

i. is a Proof of Claim that has been timely filed or deemed timely filed, and to which the Debtor or another party in interest has filed an objection, and/or has indicated that the Proof of Claim is disputed no later than sixty (60) days following the Effective Date of the Plan; or

ii. no Proof of Claim has been timely filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated; or

iii. the claim is subject to litigation in any appropriate forum.

B. **Delay of Distribution on a Disputed Claim**

No distribution will be made on a disputed claim unless and until the claim is allowed by a Final Order.

C. **Settlement of Disputed Claims**

The Debtor will have the power and authority to settle and compromise disputed claims only with court approval and in compliance with Federal Rule of Bankruptcy Procedure 9019.

3. **General**

The payments, distributions, and other treatments provided in respect of each Allowed Claim or Interest set forth herein shall be in complete satisfaction, discharge, and release of such Allowed Claim, except as otherwise expressly provided. Notwithstanding any other provision of

4

the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim or Interest which at such date or time is disputed, unliquidated, or contingent shall not be made until such Claim or Interest becomes an Allowed Claim or Allowed Interest, whereupon such payment and distributions shall be made promptly, together with any interest accrued thereon in accordance with the provisions of this Plan.

### PAYMENTS TO CREDITORS UNDER THE PLAN

Unless otherwise provided in this Plan, funds received by the Debtor or otherwise included in this Plan but not specifically disbursed directly to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1. Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid in full prior to the payment of all other claims.

2. Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code.

3. All other claims shall be paid in accordance with the Bankruptcy Code.

4. In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor shall retain the Debtor's interest in property of the estate.

### TRUSTEE COMPENSATION

The Trustee shall be paid for services rendered in this Chapter 11 case an Administrative Priority Claim under § 507 of the Bankruptcy Code and pursuant to Article V of this Plan. All fees and expenses requested by the Trustee are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code.

**ATTORNEY COMPENSATION**

The Debtor's attorneys, Gellert Scali Busenkell & Brown, LLC and appellate counsel, shall be paid for the services rendered to the Debtor herein as an Administrative Priority Claim under § 507 of the Bankruptcy Code and pursuant to Article V of this Plan. All fees and expenses requested by the Debtor's attorney are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code.

**ARTICLE 1**
**HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**

    **1.1.**    **Nature of the Debtor's Business.**

1.    Debtor was created in 2014 to manage the sale of advertising on GunBroker.com, and it has the exclusive right to sell advertising on that website. Debtor and GunBroker.com were sister companies; GunBroker.com was owned by IA Tech, LLC, and, before the merger with GunUp, Inc. ("GunUp"), IA Tech was also Debtor's sole owner. GunBroker.com is the world's largest online-auction website for firearms and hunting and shooting gear. As of 2018, GunBroker.com had more than 3.5 million registered users and had sold more than $4 billion in merchandise. Until 2015, Debtor placed advertisements only on GunBroker.com.

2.    In late 2014, Debtor sought to expand advertising beyond GunBroker.com and began discussing a merger with GunUp who ran a similar business. The parties ultimately agreed on a transaction in which GunUp would merge with Debtor. The final merger agreement signed by the parties was dated March 31, 2015, and the transaction closed the following day. Under the agreement, Debtor was to pay GunUp $300,000 at closing and issue 281,996 shares of stock to GunUp. Debtor was scheduled to pay additional money as follows: $200,000 on July 1, 2015, and $250,000 on each of May 15, 2016, and May 15, 2017. In addition, Debtor was scheduled to issue 563,990 more shares of stock—half on each of September 15, 2016, and March 15, 2018.

6

3.      After the transaction closed, the Debtor and GunUp engaged in extensive litigation in the Washington Action over the value of the assets that each party contributed to the transaction, and other matters.

4.      On May 3, 2021, AMMO, Inc. ("AMMO") purchased the Gunbroker.com businesses. As part of that transaction, Gemini was formed to retain certain assets under the ownership of Mr. Urvan. Among those assets were (i) the equity interests in the Debtor; (ii) the GDI Claim; and (iii) the DIP Lender Claim.

**A.  Debtor's Business Operations**

5.      Media Lodge is an advertising brokerage. Website owners contract with Media Lodge to sell advertising space on their websites and related media. In exchange, Media Lodge remits a share of the advertising revenue, plus management fees. In large part, the advertisements are in the form of *banner advertisements*—ads in the form of images.

6.      Media Lodge's right to sell advertising on GunBroker.com has no expiration date. Under an oral contract, Media Lodge bills the advertisers, collects all advertising revenue, and remits to GunBroker.com its share, plus a management fee. GunBroker.com's overall share is about 40% to 50% (with specific underlying percentages depending on the form of media) (compare revenue for *Banner Ads* with *Banner Exchange*).[2] GunBroker.com invoices Media Lodge monthly for its share of advertising revenue.

7.      In 2014, at Media Lodge's beginning, GunBroker.com received and deposited the advertiser payments in its bank account; thereafter, Media Lodge received the advertiser payments. But regardless of which entity received the payments, Media Lodge recorded 100% of the

---

[2] GunBroker.com's invoices and Media Lodge's financial statements refer to GunBroker.com's share as *Banner Exchange*.

advertising revenue and expenses on its books, listing the amounts due to GunBroker.com on an intercompany account. This was consistent with the oral contract and Generally Accepted Accounting Principles (GAAP).

8.      Led by CEO Jeff Siegel, Media Lodge quickly became successful, bringing in $1,833,674 in revenue in 2014 and over $3 million the following year. Setting aside the management fee it paid to its parent, IA Tech, Media Lodge essentially broke even in 2014 (add *Net Management Fee* of $376,535 to *Net Income* of negative $383,687.29). But, because Media Lodge in fact operated at a loss, IA Tech funded its operating shortfall with loans, recorded on the intercompany account.

9.      Media Lodge had four full-time employees and was a valuable company. Its assets included $429,991 in accounts receivable as of year-end 2014, that figure would grow to $973,138 by the end of the first quarter of 2015. Meanwhile, Media Lodge had $28,762 in cash.

10.      The Debtor's corporate headquarters is located at 11095 Viking Drive, Eden Prairie, MN 55344.

**B.  Organizational Structure, Governance, and Current Management**

11.      The Debtor is wholly owned by Gemini, which is in turn wholly owned by Steve Urvan.

12.      The Debtor has two wholly owned subsidiaries:  LLC Sub and Acquisition Sub. LLC Sub is a non-debtor entity that Media Lodge, LLC that holds the contracts with third party publishers and partners for which the Media Lodge organization sells advertising. LLC Sub receives and books the ad revenue and pays the publisher/partner their cut of the revenue according to the terms of the contract with that publisher/partner. Acquisition Sub is a non-debtor entity that sells advertising for in-house and third party web sites, social media, email lists and other media.

8

The Debtor has a single member board of director comprised of Jeff Siegel. The officers of the Debtor include a President, Vice President and Secretary. The Debtor's' current management consists of Jeff Siegel, as CEO; and Susan Lokey, Managing Member and Secretary.

13.     The Debtor is a corporate entity organized under the laws of the State of Delaware. The Debtor's Chief Executive Officer at the time of the filing of this case was Jeff Siegel.

### C. Capital Structure

14.     As of the Petition Date, the Debtor was indebted to its ultimate parent, GDI, pursuant to that certain Secured Promissory Note dated March 31, 2015, originally between the Debtor and IA Tech and other intercompany advances made by IA Tech and then GDI in the aggregate amount of $9,382,132. Neither IA Tech nor GDI ever perfected a security interest with respect to the Secured Promissory Note and the entirety of the obligation is unsecured.

15.     In addition, as of the Petition Date, the Debtor's other major creditor was GunUp, to whom the Debtor is obligated on a judgment in the face amount of $2,478,990.77 (the "Judgment") issued by the Superior Court for the State of Washington in and for King County in Case No. 16-2-15005-5 SEA. The Debtor disputes the court's findings in the Washington Action and has appealed the Judgment. On January 11, 2021, GunUp filed Claim No. 3-1 in the amount of $2,673,883.59 on account of the Judgment (the "GunUp Claim").

16.     As of the Petition Date, the Debtor's remaining obligations constituted unsecured debt of approximately $231,000 owed to trade creditors and intercompany claims of other affiliates.

### D. Circumstances Leading to Chapter 11 Filing.

17.     After the failed merger with GunUp, GunUp filed the Washington Action against the Debtor in June 2016. GunUp alleged multiple claims against Debtor, including breach of

9

contract. The parties filed cross-motions for summary judgment. GunUp sought a determination that Debtor had breached the merger agreement. GunUp also sought to dismiss Debtor's counterclaims and third-party claims. Meanwhile, Debtor moved for summary judgment, seeking dismissal of GunUp's claims and affirmative relief on its breach-of-contract counterclaim.

18.     The trial court granted GunUp's motions and denied Debtor's motions. The court determined as a matter of law that Debtor had made material misrepresentations to GunUp and failed to disclose material information to GunUp and granted rescission of the transaction. This meant that that GunUp would return to Debtor the shares of stock it received, and Debtor would compensate GunUp for the value of the consideration it gave for those shares.

19.     After a nine-day valuation trial, the court found that GunUp was worth $1.411 million as of March 2015. After applying a $500,000 credit for Media Lodge's payments to GunUp, the court entered a principal judgment of $911,000, plus 8% prejudgment interest, for a total judgment of $1,240,852.

20.     The court subsequently awarded GunUp $1,094,589.71 in attorney's fees and $138,956.13 in costs and entered a supplemental judgment. With accrued interest on the initial judgment, the supplemental judgment totaled $2,478,990.77.

21.     In July 2020, the Debtor timely appealed the Judgment to the Court of Appeals, Division I of the State of Washington, Case No. 80766-8 (the "Appeal"), which challenged the trial court's entry of the Judgment on a summary judgment basis as well as the court's calculation of damages.

22.     After the Debtor filed the Appeal, GunUp commenced garnishment actions against customers of Debtor's affiliate, Media Lodge, LLC ("LLC Sub") seeking to garnish funds that those customers owe to the Debtor.

10

23.     Since the filing of the of the Washington Action by GunUp, the Debtor has been significantly cash-flow negative, as legal fees and other litigation costs have far exceeded the Debtor's assets, which primarily consist of its equity interests in the Subsidiaries.  These excess costs have largely been funded by intercompany debt, which is reflected in the GDI Claim.

24.     GunUp also filed additional litigation seeking to recover from all of the Debtor's current and former directors in connection with the assertions directly at issue in the GunUp litigation. While these certain individuals are no longer directors of the Debtor, they continue to serve important roles for the Subsidiaries.  For these reasons, the Debtor sought bankruptcy protection so it may obtain post-petition funding in order to preserve the value of the Debtor's business operations in the ordinary course as well as to fund the appeal, which if successful, would reduce, if not eliminate, substantially all of the Debtor's non-intercompany debt.

### 1.2     Filing of the Debtor's Chapter 11 Case.

On November 10, 2020, the Debtor filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code.  The Chapter 11 case is pending in the Bankruptcy Court in the District of Delaware.

### 1.3     Debtor's Assets.

The Debtor's Assets as of the Petition Date were comprised of the following.

| Asset | Scheduled Value |
|---|---|
| Operating Account | $0.00 |
| EJJ Realty/NOAVA Deposit | $2,400.00 |
| Park Ridge Utilities Deposit | $350.00 |
| Ryan Companies US Deposit | $10,888.73 |
| SalesForce 1 Year License Deposit | $18,781.46 |
| JW Player 1 Year License (2/19 - 1/20) - Ad Ops Expense Deposit | $36,000.00 |
| Claudia Bircau - Outdoor Wire - 2020 Corporate Membership Industry Newsletter Deposit | $3,500.00 |
| Christen Everly - Flight for NRA Deposit | $583.80 |
| Sprout Social - Social Media Advertising Deposit | $2,608.96 |
| JW Player - Ad Operations Deposit | $21,392.30 |
| 360 Outdoors Media - In the Hunt 2020-2021 - 1/2 Payment Deposit | $25,000.00 |
| Karin Levin - Flight for NRA Deposit | $345.19 |
| Katey Powers - NRA Flight Deposit | $271.40 |

11

| Katey Powers - NRA Flight Deposit | $291.50 |
| Claudia Bircau - CoSchedule - Annual Fee Deposit | $1,440.00 |
| Zoom (JS Exp Rep) - Zoom annual fee Deposit | $159.53 |
| Surfwriter Inc (pd to CE) -Rev Cloud App Annual Subscription Deposit | $1,152.00 |
| JW Player - Ad Operations Deposit | $6,784.60 |
| 360 Outdoors Media -In the Hunt 2020-2021 - 1/2 Payment Deposit | $25,000.00 |
| Sprout Social - Social Media Advertising Deposit | $2,608.96 |
| Claudia Bircau (JW Player) - Quarterly ads Deposit | $21,392.30 |
| Thomas Merriott (Appriver) Host - annual subscription Deposit | $1,166.24 |
| Accounts Receivable | $155,151.37 |
| Office furniture | $0.00 |
| Website Design | $33,585.20 |
| Good Will - GunUp Publishing, Inc. | $476,043.58 |
| Net operating losses exist since date of inception | $0.00 |
| Misc. due from related party | $236.46 |
| Listrak Fees - 0920 - GunGenius | $50.63 |
| Listrak Fees - 0920 - FC | $12.53 |
| Listrak Fees - 0920 - 50CF | $98.27 |
| Listrak Fees - 0920 - Outdoors.com | $75.03 |
| **TOTAL** | **$847,370.04** |

## 1.4.   Debtor's Liabilities.

The Debtor's Liabilities as of the Petition Date are as follows:

| Creditor | Nature of Debt | Amount Owed |
| --- | --- | --- |
| Gemini Direct Investments, LLC | Unsecured debt | $9,382,132.00 |
| 50 Campfires, LLC | Unsecured claim | $11,778.84 |
| Armory Forums LLC | Unsecured claim | $8,150.89 |
| Auction Armory | Unsecured claim | $14,040.54 |
| Austin Bhatt | Unsecured claim | $25.43 |
| AvidOutdoorsman | Unsecured claim | $2,073.66 |
| Catch All Media | Unsecured claim | $350.00 |
| Christina Myers | Unsecured claim | $100.00 |
| Christopher Serrano | Unsecured claim | $14,877.80 |
| Claudia Bircu | Unsecured claim | $440.26 |
| Clifton Reinwand | Unsecured claim | $1,925.00 |
| Comcast | Unsecured claim | $69.95 |
| Concealed Nation, LLC | Unsecured claim | $8,527.02 |
| Don Porter | Unsecured claim | $3,750.00 |
| Eric Cilli | Unsecured claim | $217.35 |
| FirstPro | Unsecured claim | $649.58 |
| Forward Media Partners, LLC | Unsecured claim | $991.41 |
| GATE 37B, LLC | Unsecured claim | $240.03 |
| Gordon & Rees LLP | Unsecured claim | $120.00 |
| GunGenius | Unsecured claim | $4,287.00 |
| GunUp, Inc. | Disputed unsecured claim pursuant to judgment | $2,478,990.77 |
| HuntStand (Terra Stride, Inc.) | Unsecured claim | $0.02 |
| i156 LLC (USA CARRY) | Unsecured claim | $585.00 |
| Jeff Siegel | Unsecured claim | $1,152.72 |
| Karen Lynn Pikula | Unsecured claim | $1,200.00 |
| Karlo Jularic | Unsecured claim | $82.51 |

12

| | | |
|---|---|---|
| Listrak | Unsecured claim | $115,475.34 |
| Nelson Mullins Riley & Scarborough LLP | Unsecured claim | $717.30 |
| Outdoors.com | Unsecured claim | $11,323.12 |
| R.M. Warner, PLC | Unsecured claim | $10,129.88 |
| Registered Agent Solutions Inc. | Unsecured claim | $104.00 |
| Robert Todd Bergin - The Gun Wire | Unsecured claim | $1.36 |
| Ryan Companies US, Inc. | Unsecured claim | $1,598.77 |
| Scott Kenneth Ferguson | Unsecured claim | $219.67 |
| The Ardent Group | Unsecured claim | $920.17 |
| Wiggin and Dana LLP | Unsecured claim | $4,392.12 |
| **TOTAL** | | **$12,081,639.51** |

## 1.5.    Current and Historical Financial Conditions.

The Debtor's financial condition is reflected in the financial statement attached

hereto as Exhibit B.

## 1.6.    Significant Events During the Bankruptcy Case.

Since the Petition Date, the Debtor sought up to $500,000 in financing from GDI and

then Gemini, to finance the Debtor's post-petition operations pending the filing of this Plan. The

Debtor also retained Gellert Scali Busenkell & Brown, LLC as Debtor's counsel. Debtor filed its

Schedules of Assets and Liabilities and Statement of Financial Affairs on November 24, 2020.

The following pleadings have been filed by the Debtor to date:

| Pleading | Date Filed | Docket Number |
|---|---|---|
| Declaration of Jeff Siegel in Support of the Debtor's Petition and First Day Motions | 11/10/2020 | 4 |
| Motion of The Debtor for Entry of Interim and Final Orders (I) Authorizing Payment of Certain Amounts Due to Employees, (II) Confirming Right to Continue Employee Programs on A Post-Petition Basis, (III) Authorizing Payment Of Withholding And Payroll-Related Taxes, and (IV) Granting Such Other and Further Relief | 11/10/2020 | 5 |
| Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (II) Granting Related Relief [D.I. 6; Filed November 10, 2020]. | 11/10/2020 | 6 |
| Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Use of Prepetition Bank Account and Certain Payment Methods, and (II) Waiving the Requirements of 11 U.S.C. Section 345(b) [D.I.7; Filed November 10, 2020]. | 11/10/2020 | 7 |
| Motion to Approve Debtor in Possession Financing | 11/10/2020 | 8 |
| Affidavit/Declaration in Support of First Day Motion Amended Declaration of Jeff Siegel in Support of First Day Motions | 11/12/2020 | 13 |

| | | |
|---|---|---|
| Application/Motion to Employ/Retain Gellert Scali Busenkell & Brown, LLC as Counsel to Debtor | 11/19/2021 | 31 |
| Second Amended Declaration of Jeff Siegel in Support of First Day Motions | 12/3/2020 | 47 |
| Debtor's Motion for Limited Relief from The Automatic Stay Pursuant to Bankruptcy Code Section 362 | 12/16/2020 | 59 |
| Debtor's Opposition to GunUp, Inc.'s Motion to Dismiss | 12/17/2020 | 61 |
| Declaration of Jeff Siegel in Support of Debtor's Opposition to GunUp,Inc.'s Motion to Dismiss | 12/17/2020 | 63 |
| Initial Reporting Requirements Filed by Media Lodge, Inc | 12/17/2020 | 64 |
| Motion for Authority to File Exhibit B to Debtors Opposition to GunUp,Inc.s Motion to Dismiss Under Seal | 12/22/2020 | 68 |
| Proposed Redacted Version of Exhibit B to Debtor's Opposition to GunUp, Inc.'s Motion to Dismiss | 12/22/2020 | 69 |
| Notice of Filing of Debtor's Witness and Exhibit List In Connection With The HearingScheduled for January 11, 2021 | 1/8/2021 | 82 |
| Notice of Filing Revised Debtor-in-Possession Budget | 1/11/2021 | 84 |
| Application to Employ Carney Badley Spellman, P.S. as Appellate Litigation Counsel | 1/29/2021 | 94 |
| Application to Employ Professionals Utilizies in the Ordinary Course of Business *Nunc Pro Tunc* to the Petition Date | 2/26/2021 | 103 |
| Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 For Authority to Enter Into First Amendment to Lease Agreement With OSWX Ridge LLC | 3/23/2021 | 116 |
| Motion of Debtor for an Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtor to Continue to Use Cash Collateral Through July 25, 2021, and (III) Authorizing Change in DIP Lender | 5/18/2021 | 148 |
| First Interim Fee Application of Gellert Scali Busenkell & Brown, LLC as Counsel to the Debtors and Debtors-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period November 10, 2021 to March 31, 2021 | 6/11/2021 | 170 |
| First Interim Fee Application of Carney Badley Spellman, P.S as Appellate Litigation Counsel to the Debtor and Debtor-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period February 16, 2021 to May 31, 2021 | 6/25/2021 | 178 |
| Motion of Media Lodge, Inc., for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Media Lodge, Inc.s Settlement with Gemini Direct LLC, and GunUp Holding, Inc. | 9/3/2021 | 193 |
| Motion to Shorten Notice With Respect to  Motion of Media Lodge, Inc., for an Order Pursuant to Federal Rule of Bankruptcy Procedure 9019 Approving Media Lodge, Inc.s Settlement with Gemini Direct LLC, and GunUp Holding, Inc. | 9/3/2021 | 194 |

The following substantive Orders have been entered by the Bankruptcy Court to date:

| Order | Date | Docket Number |
|---|---|---|
| Interim Order (I) Authorizing Debtor To Pay Prepetition Claims Of Critical Vendors And (II) Granting Related Relief | 11/13/20 | 19 |
| Interim Order (I) Authorizing The Debtor To (A) Pay Certain Employee Compensation And Benefits, (B) Maintain And Continue Such Benefits And Other Employee-Related Programs, And (II) Granting Related Relief | 11/13/20 | 18 |
| Interim Order Pursuant To 11 U.S.C. §§105, 361, 362, 363(C), 364(C)(1), 364(C)(2), 364(D)(1), 364(E) And 507 (I) Authorizing Debtor To (A) Obtain Postpetition Secured Financing From Gemini Direct Investment, LLC; (B) Utilize Cash Collateral And (C) Pay Certain Related Fees And Charges; (Ii) Granting Adequate Protection To The Prepetition Lender; (Iii) Modifying The Automatic Stay; (Iv) Scheduling A Final Hearing And (V) Granting Certain Related Relief | 11/13/20 | 21 |
| Interim Order (I) Authorizing Use Of Prepetition Bank Account And Certain Payment Methods, And (II) Waiving The Requirements Of 11 U.S.C. 345(B) | 11/13/20 | 20 |
| Order (INTERIM) (I) Authorizing Debtor to (A) Obtain Postpetition Secured Financing from Gemini Direct Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees and Charges; (II) Granting Adequate Protection to the Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing, and (V) Granting Certain Related Relief | 11/13/2020 | 21 |
| Order Authorizing the Debtor to Employ Gellert Scali Busenkell & Brown, LLC as Bankruptcy Counsel Nunc Pro Tunc to the Petition Date | 12/10/2020 | 58 |
| Order for Limited Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362 | 1/4/2021 | 72 |
| Final Order (I) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (II) Granting Related Relief | 1/6/2021 | 75 |
| Order Denying Motion by GunUp, Inc. to Dismiss Chapter 11 Case | 1/14/2021 | 89 |
| Final Order (I) Authorizing Debtor to (A) Obtain Postpetition Secured Financing from GeminiDirect Investment, LLC; (B) Utilize Cash Collateral and (C) Pay Certain Related Fees And Charges; (II) Modifying the Automatic Stay; and (III) Granting Certain Related Relief | 1/14/2021 | 90 |
| Order Authorizing the Debtor to Employ Carney Badley Spellman, P.S. as Appellate Litigation Counsel | 2/16/2021 | 99 |
| Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 Authorizing the Debtors to Enter Into First Amendment to Lease Agreement With OSWX Ridge LLC | 4/1/2021 | 120 |
| Order Pursuant to Sections 105, 327, 328 and 330 of the Bankruptcy Code, Authorizing the Debtor to Retain and Compensate Professionals Utilized in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date | 4/7/2021 | 125 |
| Order (I) Extending the Maturity Date of the DIP Order, (II) Authorizing Debtor to Continue to Use Cash Collateral | 6/9/2021 | 168 |

| | | |
|---|---|---|
| Through July 25, 2021, and (III) Authorizing Change in DIP Lender | | |
| Order Granting First Interim Fee Application of Gellert Scali Busenkell & Brown, LLC as Counsel to the Debtors and Debtors-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the Period from November 10, 2020 Through March 31, 2021 | 7/12/2021 | 184 |
| Order Granting First Interim Fee Application of Carney Badley Spellman, P.S as Appellate Litigation Counsel to the Debtor and Debtor-in-Possession for Allowance of Compensation for Services Rendered and for Reimbursement of All Actual and Necessary Expenses Incurred for the period February 16, 2021 to May 31, 2021 | 7/15/2021 | 186 |

On March 15, 2021, the Debtor commenced an adversary proceeding against GunUp by filing a complaint (as amended, the "Complaint") seeking to subordinate the GunUp Claim pursuant to section 510(b) of the Bankruptcy Code. The Complaint was amended on April 12, 2021. The Complaint alleged that because the GunUp Claim arose from the rescission of a purchase of a security of the Debtor, the GunUp Claim must be subordinated to all other claims against the Debtor. Moreover, because the security at issue in the Merger Agreement was the Debtor's common stock, the Complaint sought to subordinate the GunUp Claim to the same priority as the Debtor's common stock.

On May 28, 2021, GunUp responded to the Complaint, asserted counterclaims against the Debtor for non-dischargeability of the GunUp Claim, and asserted claims against Gemini for equitable subordination or recharacterization of the GDI Claim.

In July 2021, the parties agreed to resolve all claims between GunUp, the Debtor and its subsidiaries and Gemini.  This resulted in the Settlement Agreement and Mutual Releases, annexed hereto as Exhibit C (the "GunUp Settlement Agreement"). The Court will consider the GunUp Settlement Agreement on September 15, 2021. Under the GunUp Settlement Agreement, GunUp will be paid $1,000,000 in satisfaction of the GunUp Claim (the "GunUp Settlement Payment"). The Debtor will contribute $950,000 and Jeff Siegel will contribute $50,000 toward the GunUp

16

Settlement Payment. Court approval of the GunUp Settlement is a condition precedent to confirmation of this Plan. Should the Court decline to approve the GunUp Settlement, the hearing on confirmation of the Plan shall be adjourned to a date to be determined by the Debtor and GunUp or otherwise ordered by the Court.

### 1.7. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions. A review of the Debtor's books and records indicates Debtor generally paid all of its debts when they were due, in the ordinary course of business.

## ARTICLE 2

## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

### 2.1. Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and DIP Lender claims are not classified. They are not considered impaired. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following

Claims in any class:

### A.      Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.      The Debtor's secured debtor-in-possession financing.

2.      If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

3.      Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|--------------------|
| Expenses arising in the ordinary course of business after the Petition Date | Utilities: $27.00 per month Payroll: $79,548 per month Lease: $1,767.00 per month Insurance: $600.00 per month | Payment through the Plan as follows: expenses that arise in the ordinary course of business will be paid in the ordinary course and pursuant to the business practices between the Debtor and creditor. |
| Administrative Tax Claim | $0 | Payment through the Plan as follows: taxes that arise in the ordinary course of business will be paid in the ordinary course and pursuant to the business practices between the Debtor and the taxing authorities. |
| Professional fees, as approved by the Bankruptcy Court | $300,000 | Payment through the Plan as follows: the Debtor's Professionals will be able to draw down its |

18

| | | approved fees from the retainer and the balance will be paid as those fees are incurred in the ordinary course and pursuant to the business practices of the Debtor, |
|---|---|---|
| Subchapter V Trustee | $12,000 | Payment through the Plan as follows: The Subchapter V Trustee will be paid out of the anticipated distributions. |
| DIP Lender (GDI) | Up to $500,0000[3] | To be refinanced by the Exit Facility The Exit Facility shall bear interest at the rate of 7% per annum and shall be amortized over a sixty (60) month term as of the Effective Date. |

**B.     Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

There are no Priority Tax Claims.

### 2.2     Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**A.     Classes of General Unsecured Claims**

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of General Unsecured Claims against the Debtor:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | General Unsecured Claims | No | Claims shall be paid in full no later than (60) days following the entry of an order approving this Plan. Estimated percent of claim paid = 100% |

---

[3] As of September 8, 2021, the Debtor owes $ 162,023.14 on account of the DIP Lender Claim.

| 2 | GDI Claim | Yes | The GDI Claim shall be waived and released as of the Petition Date. Accordingly, Gemini will receive no distribution on account of the GDI Claim. |
| 3 | GunUp Claim | Yes | This Claim will be paid $1,000,000 within fifteen (15) days after the Effective Date. |

### B. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class No. | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity Holders | No | Current existing equity holders shall retain their equity interests on a pro rata basis. |

### 2.3. <u>Claims Objections.</u>

The Debtor may object to the amount or validity of any Claim, other than the GunUp Claim, within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4. <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Executory Contracts shown on Exhibit D shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the

Bankruptcy Code, if any.

Exhibit D also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

The Debtor will reject any Executory Contract and Unexpired Lease that is not expressly assumed and is not listed in Exhibit D.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract is 30 days from the Effective Date.** Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise. Allowed Rejection Damages claims will be treated as Class 1 claims.

### 2.5. <u>Means for Implementation of the Plan.</u>

The Plan will be funded by the proceeds realized from the continued operations of the Debtor with the assistance of capital obtained through Exit Facility in the amount of up to $1,500,000. The Plan will also be funded by a $50,000.00 contribution from Jeff Siegel in consideration for the Releases set forth in the GunUp Settlement Agreement.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

### 2.6. <u>Payments.</u>

Under § 1191(a), unless otherwise ordered by the Bankruptcy Court, payments to Creditors provided for in the Plan will be made by the Debtor

2.7. **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| Jeff Siegel | Chief Executive Officer | $200,000 base salary plus $200,000 commission (based on performance). |

2.8. **Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

2.9. **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.**

Debtor has provided projected financial information. Those projections are listed in Exhibit A.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

3.1. **Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan and available under the Exit Facility to pay all the Claims and expenses that are entitled to be paid on or after that date.

3.2. **Ability to Make Future Plan Payments and Operate Without Further Reorganization**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit A.

The Debtor's financial projections show that the Debtor will have an aggregate disposable income over the five (5) year projection period, after paying operating expenses and post-confirmation taxes, of $2.5 million. All payments required to pre-petition creditors under the plan will be made within sixty (60) days of the Effective Date.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER**

**FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

## ARTICLE 4
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit E.

## ARTICLE 5
## DISCHARGE

As soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan.

## ARTICLE 6
## GENERAL PROVISIONS

### 6.1.   Title to Assets.

Under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders.

### 6.2.   Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they vote to accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3.   Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.   Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any

modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. Modification of Plan.

The Debtor may modify any term of the Plan that does not affect the GunUp Settlement Agreement or the GunUp Settlement Payment at any time before confirmation of the Plan pursuant to § 1193(a). The Debtor may not modify any term of the Plan that affects the GunUp Settlement Agreement or the GunUp Settlement Payment without the written consent of GunUp. However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. Dischare of Subchapter V Trustee.

Upon the effective date of the plan, the Trustee is discharged from and relieved of her trust and her duties and responsibilities are terminated.

### 6.8. Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 6.8 Default; Accelerated Judgment.

In the event of a post-Effective Date payment default by the Debtor under Sections 2.1, 2.2, 2.4 or 2.5 of this Plan, the affected creditor may give notice to the Debtor of the default; and if the default is not cured and remains unresolved fourteen (14) days after such notice has been

given, the Court may enter judgment in favor of the affected creditor and against the Debtor on motion of the affected creditor supported by an affidavit attesting as to the Debtor's payment default, the Debtor's failure to timely cure the same and the giving of notice to the Debtor as provided herein.

## ARTICLE 7
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**7.1** **Conditions to Confirmation.** Unless duly waived pursuant to section 7.3 of the Plan, confirmation shall not occur until the Confirmation Order is entered by the Bankruptcy Court and is in form and substance reasonably satisfactory to the Debtor and the DIP Lender.

**7.2** **Conditions to the Effective Date.** The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to section 7.3 of the Plan: (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor and the DIP Lender; (ii) the Confirmation Order shall have become a Final Order; (iii) the Exit Facility has been executed by the Debtor and the DIP Lender.

**7.3** **Waiver of Conditions to Confirmation or the Effective Date.** The conditions to Confirmation and the conditions to the Effective Date set forth in sections 7.1 and 7.2 of the Plan may be waived in whole or part in writing by the Debtor and the DIP Lender, as applicable, at any time without further Order.

**7.4** **Effect of Nonoccurrence of Conditions to the Effective Date.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with sections 7.1, 7.2, and 7.3 of the Plan, then upon motion by the Debtor made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this section 7.4, (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the rights of the Debtor, the DIP Lender, or any other party in interest.

## ARTICLE 8
## ATTACHMENTS

The following documents accompany the Plan:

- Five Year Projections, annexed as Exhibit A.
- Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit B.

25

- GunUp Settlement Agreement, annexed as Exhibit C.
- Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit D.
- Liquidation Analysis, annexed as Exhibit E.
- Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit F.
- Exit Facility Agreement, annexed as Exhibit G.

# ARTICLE 8
## DEFINITIONS

**8.1**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**8.2     Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**8.3     Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, postpetition financing obtained by the Debtor, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**8.4     Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code**.**

**8.5     Allowed Claim**: Any Claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**8.6     Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.7     Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**8.8     Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**8.9     Bankruptcy Court**: The United States Bankruptcy Court for the District of Delaware.

**8.10     Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**8.11     Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**8.12     Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Media Lodge, Inc. is the Debtor-in-Possession.

**8.13     Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**8.14     Class**: A category of holders of Claims or Equity Interests which are substantially similar to the other Claims or Interests in such class.

**8.15     Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**8.16     Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**8.17     Confirmation Hearing**: The hearing to be held on September 15, 2021 to consider confirmation of the Plan.

**8.18     Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**8.19     Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**8.20**    **Debtor** and **Debtor-in-Possession**: Media Lodge, Inc., the debtor-in-possession in this Chapter 11 Case.

**8.21**    **Disputed Claim:** Any Claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**8.22**    **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**8.23**    **Effective Date**: The effective date of a chapter 11 plan is date on which all the conditions precedent to the effective date set forth in section 7.2 of the Plan are first satisfied,

**8.24**    **Equity Interest**: An ownership interest in the Debtor.

**8.25**    **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**8.26**    **Final Order**: An order or judgment of the Bankruptcy Court or other Court of competent jurisdiction that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**8.27**    **Interest** means (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all units, shares, common stock, preferred stock, partnership interests, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, whether or not transferable and whether fully vested or vesting in the future, that existed immediately before the Effective Date and (b) any Claim against the Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

**8.28**    **Petition Date**: November 10, 2020, the date the chapter 11 petition for relief was filed.

**8.29**    **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**8.30**    **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**8.31**    **GunUp Settlement Agreement**: The Settlement Agreement and Mutual Releases entered into by and among the Debtor, GunUp Holdings, Inc., et. al., on September 3, 2021, annexed as Exhibit C.

**8.32**    **GunUp Settlement Payment**: The payment due to GunUp under the GunUp Settlement Agreement.

28

**8.33****Reorganized Debtor**: The Debtor after the Effective Date.

**8.34****Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**8.35****Trustee**: Natasha Songonuga, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**8.36****Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated:  September 10, 2021
Wilmington, Delaware

GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
1201 N. Orange St., Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
        rgellert@gsbblaw.com

29

# EXHIBIT A

Five Year Projections

|  | 2018 | 2019 | 2020 FC* |
|---|---|---|---|
| ML Inc Recognized Revenue | $ 4,770,404 | $ 4,145,423 | $ 2,523,235 |
| GB Top Line Recognized Revenue | $ - | $ 1,323,577 | $ 1,700,000 |
| **Sub-Total** | **$ 4,770,404** | **$ 5,469,000** | **$ 4,223,235** |
|  |  |  |  |
| Net Income (Loss) | $ (3,028,789) | $ (1,659,187) | $ (2,702,748) |
| Litigation Liability | $ - | $ 1,061,859 | $ 1,494,628 |
| Depreciation | $ 15,357 | $ 20,028 | $ 12,318 |
| Amortization | $ 100,220 | $ 100,220 | $ 100,220 |
| Legal Expenses Related to Suit | $ 1,703,451 | $ 501,151 | $ 532,799 |
| **EBITDA** | **$ (1,209,761)** | **$ 24,071** | **$ (562,783)** |

| | 2021 | 2022 | 2023 | 2024 | 2025 | TOTAL |
|---|---|---|---|---|---|---|
| ML Inc Recognized Revenue | $ 2,979,183 | $ 3,366,476 | $ 3,703,124 | $ 4,036,405 | $ 4,440,046 | $ 18,525,234 |
| GB Top Line Recognized Revenue | $ 1,904,000 | $ 2,113,440 | $ 2,324,784 | $ 2,534,015 | $ 2,736,736 | $ 11,612,974 |
| **Sub-Total** | **$ 4,883,183** | **$ 5,479,916** | **$ 6,027,908** | **$ 6,570,420** | **$ 7,176,782** | **$ 30,138,208** |
|  |  |  |  |  |  |  |
| **EBITDA** | **$ (126,027)** | **$ 217,581** | **$ 527,009** | **$ 798,034** | **$ 1,141,606** | **$ 2,558,203** |

**MEDIA LODGE INC.**
Proforma Statement of Income/(Loss)
For the Twelve Months Ending Tuesday, December 31, 2019

|  | Consolidated | Consolidated |
|---|---|---|
|  | Fiscal 2019 | Fiscal 2018 |

## ORDINARY INCOME / EXPENSE

**Income**

| | | |
|---|---|---|
| Affiliate Revenue | $2,319 | $778 |
| Banner Ads | $822,049 | $914,200 |
| Banner Ads - Programmatic Ads | $323,705 | $371,888 |
| Mobile Banner Ads | $36,517 | $46,096 |
| Email | $2,558,770 | $1,846,525 |
| eNewsletter | $446,069 | $394,035 |
| Video Advertising | $3,439 | $267,654 |
| Video Advertising - GetZone | $268,493 | $232,183 |
| Media Lodge Network | $767,077 | $497,940 |
| GunGenius Advertising | | $202 |
| Lead Generation Program | $103,689 | $196,190 |
| Comp Ad Space for failed svc | | $2,714 |
| Banner Exchange | $136,920 | $954,081 |
| Miscellaneous Income | $14 | |
| **Total Income** | **$5,469,062** | **$5,724,485** |

**Cost of Goods Sold**

| | | |
|---|---|---|
| Hosting / Data Center | $21,789 | $51,472 |
| **Production Costs** | **$21,789** | **$51,472** |
| | | |
| Commission | $471,160 | $526,957 |
| Advertising Consult - Programmatic | $72,437 | $72,589 |
| Publisher Costs (Bloggers) | $419,646 | $369,450 |
| Banner Exchange | $1,815,785 | $926,768 |
| Ad Creation/Graphic Desogn (For Advertisers) | $29,341 | $62,486 |
| Advertising Joint Venture | $38,642 | $136,642 |
| Ad Operations | $249,173 | $454,396 |
| Graphic Design | | $2,278 |
| Print Placements | | $3,200 |
| Video Production | $268,568 | $186,109 |
| Video Production Get Zone | $20,350 | $13,035 |
| Billable Expenses | $21,302 | $2,283 |
| Credit Card fees | $29,692 | $25,861 |
| Gateway Fees | $180 | $176 |
| Advance Retail Segmentation Expense | $507,331 | $287,721 |
| | | |
| **Selling Costs** | **$3,943,606** | **$3,069,950** |
| **Total Cost of Goods Sold** | **$3,965,395** | **$3,121,423** |
| **Gross Profit** | **$1,503,667** | **$2,603,062** |

**Expenses**
**Administrative Expense**

| | | |
|---|---|---|
| Liability Insurance | $99 | |
| Accounting | $3,552 | $9,028 |
| Legal Fees | $531,151 | $1,733,451 |
| Professional Fees | | $10,000 |
| Consulting Fees | $5,695 | $9,163 |
| Business Development | $840 | $7,500 |
| **Total Administrative Expense** | **$541,337** | **$1,769,142** |

**Expense**

| | | |
|---|---|---|
| Bank Service Charges | $8,749 | $12,814 |
| Wire Fees | $191 | $182 |
| Domain Registration Fees | $26 | $159 |
| Software Subscriptions & Licenses | $40,281 | $54,139 |
| Trade Organizations | $250 | |

**MEDIA LODGE INC.**
Proforma Statement of Income/(Loss)
For the Twelve Months Ending Tuesday, December 31, 2019

|  | Consolidated | Consolidated |
|---|---|---|
|  | **Fiscal 2019** | **Fiscal 2018** |
| **ORDINARY INCOME / EXPENSE** |  |  |
| Licenses and Permits | $2,092 | $750 |
| Office Supplies | $1,200 | $1,238 |
| Postage and Delivery | $110 | $451 |
| Recruiting | $247 |  |
| Telephone | $5,385 | $6,603 |
| Internet (Wi-Fi or Wired) | $2,688 | $3,086 |
| Miscellaneous | $657 | $532 |
| Office Equipment | $992 | $1,589 |
| Ad Production | $5,289 | $24,999 |
| Press Releases | $3,500 | $5,200 |
| Technology | $5,667 |  |
| Rent | $22,992 | $30,905 |
| Utilities | $1,182 | $474 |
| Operating Expenses for Buildings (part of Rent) | $5,304 |  |
| Other Taxes | $1,725 | $19,754 |
| State Tax |  | $793 |
| NRA | $7,230 | $5,537 |
| SHOT Show | $29,403 | $82,565 |
| Other Trade Shows | $3,186 | $5,994 |
| Conference Registration | $200 | $50 |
| Airfare | $7,430 | $27,194 |
| Ground Transportation | $2,960 | $7,299 |
| Lodging | $1,222 | $10,001 |
| Meals | $3,406 | $9,485 |
| Bad Debt |  | $34,400 |
| Depreciation - Website Design | $9,116 | $4,445 |
| Depreciation - Adv Ret Seg | $10,912 | $10,912 |
| Amortization of GunUp | $100,220 | $100,220 |
| Wages | $997,882 | $1,233,497 |
| Contract Labor | $46,530 | $45,440 |
| Bonuses, Other Wages | $46,250 | ($11,384) |
| Benefits | $20,710 | $24,931 |
| Employee Profit Sharing | $42,471 | $49,933 |
| Federal Unemployment tax | $294 | $672 |
| State Unemployment tax | $18,102 | $16,205 |
| Medicare tax | $21,638 | $25,893 |
| Workers Comp | $6,902 | $9,166 |
| Social Security tax | $66,406 | $78,829 |
| Administration Fee | $8,663 | $10,302 |
| **Total Expense** | **$1,559,658** | **$1,945,255** |
|  |  |  |
| **Other (Income) Expense** |  |  |
| Other Expense | $1,061,859 | $9,292 |
| **Total Other (Income) Expense** | **$1,061,859** | **$9,292** |
| **Net Income (Loss)** | **($1,659,187)** | **($1,120,627)** |
|  |  |  |
| Depreciation | $20,028 | $15,357 |
| Amortization | $100,220 | $100,220 |
| Litigation Liability | $1,061,859 | $0 |
| Legal Expenses Related to Lawsuit (Estimated) | $501,151 | $1,703,451 |
|  |  |  |
| **EBITDA (Proforma)** | **$24,071** | **$698,401** |

Case 20-12969-JTD    Doc 197-1    Filed 09/10/21    Page 5 of 17

ML INC. 2020
ML Inc '20 Oct Actuals
For the Ten Months Ending Saturday, October 31, 2020

| | | January | February | March | April | May | June | July | August | September | October | Nov FC | Dec FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $3 | $25 | $195 | | $176 | $426 | $651 | $697 | | | $217 | $217 | $2,608 |
| 41800 | Banner Exchange | $224,599 | $180,075 | $185,608 | $193,529 | $235,952 | $194,968 | $180,986 | $204,800 | $240,075 | $259,929 | $210,052 | $210,052 | $2,520,627 |
| | **Total Income** | **$224,602** | **$180,100** | **$185,803** | **$193,529** | **$236,128** | **$195,394** | **$181,637** | **$205,497** | **$240,075** | **$259,929** | **$210,270** | **$210,270** | **$2,523,235** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $59,756 | $27,583 | $26,624 | $26,032 | $14,983 | $31,951 | $21,290 | $17,101 | $33,388 | $21,381 | $28,009 | $28,009 | $336,108 |
| 51010 | Advertising Consult - Programmatic | $4,953 | $3,916 | $1,952 | $1,542 | $1,135 | $1,255 | $1,273 | $953 | $991 | $1,648 | $1,962 | $1,962 | $23,542 |
| 51020 | Publisher Costs (Bloggers) | $27,195 | $28,294 | $36,302 | $32,262 | $38,458 | $44,103 | $37,032 | $41,038 | $55,121 | $71,663 | $41,147 | $41,147 | $493,763 |
| 51040 | Banner Exchange | $7,066 | | | $8,237 | $9,764 | $12,203 | $13,121 | | | $576 | $576 | $6,916 |
| 51060 | Advertising Expense | | | | | | | | | | $520 | $52 | $52 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $3,200 | | $430 | $0 | $4,730 |
| 51410 | Advertising Joint Venture | | | | | | | | | $11,158 | | | | $11,158 |
| 51430 | Ad Operations | $20,883 | $28,385 | $36,619 | $32,604 | $24,665 | $25,792 | $26,403 | $32,453 | $17,631 | $34,430 | $27,986 | $27,986 | $335,835 |
| 56110 | Video Production | ($1,613) | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $84,665 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 56120 | Credit Card fees | $3,357 | $1,374 | $2,154 | $2,672 | | | | | | | | | $9,556 |
| 56130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | | $4 | $4 | $53 |
| 56200 | Advance Retail Seg Expense | $28,029 | $26,886 | $27,024 | $28,356 | $25,415 | $22,864 | $21,062 | $32,607 | $44,148 | $42,429 | $29,882 | $29,882 | $358,584 |
| | **Selling Costs** | **$158,886** | **$175,103** | **$88,493** | **$138,301** | **$118,805** | **$144,297** | **$122,923** | **$128,349** | **$183,975** | **$197,185** | **$143,560** | **$143,130** | **$1,743,007** |
| | **Total Cost of Goods Sold** | **$159,141** | **$175,358** | **$88,802** | **$138,576** | **$119,100** | **$144,592** | **$123,218** | **$128,644** | **$184,081** | **$197,586** | **$143,838** | **$143,408** | **$1,746,345** |
| | **Gross Profit** | **$65,461** | **$4,743** | **$97,001** | **$54,952** | **$117,028** | **$50,802** | **$58,419** | **$76,853** | **$55,994** | **$62,343** | **$66,431** | **$66,861** | **$776,890** |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $49,112 | $53,178 | $60,835 | $62,215 | $55,094 | $124,791 | $57,086 | $34,331 | $19,235 | $8,922 | $4,000 | $4,000 | $532,799 |
| | **Total Administrative Expense** | **$49,112** | **$53,178** | **$60,835** | **$62,215** | **$55,094** | **$124,791** | **$57,086** | **$34,331** | **$19,235** | **$8,922** | **$4,000** | **$4,000** | **$532,799** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,849 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,128 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | ($0) | | | | | | | | | | |
| 60610 | Office Equipment | $194 | | | | | | | | | | $19 | $19 | $232 |
| 61410 | Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,782 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,500 |
| 61750 | Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,400 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | $70 | | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,076 |
| 64040 | NRA | | | | $929 | | | | | | | | | $929 |
| 64070 | SHOT Show | $39,411 | $15,000 | | $750 | | | | | | | | | $55,161 |
| 64350 | Ground Transportation | | | | | | | | $96 | | $24 | | | $120 |
| 64500 | Meals | | | | | | | | $264 | | $74 | | | $338 |
| 66500 | Depreciation - Website Design | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $11,998 |

Case 20-12969-JTD    Doc 197-1    Filed 09/10/21    Page 6 of 17

ML INC. 2020
ML Inc '20 Oct Actuals
For the Ten Months Ending Saturday, October 31, 2020

| | ORDINARY INCOME / EXPENSE | January | February | March | April | May | June | July | August | September | October | Nov FC | Dec FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66550 | Depreciation - Adv Ret Seg | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $27 | $320 |
| 67010 | Amortization of GunUp | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $8,352 | $100,220 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,245 |
| 71010 | Contract Labor | $3,440 | $3,183 | $2,829 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $39,441 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $55,000 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,461 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,701 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,362 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,610 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| 99999 | Suspense Accounts | | | | | | | ($6,785) | $6,785 | | | | | |
| | **Total Expense** | $136,867 | $136,009 | $116,798 | $117,653 | $115,858 | $141,454 | $96,638 | $109,870 | $142,226 | $108,704 | $115,067 | $115,067 | $1,452,211 |
| | | | | | | | | | | | | | | |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | $1,494,628 | | | | | | | | | | | | $1,494,628 |
| | **Total Other (Income) Expense** | $1,494,628 | | | | | | | | | | | | $1,494,628 |
| | **Net Income (Loss)** | ($1,615,146) | ($184,444) | ($80,632) | ($124,915) | ($53,924) | ($215,442) | ($95,304) | ($67,347) | ($105,467) | ($55,283) | ($52,636) | ($52,206) | ($2,702,748) |

Minus Legal ($2,169,949)
Minus Depreciation Web ($2,157,951)
Minus Deprec. Adv Retail ($2,157,631)
Minus Ammor. GU ($2,057,412)
Minus Other Exp Jan ($562,783)

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '21 - Dec '21

| | | Jan '21 FC | Feb '21 FC | Mar '21 FC | Apr '21 FC | May '21 FC | Jun '21 FC | Jul '21 FC | Aug '21 FC | Sept '21 FC | Oct '21 FC | Nov '21 FC | Dec '21 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $300 | $300 | $230 | $300 | $208 | $503 | $768 | $822 | $500 | $400 | $256 | $256 | $4,843 |
| 41800 | Banner Exchange | $265,027 | $212,489 | $219,018 | $228,364 | $278,424 | $230,063 | $213,563 | $241,664 | $283,288 | $306,716 | $247,861 | $247,861 | $2,974,339 |
| | **Total Income** | **$265,327** | **$212,789** | **$219,248** | **$228,664** | **$278,631** | **$230,565** | **$214,331** | **$242,487** | **$283,788** | **$307,116** | **$248,117** | **$248,117** | **$2,979,183** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,009 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51020 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | | $576 | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | $520 | $52 | $52 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | $4 | $4 | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | **Selling Costs** | **$139,472** | **$176,100** | **$90,272** | **$139,552** | **$121,511** | **$136,985** | **$125,400** | **$131,946** | **$174,812** | **$201,851** | **$143,560** | **$143,130** | **$1,724,591** |
| | **Total Cost of Goods Sold** | **$139,727** | **$176,355** | **$90,581** | **$139,827** | **$121,806** | **$137,280** | **$125,695** | **$132,241** | **$174,919** | **$202,252** | **$143,838** | **$143,408** | **$1,727,928** |
| | **Gross Profit** | **$125,600** | **$36,434** | **$128,667** | **$88,837** | **$156,826** | **$93,286** | **$88,637** | **$110,246** | **$108,870** | **$104,864** | **$104,279** | **$104,709** | **$1,251,254** |
| | | | | | | | | | | | | | | |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $84,000 |
| | **Total Administrative Expense** | **$1,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$7,000** | **$84,000** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | $19 | $19 | $232 |
| 61410 | Ad Misc. | | | | | | | | | | $149 | $149 | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | $70 | | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | | | | | | | | | | | | | $0 |
| 64350 | Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '21 - Dec '21

| | | Jan '21 FC | Feb '21 FC | Mar '21 FC | Apr '21 FC | May '21 FC | Jun '21 FC | Jul '21 FC | Aug '21 FC | Sept '21 FC | Oct '21 FC | Nov '21 FC | Dec '21 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | | |
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,889 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | **$92,638** | **$116,448** | **$112,591** | **$106,596** | **$106,480** | **$132,076** | **$94,394** | **$93,707** | **$133,298** | **$99,678** | **$105,689** | **$105,689** | **$1,299,282** |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | **$31,963** | **($87,014)** | **$9,077** | **($24,758)** | **$43,346** | **($45,790)** | **($12,758)** | **$9,539** | **($31,428)** | **($1,814)** | **($8,410)** | **($7,980)** | **($126,027)** |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '22 - Dec '22

| | | Jan '22 FC | Feb '22 FC | Mar '22 FC | Apr '22 FC | May '22 FC | Jun '22 FC | Jul '22 FC | Aug '22 FC | Sept '22 FC | Oct '22 FC | Nov '22 FC | Dec '22 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $339 | $339 | $260 | $339 | $235 | $568 | $868 | $929 | $565 | $452 | $289 | $289 | $5,473 |
| 41800 | Banner Exchange | $299,481 | $240,113 | $247,490 | $258,051 | $314,619 | $259,971 | $241,327 | $273,080 | $320,116 | $346,590 | $280,083 | $280,083 | $3,361,003 |
| | **Total Income** | **$299,820** | **$240,452** | **$247,750** | **$258,390** | **$314,853** | **$260,539** | **$242,195** | **$274,010** | **$320,681** | **$347,042** | **$280,373** | **$280,373** | **$3,366,476** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,009 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 50381 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | | $576 | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | | $520 | $52 | $52 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | | $4 | $4 | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | **Selling Costs** | **$139,472** | **$176,100** | **$90,272** | **$139,552** | **$121,511** | **$136,985** | **$125,400** | **$131,946** | **$174,812** | **$201,851** | **$143,560** | **$143,130** | **$1,724,591** |
| | **Total Cost of Goods Sold** | **$139,727** | **$176,355** | **$90,581** | **$139,827** | **$121,806** | **$137,280** | **$125,695** | **$132,241** | **$174,919** | **$202,252** | **$143,838** | **$143,408** | **$1,727,928** |
| | **Gross Profit** | **$160,093** | **$64,096** | **$157,169** | **$118,564** | **$193,048** | **$123,259** | **$116,500** | **$141,769** | **$145,762** | **$144,789** | **$136,535** | **$136,965** | **$1,638,548** |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| | **Total Administrative Expense** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$60,000** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | | $19 | $19 | $232 |
| 61410 | Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | | $70 | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | $35,000 | | | | | | | | | | | | $35,000 |
| 64350 | Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '22 - Dec '22

| | | Jan '22 FC | Feb '22 FC | Mar '22 FC | Apr '22 FC | May '22 FC | Jun '22 FC | Jul '22 FC | Aug '22 FC | Sept '22 FC | Oct '22 FC | Nov '22 FC | Dec '22 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,989 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | **$130,190** | **$118,777** | **$114,843** | **$108,727** | **$108,609** | **$134,717** | **$96,282** | **$95,581** | **$135,964** | **$101,671** | **$107,803** | **$107,803** | **$1,360,968** |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | **$24,902** | **($59,680)** | **$37,327** | **$4,836** | **$79,438** | **($16,458)** | **$15,217** | **$41,188** | **$4,799** | **$38,118** | **$23,732** | **$24,162** | **$217,581** |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '23 - Dec '23

| | | Jan '23 FC | Feb '23 FC | Mar '23 FC | Apr '23 FC | May '23 FC | Jun '23 FC | Jul '23 FC | Aug '23 FC | Sept '23 FC | Oct '23 FC | Nov '23 FC | Dec '23 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $339 | $339 | $260 | $339 | $235 | $568 | $868 | $929 | $565 | $452 | $289 | $289 | $5,473 |
| 41800 | Banner Exchange | $299,481 | $240,113 | $247,490 | $258,051 | $314,619 | $259,971 | $241,327 | $273,080 | $320,116 | $346,590 | $280,083 | $280,083 | $3,361,003 |
| | **Total Income** | **$329,802** | **$264,497** | **$272,525** | **$284,229** | **$346,339** | **$286,593** | **$266,414** | **$301,411** | **$352,749** | **$381,746** | **$308,410** | **$308,410** | **$3,703,124** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,000 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51020 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | $576 | $576 | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | $520 | $52 | $52 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $2,435 | $793 | $1,397 | | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | $4 | $4 | | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | **Selling Costs** | **$139,472** | **$176,100** | **$90,272** | **$139,552** | **$121,511** | **$136,985** | **$125,400** | **$131,946** | **$174,812** | **$201,851** | **$143,560** | **$143,130** | **$1,724,591** |
| | **Total Cost of Goods Sold** | **$139,727** | **$176,355** | **$90,581** | **$139,827** | **$121,806** | **$137,280** | **$125,695** | **$132,241** | **$174,919** | **$202,252** | **$143,838** | **$143,408** | **$1,727,928** |
| | **Gross Profit** | **$190,075** | **$88,142** | **$181,945** | **$144,403** | **$224,533** | **$149,313** | **$140,719** | **$169,170** | **$177,830** | **$179,493** | **$164,572** | **$165,002** | **$1,975,196** |
| | | | | | | | | | | | | | | |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| | **Total Administrative Expense** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$60,000** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | $19 | $19 | | $232 |
| 61410 | Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $2,833 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | | | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | $70 | | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | $35,000 | | | | | | | | | | | | $35,000 |
| 64350 | Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '23 - Dec '23

| | | Jan '23 FC | Feb '23 FC | Mar '23 FC | Apr '23 FC | May '23 FC | Jun '23 FC | Jul '23 FC | Aug '23 FC | Sept '23 FC | Oct '23 FC | Nov '23 FC | Dec '23 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,989 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | $900 | $505 | $303 | $303 | $368 | $325 | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | | | | | | | | | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | **$132,794** | **$121,152** | **$117,139** | **$110,902** | **$110,782** | **$137,412** | **$98,208** | **$97,493** | **$138,683** | **$103,705** | **$109,959** | **$109,959** | **$1,388,187** |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | **$52,281** | **($38,011)** | **$59,805** | **$28,500** | **$108,751** | **$6,901** | **$37,511** | **$66,877** | **$34,148** | **$70,789** | **$49,613** | **$50,043** | **$527,009** |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '24 - Dec '24

| | | Jan '24 FC | Feb '24 FC | Mar '24 FC | Apr '24 FC | May '24 FC | Jun '24 FC | Jul '24 FC | Aug '24 FC | Sept '24 FC | Oct '24 FC | Nov '24 FC | Dec '24 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $339 | $339 | $260 | $339 | $235 | $568 | $868 | $929 | $565 | $452 | $289 | $289 | $5,473 |
| 41800 | Banner Exchange | $299,481 | $240,113 | $247,490 | $258,051 | $314,619 | $259,971 | $241,327 | $273,080 | $320,116 | $346,590 | $280,083 | $280,083 | $3,361,003 |
| | **Total Income** | **$359,484** | **$288,301** | **$297,052** | **$309,810** | **$377,509** | **$312,386** | **$290,391** | **$328,538** | **$384,496** | **$416,103** | **$336,167** | **$336,167** | **$4,036,405** |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | **$255** | **$255** | **$309** | **$275** | **$295** | **$295** | **$295** | **$295** | **$106** | **$401** | **$278** | **$278** | **$3,337** |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,000 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51030 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | $576 | $576 | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | $520 | $52 | $52 | | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | $4 | $4 | | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | **Selling Costs** | **$139,472** | **$176,100** | **$90,272** | **$139,552** | **$121,511** | **$136,985** | **$125,400** | **$131,946** | **$174,812** | **$201,851** | **$143,560** | **$143,130** | **$1,724,591** |
| | **Total Cost of Goods Sold** | **$142,517** | **$179,877** | **$92,386** | **$142,618** | **$124,236** | **$140,020** | **$128,203** | **$134,880** | **$178,415** | **$206,289** | **$146,709** | **$146,271** | **$1,762,420** |
| | **Gross Profit** | **$216,967** | **$108,424** | **$204,666** | **$167,192** | **$253,273** | **$172,367** | **$162,188** | **$193,658** | **$206,082** | **$209,813** | **$189,458** | **$189,896** | **$2,273,985** |
| | | | | | | | | | | | | | | |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| | **Total Administrative Expense** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$5,000** | **$60,000** |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | $19 | $19 | | $232 |
| 61410 | Ad Misc. | | | | | $1,485 | | | | | $149 | $149 | | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | $70 | | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | $35,000 | | | | | | | | | | | | $35,000 |
| 64350 | Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '24 - Dec '24

| | | Jan '24 FC | Feb '24 FC | Mar '24 FC | Apr '24 FC | May '24 FC | Jun '24 FC | Jul '24 FC | Aug '24 FC | Sept '24 FC | Oct '24 FC | Nov '24 FC | Dec '24 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | | | | | | | | | | | | | |
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,989 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | $135,450 | $123,575 | $119,482 | $113,120 | $112,997 | $140,160 | $100,172 | $99,442 | $141,456 | $105,779 | $112,158 | $112,158 | $1,415,951 |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | $76,517 | ($20,151) | $80,184 | $49,072 | $135,276 | $27,207 | $57,016 | $89,215 | $59,625 | $99,035 | $72,300 | $72,738 | $798,034 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '25 - Dec '23

| Acct | ORDINARY INCOME / EXPENSE | Jan '25 FC | Feb '25 FC | Mar '25 FC | Apr '25 FC | May '25 FC | Jun '25 FC | Jul '25 FC | Aug '25 FC | Sept '25 FC | Oct '25 FC | Nov '25 FC | Dec '25 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Income** | | | | | | | | | | | | | |
| 41010 | Banner Ads - Programmatic Ads | $339 | $339 | $260 | $339 | $235 | $568 | $868 | $929 | $565 | $452 | $289 | $289 | $5,473 |
| 41800 | Banner Exchange | $299,481 | $240,113 | $247,490 | $258,051 | $314,619 | $259,971 | $241,327 | $273,080 | $320,116 | $346,590 | $280,083 | $280,083 | $3,361,003 |
| | **Total Income** | $395,433 | $317,132 | $326,758 | $340,791 | $415,280 | $343,625 | $319,430 | $361,392 | $422,946 | $457,713 | $369,784 | $369,784 | $4,440,046 |
| | **Cost of Goods Sold** | | | | | | | | | | | | | |
| 50000 | Hosting / Data Center | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| | **Production Costs** | $255 | $255 | $309 | $275 | $295 | $295 | $295 | $295 | $106 | $401 | $278 | $278 | $3,337 |
| 51000 | Commission | $39,573 | $27,583 | $26,624 | $26,032 | $14,983 | $21,951 | $21,290 | $17,101 | $33,388 | $21,595 | $28,289 | $28,000 | $306,419 |
| 51010 | Advertising Consult - Programmatic | $2,477 | $1,958 | $976 | $771 | $568 | $627 | $637 | $476 | $496 | $824 | $98 | $98 | $10,005 |
| 51020 | Publisher Costs (Bloggers) | $27,739 | $28,860 | $37,028 | $32,908 | $39,227 | $44,985 | $37,772 | $41,859 | $56,223 | $73,096 | $41,147 | $41,147 | $501,992 |
| 51040 | Banner Exchange | $7,066 | | ($44,628) | $8,237 | $9,764 | $12,203 | $13,121 | | | $576 | | $576 | $6,915 |
| 51060 | Advertising Expense | | | | | | | | | $520 | | $52 | $52 | $624 |
| 51070 | Ad Creation/Graphic (For Ads) | | $650 | | | | | | $450 | $1,500 | | $430 | $0 | $3,030 |
| 51410 | Advertising Joint Venture | | | | | | | | | | | | | $0 |
| 51430 | Ad Operations | $21,927 | $29,804 | $38,450 | $34,234 | $25,898 | $27,081 | $27,723 | $34,075 | $18,512 | $36,151 | $27,986 | $27,986 | $349,827 |
| 56110 | Video Production | | $50,000 | | | | | $1,950 | $2,350 | $9,133 | $8,733 | $7,055 | $7,055 | $86,277 |
| 56120 | Video Production Get Zone | $9,250 | $7,569 | $2,000 | $6,150 | $3,950 | $3,695 | | | $8,400 | $15,750 | $5,676 | $5,676 | $68,116 |
| 56150 | Billable Expenses | | $435 | $435 | $435 | $435 | $2,435 | $793 | $1,397 | $805 | $631 | $780 | $780 | $9,359 |
| 60120 | Credit Card Fees | $2,000 | $1,000 | $1,000 | $1,000 | | | | | | | | | $5,000 |
| 60130 | Gateway Fees | $11 | $11 | $11 | $11 | | | | | | | $4 | $4 | $52 |
| 56200 | Advance Retail Seg Expense | $29,431 | $28,230 | $28,376 | $29,773 | $26,686 | $24,007 | $22,115 | $34,237 | $46,355 | $44,550 | $29,882 | $29,882 | $373,525 |
| | **Selling Costs** | $139,472 | $176,100 | $90,272 | $139,552 | $121,511 | $136,985 | $125,400 | $131,946 | $174,812 | $201,851 | $143,560 | $143,130 | $1,724,591 |
| | **Total Cost of Goods Sold** | $143,939 | $181,673 | $93,307 | $144,041 | $125,475 | $141,417 | $129,482 | $136,226 | $180,198 | $208,348 | $148,174 | $147,731 | $1,780,011 |
| | **Gross Profit** | $251,493 | $135,458 | $233,451 | $196,750 | $289,785 | $202,208 | $189,948 | $225,166 | $242,748 | $249,365 | $221,610 | $222,053 | $2,660,035 |
| | **Expenses** | | | | | | | | | | | | | |
| | **Administrative Expense** | | | | | | | | | | | | | |
| 61100 | Legal Fees | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| | **Total Administrative Expense** | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $60,000 |
| | **Expense** | | | | | | | | | | | | | |
| 60100 | Bank Service Charges | $262 | $271 | $392 | $376 | $251 | $264 | $288 | $313 | $257 | $534 | $321 | $321 | $3,850 |
| 60140 | Wire Fees | | | | | | $10 | | | | | | | $10 |
| 60240 | Software Subscriptions & Licenses | $3,656 | $2,423 | $2,825 | $3,357 | $2,692 | $3,651 | $2,650 | $2,322 | $2,907 | $2,487 | $2,897 | $2,897 | $34,765 |
| 60250 | Trade Organizations | $100 | | | | | | | | | | | | $100 |
| 60340 | Office Supplies | $58 | | | | | | | | | $142 | $20 | $20 | $240 |
| 60350 | Postage and Delivery | | | $384 | | | | | | | | | | $384 |
| 60380 | Telephone | $400 | $150 | $400 | $350 | $200 | $250 | $150 | $200 | $300 | $207 | $261 | $261 | $3,129 |
| 60381 | Internet (Wi-Fi or Wired) | $199 | $110 | $254 | $144 | $210 | $188 | $144 | $74 | $144 | $174 | $164 | $164 | $1,971 |
| 60390 | Miscellaneous | | | | | | | | | | | | | $0 |
| 60610 | Office Equipment | $194 | | | | | | | | | | $19 | $19 | $232 |
| 61410 | Ad Misc. | | | | | | $1,485 | | | | | $149 | $149 | $1,783 |
| 61420 | Ad Production | ($4,550) | $1,843 | $854 | | $1,365 | $910 | $1,001 | $899 | $1,300 | $1,290 | $491 | $491 | $5,895 |
| 61500 | Press Releases | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $292 | $3,501 |
| 61750 | Technology | | $2,833 | | | | | | | | | $283 | $283 | $3,399 |
| 62000 | Rent | $1,767 | $1,767 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $867 | $12,200 |
| 62400 | Utilities | $27 | $27 | $27 | | | | $70 | | | | $15 | $15 | $181 |
| 62450 | Op Ex for Buildings (part of Rent) | $719 | $719 | $1,055 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $719 | $8,968 |
| 63000 | Other Taxes | | | | | $2,563 | | | | | | $256 | $256 | $3,075 |
| 64040 | NRA | | | | | | | | | | | | | $0 |
| 64070 | SHOT Show | $35,000 | | | | | | | | | | | | $35,000 |
| 64350 | Ground Transportation | | | | | | | $150 | $96 | $150 | $150 | | | $546 |
| 64500 | Meals | | | | | | | $200 | $264 | $300 | $300 | | | $1,064 |
| 66500 | Depreciation - Website Design | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MEDIA LODGE INC.
Media Lodge Inc
12 Month Cashflow Forecast Jan '25 - Dec '23

| | ORDINARY INCOME / EXPENSE | Jan '25 FC | Feb '25 FC | Mar '25 FC | Apr '25 FC | May '25 FC | Jun '25 FC | Jul '25 FC | Aug '25 FC | Sept '25 FC | Oct '25 FC | Nov '25 FC | Dec '25 FC | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66550 | Depreciation - Adv Ret Seg | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 67010 | Amortization of GunUp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 71000 | Wages | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $79,548 | $71,579 | $71,579 | $82,469 | $79,786 | $78,270 | $78,270 | $939,244 |
| 71010 | Contract Labor | $8,000 | $8,000 | $8,000 | $4,018 | $3,038 | $1,301 | $4,177 | $5,357 | $4,626 | $897 | $3,287 | $3,287 | $53,889 |
| 71100 | Bonuses, Other Wages | ($22,917) | $2,083 | $2,083 | $2,083 | $2,083 | $27,083 | $2,083 | $2,083 | $27,083 | $2,083 | $4,583 | $4,583 | $54,999 |
| 71200 | Benefits | $1,425 | $1,349 | $1,349 | $1,028 | $783 | $1,081 | $1,077 | $1,073 | $1,016 | $1,036 | $1,122 | $1,122 | $13,462 |
| 71210 | Employee Profit Sharing | $4,079 | $3,114 | $3,085 | $3,167 | $2,836 | $4,095 | $2,786 | $2,660 | $4,226 | $3,035 | $3,308 | $3,308 | $39,700 |
| 71300 | Federal Unemployment tax | $341 | $35 | $2 | | | | | | | | $38 | $38 | $454 |
| 71310 | State Unemployment tax | $7,087 | $2,553 | $1,937 | $1,442 | $900 | $505 | $303 | $303 | $368 | $325 | $350 | $350 | $16,425 |
| 71320 | Medicare tax | $2,020 | $1,553 | $1,539 | $1,531 | $1,371 | $1,979 | $1,347 | $1,286 | $2,042 | $1,467 | $1,614 | $1,614 | $19,363 |
| 71330 | Workers Comp | $601 | $458 | $437 | $452 | $372 | $583 | $388 | $376 | $592 | $417 | $467 | $467 | $5,609 |
| 71340 | Social Security tax | $8,637 | $6,642 | $6,583 | $6,546 | $5,715 | $6,589 | $3,517 | $2,197 | $2,965 | $2,795 | $5,219 | $5,219 | $62,624 |
| 71400 | Administration Fee | | | | | | | | | | | | | |
| 99999 | Suspense Accounts | $693 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $677 | $677 | $8,122 |
| | **Total Expense** | $139,513 | $127,283 | $123,067 | $116,514 | $116,387 | $144,365 | $103,177 | $102,426 | $145,700 | $108,952 | $115,523 | $115,523 | $1,458,429 |
| | **Other (Income) Expense** | | | | | | | | | | | | | |
| 90000 | Other Expense | | | | | | | | | | | | | |
| | **Total Other (Income) Expense** | | | | | | | | | | | | | |
| | **Net Income (Loss)** | $106,980 | $3,176 | $105,384 | $75,236 | $168,398 | $52,843 | $81,771 | $117,740 | $92,048 | $135,413 | $101,087 | $101,530 | $1,141,806 |

<u>2018 & 2019</u>
Actuals

<u>2020</u>
Actuals through end of October.  Nov and Dec are straightline revenue and expenses based on 2020 monthly averages
Revenue down from 2019 due to: Elimination of direct response emails (~$500k), reduction in programmatic (~$300k) and self service reven
Eliminated credit card fees in latter part of year.
No ad creation for December
Legal fees reduced due to pre-petition expenses (Siegel, O'connel, Urvan defense as well as Cybersquatting defense and Washington State
No NRA Show in 2020.

<u>2021</u>
18% revenue growth based on stronger gun sales in 2020 (marketing budgets tend to lag 12-18 months behind sales), increased self
service revenue moving to Danads platform, growth in email lists, reassignment of accounts, focused efforts on hunting, retail and
Reduced programmatic expense by 50% due to elimination on GB Home page and Search pages.
2% Growth in Publisher costs, more impressions delivered on GetZone and owned sites.
5% growth in email expense due to more sends and growing list
No NRA Expense due to COVID
No SHOT Show due to Covid
T&E begins slowly in July after vaccine becomes widly available
Eliminated Depreciation and Amortization
Increased legal from $1k to $7k per month in anticipation of D&O defense against Washington suit

<u>2022</u>
13% revenue growth based on continued growth in commerce sales, more self service, hunting and retail.
Flat programmatic expense
2% growth in publisher costs
5% growth in ad ops (costs more to deliver higher revenue)
5% growth in email expense due to more sends and growing list
Increased Legal from $1k per month to $5k per month
SHOT Show added back
T&E growth
2% overall Expense growth (line 81)

<u>2023</u>
10% Growth in revenue
Flat programmatic expense
2% growth in publisher expenses
5% growth in email expense due to more sends and growing list
Increased Legal from $1k per month to $5k per month
2% overall Expense growth (salaries, T&E, etc)
5% Growth in ad ops expense

<u>2024</u>
9% growth in revenue
Programmatic expenses flat
2% growth in publisher costs
5% Ad ops growth due to increased revenue
2% growth in COGS (Line 34) commissions, etc
Increased Legal from $1k to $5k per month
2% Increase in Expenses

<u>2025</u>
10% revenue growth
2% publisher expense growth
Flat programmatic expense
1% increase in overall COGS
Increased legal from $1k per mo to $5k
3% Overall expense growth

# EXHIBIT B

Financial Statements Issued Before Bankruptcy

MEDIA LODGE INC.
Media Lodge Inc
For the Ten Months Ending October 31, 2020

|  |  | October |
|---|---|---|
| **ASSETS** | | |
| | **Current Assets** | |
| 10000 | Cash - B of A Operating | ($23,180.43) |
| | **Total Cash** | **(23,180.43)** |
| | **Total Cash and Cash Equivalents** | **(23,180.43)** |
| | **Accounts Receivable** | |
| 12000 | Accounts Receivable | 283,907.43 |
| 12500 | Reserve for Bad Debts | (76,426.11) |
| | **Total Accounts Receivable** | **207,481.32** |
| | **Other Current Assets** | |
| 14000 | Prepaid Assets | 50,234.96 |
| 14200 | Other Current Assets | 64,317.20 |
| | **Total Other Current Assets** | **114,552.16** |
| | **Fixed Assets** | |
| 15500 | Website Design | 59,990.00 |
| 15550 | Advanced Retail Segmentation | 91,066.67 |
| | **Total Fixed Assets** | **151,056.67** |
| 16500 | Accum Deprec - Website Design | (30,884.10) |
| 16550 | Accum Deprec - Advanced Retail Segmentation | (33,003.20) |
| | **Total Accum Depreciation** | **(63,887.30)** |
| | **Net Fixed Assets** | **87,169.37** |
| 17100 | GunUp Website and App | 1,002,196.77 |
| | **Total Intangible Assets** | **1,002,196.77** |
| 17110 | Accum Amort - GunUp | (559,559.96) |
| | **Total Accum Amort** | **(559,559.96)** |
| | **Net Intangible Assets** | **442,636.81** |
| | **Other Assets** | |
| 19700 | Security Deposits | 13,638.73 |
| | **Total Other Assets** | **13,638.73** |
| | **Total Assets** | **842,297.96** |
| | **LIABILITIES & EQUITY** | |
| | **Current Liabilities** | |
| | **Accounts Payable** | |
| 20000 | Accounts Payable | 341,469.38 |
| | **Total Accounts Payable** | **341,469.38** |
| | **Accrued Expenses** | |
| 20500 | Accrued Expenses | 2,776,487.45 |
| 23000 | Bonus Accrual | 20,833.30 |
| | **Total Accrued Expenses** | **2,797,320.75** |

MEDIA LODGE INC.
Media Lodge Inc
For the Ten Months Ending October 31, 2020

|  |  | October |
|---|---|---:|
|  | **ASSETS** |  |
|  | **Due to Parent** | **9,088,891.47** |
|  | **Total Due to Parent** | **9,088,891.47** |
|  |  |  |
|  | **Oher Current Liabilities** |  |
| 24010 | Deferred Rent | 64.12 |
|  | **Total Oher Current Liabilities** | **64.12** |
|  |  |  |
|  | **Long Term Liabilities** |  |
|  | **Total Long Term Liabilities** |  |
|  |  |  |
|  | **Equity** |  |
| 31000 | Capital Stock | 1,000.00 |
| 32000 | Retained Earnings | (9,022,012.88) |
| 33000 | Shareholder Dividends | 441,575.45 |
| 34000 | Minority Interest | (208,104.70) |
| 40000:99999 | Net Income | (2,597,905.63) |
|  | **Total Equity** | **(11,385,447.76)** |
|  |  |  |
|  | **Total Liabilities & Equity** | **842,297.96** |

**MEDIA LODGE INC.**
Media Lodge Inc
For the Nine Months Ending September 30, 2020

|  |  | September |
|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | |
| | | |
| | **Income** | |
| 41010 | Banner Ads - Programmatic Ads | |
| 41800 | Banner Exchange | $240,075 |
| | **Total Income** | **$240,075** |
| | | |
| | **Cost of Goods Sold** | |
| 50000 | Hosting / Data Center | $106 |
| | **Production Costs** | **$106** |
| | | |
| 51000 | Commission | $33,388 |
| 51010 | Advertising Consult - Programmatic | $991 |
| 51020 | Publisher Costs (Bloggers) | $55,121 |
| 51040 | Banner Exchange | |
| 51060 | Advertising Expense | |
| 51070 | Ad Creation/Graphic Desogn (For Advertisers) | $3,200 |
| 51410 | Advertising Joint Venture | $11,158 |
| 51430 | Ad Operations | $17,631 |
| 56110 | Video Production | $9,133 |
| 56120 | Video Production Get Zone | $8,400 |
| 56150 | Billable Expenses | $805 |
| 60120 | Credit Card fees | |
| 60130 | Gateway Fees | |
| 56200 | Advance Retail Segmentation Expense | $44,148 |
| | | |
| | **Selling Costs** | **$183,975** |
| | **Total Cost of Goods Sold** | **$184,081** |
| | **Gross Profit** | **$55,994** |
| | | |
| | | |
| | **Expenses** | |
| | **Administrative Expense** | |
| 61100 | Legal Fees | $19,235 |
| | **Total Administrative Expense** | **$19,235** |
| | | |
| | **Expense** | |
| 60100 | Bank Service Charges | $257 |
| 60140 | Wire Fees | |
| 60240 | Software Subscriptions & Licenses | $2,907 |
| 60250 | Trade Organizations | |
| 60340 | Office Supplies | |
| 60350 | Postage and Delivery | |
| 60380 | Telephone | $300 |
| 60381 | Internet (Wi-Fi or Wired) | $144 |
| 60390 | Miscellaneous | |
| 60610 | Office Equipment | |
| 61410 | Ad Misc. | |
| 61420 | Ad Production | $1,300 |
| 61500 | Press Releases | $292 |
| 61750 | Technology | |
| 62000 | Rent | $867 |
| 62400 | Utilities | |
| 62450 | Operating Expenses for Buildings (part of Ren | $719 |
| 63000 | Other Taxes | |
| 64040 | NRA | |
| 64070 | SHOT Show | |
| 64350 | Ground Transportation | |

MEDIA LODGE INC.
Media Lodge Inc
For the Nine Months Ending September 30, 2020

| | | September |
|---|---|---|
| | **ORDINARY INCOME / EXPENSE** | |
| 64500 | Meals | |
| 66500 | Depreciation - Website Design | $1,000 |
| 66550 | Depreciation - Adv Ret Seg | $27 |
| 67010 | Amortization of GunUp | $8,352 |
| 71000 | Wages | $82,469 |
| 71010 | Contract Labor | $4,626 |
| 71100 | Bonuses, Other Wages | $27,083 |
| 71200 | Benefits | $1,016 |
| 71210 | Employee Profit Sharing | $4,226 |
| 71300 | Federal Unemployment tax | |
| 71310 | State Unemployment tax | $368 |
| 71320 | Medicare tax | $2,042 |
| 71330 | Workers Comp | $592 |
| 71340 | Social Security tax | $2,965 |
| 71400 | Administration Fee | $675 |
| 99999 | Suspense Accounts | |
| | **Total Expense** | **$142,226** |
| | | |
| | **Other (Income) Expense** | |
| 90000 | Other Expense | |
| | **Total Other (Income) Expense** | |
| | **Net Income (Loss)** | **($105,467)** |

# **EXHIBIT C**
GunUp Settlement Agreement

## SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This Settlement Agreement and Mutual Releases (the "Agreement") is entered into by and among GunUp Holding Inc. d/b/a GunUp, Inc. ("GunUp"), Daniel M. Hall, Media Lodge, Inc. ("Media Lodge"), Gemini Direct, LLC ("Gemini"), Steve Urvan, Jeffrey Siegel, Kevin O'Connell and Susan Lokey (collectively, the "Parties"). GunUp and Mr. Hall are referred to herein as the "GunUp Parties." Media Lodge, Gemini, Mr. Urvan, Mr. Siegel, Mr. O'Connell and Ms. Lokey are referred to herein as the "Media Lodge Parties."

This Agreement will be effective on the date it has been approved by the Court pursuant to Federal Rule of Bankruptcy Procedure 9019.

## RECITALS

A.      The following legal proceedings between one or more of the GunUp Parties on the one hand, and one or more of the Media Lodge Parties on the other, are currently pending:

- *GunUp, Inc. v. Media Lodge, Inc., et al.*, King County, Washington Superior Court Cause No. 16-2-15005-5 SEA, on appeal before Division I of the Washington Court of Appeals under Case No. 80766-8 (the "Washington Lawsuit"). GunUp obtained a judgment in the Washington Lawsuit against Media Lodge and Mr. Siegel in the principal amount of $2,478,990.77 (the "Judgment").

- *GunUp, Inc. v. Urvan*, United States District Court for the Northern District of Georgia Cause No. 1:20-cv-02340-LMM (the "Urvan Lawsuit").

- *GunUp, Inc. v. O'Connell*, Orange County, California Superior Court Cause No. 30-2019-01117939-CU-MC-CJC (the "O'Connell Lawsuit").

- *GunUp, Inc. v. Media Lodge, Inc., et al.*, Fairfield, Connecticut Superior Court Cause No. FBT-CV20-4056725-S (the Connecticut Enforcement Action").

- *GunUp, Inc. v. Media Lodge, Inc.*, Cobb County, Georgia Superior Court Cause No. 20-G-1509 (the Georgia Enforcement Action").

- *In re Media Lodge, Inc.*, United States Bankruptcy Court for the District of Delaware Cause No. 20-12969-JTD (the "Bankruptcy Proceeding"). GunUp filed a proof of claim in the Bankruptcy Proceeding in the amount of $2,673,883.59 as of January 11, 2021 (the "GunUp Claim").

- *Media Lodge, Inc. v. GunUp Holding, Inc. d/b/a GunUp, Inc.*, United States Bankruptcy Court for the District of Delaware Cause No. 21-50246-JTD (the "Adversary Proceeding").

1

B.      Other legal proceedings between one or more of the GunUp Parties on the one hand, and one or more of the Media Lodge Parties on the other, were previously dismissed. These include, but are not limited to, *Media Lodge, Inc., et al. v. GunUp, Inc., et al.*, United States District Court for the District of Delaware Cause No. 1:20-cv-00231-MN (the "Lanham Act Lawsuit").

C.      On May 3, 2021, AMMO, Inc. ("AMMO") purchased the GunBroker.com businesses, including several subsidiaries of Gemini Direct Investments, LLC.

D.      The Parties desire fully and finally to resolve the above-referenced matters, and to settle and mutually release any and all claims between and among the GunUp Parties, the Media Lodge Parties, and AMMO and its subsidiaries.

NOW, THEREFORE, in consideration of the mutual promises contained herein, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

## AGREEMENT

1.      **Settlement Amount.**  Media Lodge and Mr. Siegel will pay GunUp an aggregate amount of $1,000,000 (the "Settlement Payment").  Media Lodge will provide $950,000 of this amount, and Mr. Siegel will provide $50,000.  The Settlement Payment will be paid to GunUp within fifteen days after the effective date of a plan of reorganization for Media Lodge in the Bankruptcy Proceeding.  The payment will be made by ACH or wire transfer to the Savitt Bruce & Willey LLP Trust Account.

2.      **Plan of Reorganization.**  Assuming the court in the Bankruptcy Proceeding approves this Agreement, GunUp will not oppose or object to Media Lodge's proposed plan of reorganization, provided the proposed plan substantially parallels the form of proposed plan attached hereto as **Exhibit A**.

3.      **Releases.**

a.      In exchange for the consideration set forth in paragraphs 1 and 4, and the releases set forth in paragraph 3(b), and the AMMO Consent attached hereto as **Exhibit B**, each of the GunUp Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors) releases and forever discharges each of the Media Lodge Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors) and AMMO (and its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors), to the maximum extent permitted by law and unless barred by law, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, attorneys' fees or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the GunUp Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, under the laws of the United States, any of its states, or any other country.

b.     In exchange for the consideration set forth in paragraphs 2 and 4, and the releases set forth in paragraph 3(a), each of the Media Lodge Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors) and AMMO (and its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors, pursuant to the AMMO Consent) releases and forever discharges each of the GunUp Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, assigns, officers and directors), to the maximum extent permitted by law and unless barred by law, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, attorneys' fees or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the GunUp Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, under the laws of the United States, any of its states, or any other country (including without limitation claims under the federal Lanham Act and claims asserted in the Lanham Act Lawsuit).

c.     The releases set forth in this paragraph 3 are contingent on timely remittance of the Settlement Payment in accordance with paragraph 1, and on GunUp meeting its obligations under paragraph 2.  Should the Settlement Payment not be timely made, or should GunUp fail to meet its obligations under paragraph 2, the releases set forth in paragraph 3 will be of no force or effect, and the Settlement Payment shall be refunded, if previously made.

4.     **Dismissal of Actions.**  Within fifteen days after GunUp's receipt of the Settlement Payment, Media Lodge will dismiss its appeal in the Washington Lawsuit, GunUp will dismiss the Urvan Lawsuit and the O'Connell Lawsuit with prejudice, and Media Lodge and GunUp will dismiss the Adversary Proceeding with prejudice.  In addition, after GunUp receives the Settlement Payment:

a.     GunUp will take no further action in any court to enforce the Judgment, including, without limitation, in the Connecticut Enforcement Action or the Georgia Enforcement Action;

b.     GunUp will cooperate with counsel for Media Lodge and Mr. Siegel in the Connecticut Enforcement Action to give the court prompt notice that a settlement has been reached and the pending motion to stay execution of the judgment is moot and GunUp will withdraw the Connecticut Enforcement Action within fifteen days after GunUp's receipt of the Settlement Payment;

c.     GunUp will withdraw or dismiss the Georgia Enforcement Action with prejudice within fifteen days after GunUp's receipt of the Settlement Payment;

d.     GunUp will cause the funds garnished from Media Lodge's bank account in the Georgia Enforcement Action to be released to Media Lodge; and

3

    e.    IA Tech, LLC and Ms. Lokey will not enforce the award of attorneys' fees they received after their dismissal from the Washington Lawsuit.

    5.    **Attorneys' fees.**  The Parties will be responsible for their own attorneys' fees and costs, including attorneys' fees and costs incurred in connection with any of the actions described in paragraph 4 above.  However, in any action or proceeding to enforce this Agreement, the substantially prevailing Party shall be entitled to recover its, his or her reasonable costs and expenses (including but not limited to attorneys' fees, expert fees and other litigation expenses) incurred in such action or proceeding.

    6.    **Nondisparagement.**  The Parties will not disparage each other in any manner likely to be harmful to their business, business reputation or personal reputation; provided that the Parties may respond accurately and fully to questions, inquiries and requests for information when required by legal process.

    7.    **Miscellaneous Provisions.**

    a.    In entering into this Agreement, the Parties acknowledge that they have not relied on any representation, warranty, promise or condition not specifically and expressly set forth in this document.

    b.    This Agreement constitutes the entire agreement between the Parties and supersedes, substitutes for, and replaces all prior negotiations, agreements, and understandings.

    c.    The Parties acknowledge, represent, and agree that they have read this Agreement, have been represented by counsel in negotiating and entering into this Agreement, and fully understand and agree to its terms.

    d.    Each individual signing in a representative capacity represents and warrants that he or she has the authority to sign for, and to bind, the represented entity for which he or she is signing.

    e.    The Parties acknowledge and agree that each Party has participated in the drafting and negotiation of this Agreement, and that each provision was jointly drafted by all Parties.  The Parties intend for this Agreement to be construed and interpreted neutrally, in accordance with the plain meaning of its language, and not presumptively construed against any actual or purported drafter of specific language.

    f.    The Parties acknowledge and agree that the language of this Agreement will be construed as a whole according to its fair meaning and not strictly for or against any of the Parties.  The execution of this Agreement affects the settlement of claims that are disputed, contested, or denied.  Each Party understands and agrees that nothing herein is intended, nor will be deemed nor construed, to be an admission of liability in any respect.

g.      This Agreement will be binding upon and inure to the benefit of the Parties and their legal representatives, heirs, beneficiaries, administrators, executors, successors, and assigns.

h.      This Agreement may not be changed, amended, modified, terminated, waived, or discharged except by a subsequent written agreement signed by all the Parties hereto.

i.      This Agreement may be executed in any number of counterparts, all of which together will comprise a single agreement.  Copies, scans, or facsimiles of original signature pages will be as effective as originals.

j.      As the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, the Parties elect and consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") or the United States District Court for the District of Delaware in the event the Bankruptcy Court declines to exercise jurisdiction.  This Agreement will be construed in accordance with the laws of the State of Washington, without regard to its choice of law rules or provisions.


[Remainder of page left blank.]

5

**GunUp Holding Inc.**

By: _Dal M Hall_

Its: President

Date: 08/30/21

**Daniel M. Hall**

_Dal M Hall_

Date: 08/30/21

**Media Lodge, Inc.**

By: _(signature)_

Its: CEO

Date: 8/31/21

**Gemini Direct, LLC**

By: _____

Its: _____

Date: _____

**Steve Urvan**

_____

Date: _____

**Jeffrey Siegel**

_(signature)_

Date: 8/31/21

**Kevin O'Connell**

_____

Date: _____

**Susan Lokey**

_____

Date: _____

6

**GunUp Holding Inc.**

By: _Dal M Hall_

Its: President

Date: 08/30/21

**Daniel M. Hall**

_Dal M Hall_

Date: 08/30/21

**Media Lodge, Inc.**

By: _____

Its: _____

Date: _____

**Gemini Direct, LLC**

By: _____

Its: _____

Date: _____

**Steve Urvan**

_____

Date: _____

**Jeffrey Siegel**

_____

Date: _____

**Kevin O'Connell**

_Kevn O'Canll_

Date: 8/31/21

**Susan Lokey**

_____

Date: _____

6

**GunUp Holding Inc.**

By: _____

Its: _____

Date: _____

**Daniel M. Hall**

_____

Date: _____

**Media Lodge, Inc.**

By: _____

Its: _____

Date: _____

**Gemini Direct, LLC**

By: _____

Its: _____CEO_____

Date: _____9/2/2021_____

**Steve Urvan**

_____

Date: _____9/2/2021_____

**Jeffrey Siegel**

_____

Date: _____

**Kevin O'Connell**

_____

Date: _____

**Susan Lokey**

_____

Date: _____

**GunUp Holding Inc.**

By: _Dal M Hall_

Its: President

Date: 08/30/21

**Daniel M. Hall**

_Dal M Hall_

Date: 08/30/21

**Media Lodge, Inc.**

By: _____

Its: _____

Date: _____

**Gemini Direct, LLC**

By: _____

Its: _____

Date: _____

**Steve Urvan**

_____

Date: _____

**Jeffrey Siegel**

_____

Date: _____

**Kevin O'Connell**

_____

Date: _____

**Susan Lokey**

_____

Date: 9/3/2021

6

# **<u>EXHIBIT D</u>**

Contracts to be Assumed

| Vendor Name | Cure | Amount |
|---|---|---|
| i156 LLC (USA CARRY) | $ | 2,840.03 |
| Ryan Companies US Inc. | $ | 532.92 |
| Catch All Media | $ | 350.00 |
| Christopher Serrano (IMFDB) | $ | 25,173.79 |
| Armory Forums LLC | $ | 19,351.90 |
| Auction Armory | $ | 33,008.71 |
| Don Porter (Sootch) | $ | 5,000.00 |
| Concealed Nation, LLC | $ | 7,027.34 |
| Registered Agent Solutions Inc. | $ | 104.00 |
| 50 Campfires, LLC | $ | 11,778.84 |
| Kattan Law | | $9,931 |
| Listrack | $ | 115,475.34 |
| Yourbow | $ | 24,380.00 |

# <u>EXHIBIT E</u>

Liquidation Analysis

EXHIBIT D
**Liquidation Analysis**
[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]

*Debtor's Estimated Liquidation Value of Assets*

| Asset | Scheduled Value |
|---|---|
| Operating Account | $          23,489 |
| Deposits and Prepayments | $                  - |
| Accounts Receivable | $                  - |
| Intangibles | $                  - |
| Misc. due from related parties | $              473 |
| | |
| | |
| **TOTAL** | **$          23,962** |

**Less:**
Secured creditors' recoveries                                        **$_____**

**Less:**
Chapter 7 trustee fees and expenses                        **$25,000.00**
**(Trustee)**

**(Auction)**                                                                        **$_____**
**Less:**
Chapter 11 Administrative Expenses                        **$50,000.00 (GSBB)**
                                                                                      **$10,000.00**
**(Trustee)**
**Less:**
Priority claims, excluding Administrative Expense claims    **$_____  (IRS)**
                                                                                      **$_____  (other)**

(1) Balance for unsecured claims                                **$**

(2) Total dollar amount of unsecured claims                $

*Percentage of Claims Which Unsecured Creditors Would*
*Receive or Retain in a Chapter 7 Liquidation:*                *0%*

*Percentage of Claims Which Unsecured Creditors Will*
*Receive or Retain under the Plan:*                            **100%**

# **EXHIBIT F**
Most Recent Post-Petition Operating Report

Fill in this information to identify the case:

Debtor Name __Media Lodge Inc.__

United States Bankruptcy Court for the: _____ District of _____

Case number: __20-12969-JTD__

☐ Check if this is an
amended filing

## Official Form 425C

### Monthly Operating Report for Small Business Under Chapter 11                        12/17

Month: __July__                                                        Date report filed: __08/31/2021__
                                                                                    MM / DD / YYYY

Line of business: __Digital Advertising__                              NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:  _MEDIA LODGE_

Original signature of responsible party  _[signature]_

Printed name of responsible party  _JEFF SIEGEL_

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|---|---|---|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | |
| 1. | Did the business operate during the entire reporting period? | ☒ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☒ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☒ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☒ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☒ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☒ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☒ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☒ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☒ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☒ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☒ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☒ | ☐ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☒ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☒ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☒ | ☐ | ☐ |
| 16. | Has anyone made an investment in your business? | | | |

| Debtor Name | Media Lodge Inc. | Case number | 20-12969-JTD |
|---|---|---|---|

17. Have you paid any bills you owed before you filed bankruptcy?  ☐  ☒  ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☐  ☒  ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 4,606.64

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 381,721.20

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ 349,275.44

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ 32,445.74

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

= $ 37,052.38

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

*(Exhibit E)*

$ 192,582.15

| Debtor Name | Media Lodge Inc. | Case number | 20-12969-JTD |
|---|---|---|---|

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                 $ 161,321.97

  (Exhibit F)

## 5. Employees

26. What was the number of employees when the case was filed?                       9

27. What is the number of employees as of the date of this monthly report?          9

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?                       $ 0

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?         $ 17,629

30. How much have you paid this month in other professional fees?                                                 $ 0

31. How much have you paid in total other professional fees since filing the case?                                $ 5,469.50

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A*<br>**Projected**<br>Copy lines 35-37 from the previous month's report. | − | *Column B*<br>**Actual**<br>Copy lines 20-22 of this report. | = | *Column C*<br>**Difference**<br>Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 272,455 | − | $ 381,721 | = | $ -109,266 |
| 33. **Cash disbursements** | $ 317,277 | − | $ 349,275 | = | $ -31,998 |
| 34. **Net cash flow** | $ -44,822 | − | $ 32,445 | = | $ -77,267 |

35. Total projected cash receipts for the next month:                       $ 217,964

36. Total projected cash disbursements for the next month:                 - $ 256,392

37. Total projected net cash flow for the next month:                      = $ -38,428

Debtor Name    Media Lodge Inc.                                          Case number    20-12969-JTD

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐  39.  Bank reconciliation reports for each account.

☐  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41.  Budget, projection, or forecast reports.

☐  42.  Project, job costing, or work-in-progress reports.

Print          Save As...                                               Reset

Case 20-12969-JTD    Doc 197-6    Filed 08/31/21    Page 56 of 120

In re    Media Lodge Inc.                                     Case No.    20-12969-JTD
         Debtor                                              Reporting Period:_____

**SCHEDULE OF PROFESSIONAL FEES AND EXPENSES PAID**
This schedule is to include all retained professional payments from case inception to current month.

| Payee | Period Covered | Amount Approved | Payor | Check Number | Date | Amount Paid Fees | Expenses | Year-To-Date Fees | Expenses |
|-------|----------------|-----------------|-------|--------------|------|------------------|----------|-------------------|----------|
| Culhane Meadows | 11/16-1/31 | 2,119.50 | Media Lodge Inc. | 1266 | 12/23/20 | 2,119.50 | 0.00 | 2,119.50 | 0 |
| Culhane Meadows | Feb 2021 | 3,350.00 | Media Lodge Inc. | 1341 | 2/12/2021 | 3,350.00 | 0.00 | 5,469.50 | 0 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

FORM MOR-1b
(04/07)

| Consolidated - Pre/Post Petition | Month | |
|---|---|---|
| | Jul-21 | |
| **Assets** | | |
| Cash (Unrestricted) | 37,052 | |
| Cash (Restricted) | - | |
| Accounts Receivable (Net) | 316,946 | |
| Inventory | - | |
| Notes Receivable | - | |
| Prepaid Expenses | 178,378 | |
| Other (Attach List) | 23,082 | Utility/Rent Security Deposits |
| Total Current Assets | 555,459 | |
| **Property, Plant & Equipment** | | |
| Real Property & Improvements | - | |
| Machiner & Equipment | - | |
| Furniture, Fixtures & Office Equipment | - | |
| Vehicles | - | |
| Intangibles | 1,133,076 | |
| Less: Accumulated Depreciation & Amortization | (623,447) | |
| Total Propert, Plant & Equipment | 509,629 | |
| Due from Affiliates & Insiders | - | |
| Other (Attach List) | - | |
| Total Assets | 1,065,088 | |
| **Liabilities Not Subject to Compromise (Post Petition Liabilities)** | | |
| Accounts Payable | 144,080 | |
| Accrued Expense | - | |
| Notes Payable | - | |
| Professional Fees - Subchapter V Trustee Fees Accrued | 48,502 | |
| Secured Debt | 90,023 | |
| Due to Affiliates & Insiders | - | |
| Other (Attach List) | - | Deferred Rent |
| Total Postpetition Liabilities | 282,605 | |
| **Liabilities Subject to Compromise (Pre-Petition Liabilities)** | | |
| Secured Debt - Per Plan | 2,000,000 | |
| Priority Debt - Per Plan | - | |
| Unsecured Debt - Per Plan | 7,602,648 | |
| Other (Attach List) - Per Plan | 2,478,991 | GunUp Judgement |
| Total Pre-Petition Liabilities | 12,081,639 | |
| **Equity** | | |
| Common Stock | 1,000 | |
| Retained Earning (Deficit) | (11,300,157) | |
| Total Equity (Deficit) | (11,299,157) | |
| Total Liabilities & Owners' Equity | 1,065,088 | |

MEDIA LODGE INC - POST

Post Media Lodge

For the Seven Months Ending Saturday, July 31, 2021

| | | July |
|---|---|---|
| **ASSETS** | | |
| | | |
| **Current Assets** | | |
| 10020 | Cash - PNC Operating | $37,052.38 |
| | **Total Cash** | **37,052.38** |
| | | |
| | **Total Cash and Cash Equivalents** | **37,052.38** |
| | | |
| **Accounts Receivable** | | |
| 12000 | Accounts Receivable | 161,321.97 |
| | **Total Accounts Receivable** | **161,321.97** |
| | | |
| **Other Current Assets** | | |
| 12800 | Reimbursable Expenses (employee) | 9,443.51 |
| 14000 | Prepaid Assets | 9,899.92 |
| | **Total Other Current Assets** | **17,880.21** |
| | | |
| | **Total Assets** | **217,717.78** |
| | | |
| **LIABILITIES & EQUITY** | | |
| | | |
| **Current Liabilities** | | |
| | | |
| **Accounts Payable** | | |
| 20000 | Accounts Payable | 144,080.40 |
| | **Total Accounts Payable** | **144,080.40** |
| | | |
| **Accrued Expenses** | | |
| 20500 | Accrued Expenses | 48,501.75 |
| | **Total Accrued Expenses** | **48,501.75** |
| | | |
| **Long Term Liabilities** | | |
| 25800 | DIP Financing | 90,023.14 |
| | **Total Long Term Liabilities** | **90,023.14** |
| | | |
| **Equity** | | |
| 32000 | Retained Earnings | 171,541.11 |
| 40000:99999 | Net Income | (236,428.62) |
| | **Total Equity** | **(64,887.51)** |
| | | |
| | **Total Liabilities & Equity** | **217,717.78** |

MEDIA LODGE INC - POST

Post Media Lodge

For the Seven Months Ending Saturday, July 31, 2021

| | | July |
|---|---|---|
| **ORDINARY INCOME / EXPENSE** | | |
| | | |
| **Income** | | |
| 41000 | Banner Ads | $127,047.16 |
| 41010 | Banner Ads - Programmatic Ads | 589.00 |
| 41800 | Banner Exchange | 133,728.82 |
| | **Total Income** | **261,364.98** |
| | | |
| **Cost of Goods Sold** | | |
| 50000 | Hosting / Data Center | 468.25 |
| 56070 | Contests & Promotions | 26.00 |
| | **Production Costs** | **494.25** |
| | | |
| 51000 | Commission | 27,031.68 |
| 51010 | Advertising Consult - Programmatic | 410.19 |
| 51020 | Publisher Costs (Bloggers) | 45,769.10 |
| 51060 | Advertising Expense | 17,569.50 |
| 51070 | Ad Creation/Graphic Desogn (For Advertisers | 6,766.57 |
| 51430 | Ad Operations | 22,898.30 |
| 56110 | Video Production | |
| 56120 | Video Production Get Zone | 450.00 |
| 56150 | Billable Expenses | 446.84 |
| 56160 | Social Media Advertising | |
| 56200 | Advance Retail Segmentation Expense | 49,606.73 |
| | | |
| | **Selling Costs** | **170,948.91** |
| | **Total Cost of Goods Sold** | **171,443.16** |
| | **Gross Profit** | **89,921.82** |
| | | |
| **Expenses** | | |
| **Administrative Expense** | | |
| 61100 | Legal Fees | 11,667.00 |
| | **Total Administrative Expense** | **11,667.00** |
| | | |
| **Expense** | | |
| 60100 | Bank Service Charges | 163.25 |
| 60240 | Software Subscriptions & Licenses | 1,577.86 |
| 60330 | Licenses and Permits | |
| 60340 | Office Supplies | |
| 60350 | Postage and Delivery | |
| 60380 | Telephone | 150.00 |
| 60381 | Internet (Wi-Fi or Wired) | 139.95 |
| 60390 | Miscellaneous | |
| 61420 | Ad Production | |
| 62000 | Rent | (2,128.54) |
| 62450 | Operating Expenses for Buildings (part of Rent) | |
| 63000 | Other Taxes | |
| 64200 | Conference Registration | |
| 64300 | Airfare | |
| 64350 | Ground Transportation | |
| 64400 | Lodging | |
| 64500 | Meals | |
| 71000 | Wages | 84,617.86 |
| 71010 | Contract Labor | 4,364.78 |
| 71100 | Bonuses, Other Wages | 10,000.00 |
| 71200 | Benefits | 906.01 |
| 71210 | Employee Profit Sharing | 3,524.00 |
| 71300 | Federal Unemployment tax | |
| 71310 | State Unemployment tax | 367.70 |
| 71320 | Medicare tax | 1,763.92 |
| 71330 | Workers Comp | 512.72 |
| 71340 | Social Security tax | 5,447.04 |
| 71400 | Administration Fee | 675.00 |
| | **Total Expense** | **112,081.55** |
| | | |
| **Other (Income) Expense** | | |
| | **Total Other (Income) Expense** | |
| | **Net Income (Loss)** | **(33,826.73)** |

|                    | Column A<br>Projected | Column B<br>Actual | Column C<br>Difference |
|--------------------|----------------------:|-------------------:|-----------------------:|
| Cash Receipts      | $ 272,455.00          | $ 381,721.18       | $ (109,266.18)         |
| Cash Dispursements | $ 317,277.00          | $ 349,275.44       | $ (31,998.44)          |
| Net Cash Flow      | $ (44,822.00)         | $ 32,445.74        | $ (77,267.74)          |

# **EXHIBIT B**

Questionnaire:

12.    Have you sold or transferred any assets or provided services to anyone related to the DIP in any way?
            DIP serves as advertising representative to GunBroker.com (related party under common
            control) via an "Advertising Representation Agreement" dated May 3, 2019.

15.    Have you borrowed money from anyone or has anyone made any payments on your behalf?
            DIP borrowed $90,023 from its parent Gemini Direct Investments via the
            approved "DIP Loan" during November 2020 to pay a critical vendor, YourBow, and
            to fund payroll for the period 11/15-11/30.

# **<u>EXHIBIT C</u>**

Cash Receipts:

| | | |
|---|---|---|
| 7/13/2021 | $ | 193,821.48 |
| 7/20/2021 | $ | 2,128.54 |
| 7/22/2021 | $ | 79,083.12 |
| 7/27/2021 | $ | 61,035.20 |
| 7/30/2021 | $ | 45,652.84 |
| | $ | 381,721.18 |

# EXHIBIT D

Case 20-12969-JTD    Doc 197-6    Filed 08/31/21    Page 145 of 190

| Journal Entry | TRX Date | Account Number | Account Description | Credit Amount | Debit Amount | Originating Master Name | Reference | Description |
|---|---|---|---|---|---|---|---|---|
| 17308 | 7/1/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 92,946.38 | $ - | LISTRAK | Computer Checks | Cash |
| 17247 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 99.95 | $ - | COMCAST | Computer Checks | Cash |
| 17248 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,090.00 | $ - | Clifton Reinwand | Computer Checks | Cash |
| 17249 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 7,500.00 | $ - | Lifestyle HG Inc. | Computer Checks | Cash |
| 17250 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 1,186.65 | $ - | Paige Bennett | Computer Checks | Cash |
| 17251 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 40.00 | $ - | SCOTT KENNETH FERGUSON | Computer Checks | Cash |
| 17252 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 623.13 | $ - | Thomas Merriott | Computer Checks | Cash |
| 17253 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 12,317.00 | $ - | YOURBOW | Computer Checks | Cash |
| 17263 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 560.00 | $ - | CRISTINA EBBERMAN | Computer Checks | Cash |
| 17264 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 5,000.00 | $ - | GIANAKAS MEDIA, INC | Computer Checks | Cash |
| 17265 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 150.00 | $ - | HIGH CALIBER HISTORY LLC | Computer Checks | Cash |
| 17266 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 51,981.96 | $ - | LISTRAK | Computer Checks | Cash |
| 17267 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 26.33 | $ - | SCOTT KENNETH FERGUSON | Computer Checks | Cash |
| 17255 | 7/15/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 78,517.85 | $ - | Adams Keegan | Computer Checks | Cash |
| 17280 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 12,223.76 | $ - | ARMORY FORUMS LLC | Computer Checks | Cash |
| 17281 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 14,038.76 | $ - | AUCTION ARMORY | Computer Checks | Cash |
| 17282 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 4,167.99 | $ - | CHRISTOPHER SERRANO | Computer Checks | Cash |
| 17283 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 453.04 | $ - | Eric Cilli | Computer Checks | Cash |
| 17284 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,500.00 | $ - | GIANAKAS MEDIA, INC | Computer Checks | Cash |
| 17285 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 11,766.90 | $ - | i156 LLC (USA CARRY) | Computer Checks | Cash |
| 17286 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 400.00 | $ - | KAREN LYNN PIKULA | Computer Checks | Cash |
| 17287 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,600.00 | $ - | Lifestyle HG Inc. | Computer Checks | Cash |
| 17288 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 616.57 | $ - | Tundra Entertainment | Computer Checks | Cash |
| 17289 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 8,500.00 | $ - | CHRISTOPHER SERRANO | Computer Checks | Cash |
| 17290 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 3,750.00 | $ - | DON PORTER | Computer Checks | Cash |
| 17301 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,306.95 | $ - | CLAUDIA BIRCU | Computer Checks | Cash |
| 17302 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 952.00 | $ - | CRISTINA EBBERMAN | Computer Checks | Cash |
| 17303 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,999.19 | $ - | GAT Marketing, LLC | Computer Checks | Cash |
| 17304 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 100.00 | $ - | KATHERINE POWERS | Computer Checks | Cash |
| 17305 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 14.33 | $ - | SCOTT KENNETH FERGUSON | Computer Checks | Cash |
| 17293 | 7/30/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 56,328.08 | $ - | Adams Keegan | Computer Checks | Cash |
| 17396 | 7/31/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 163.25 | $ - | Reconciliation Adjustment | Reconcile Adjustments Entry | Reconcile Bank Statement |
| 17397 | 7/31/2021 | 150-10020-000-000 | Cash - PNC Operating | $ - | $ 700.00 | 2A TRUTH HOLDING LLC | Void Historical Trx - Check 1301 1/21/2021 | Cash |
| 17398 | 7/31/2021 | 150-10020-000-000 | Cash - PNC Operating | $ - | $ 26,944.63 | LISTRAK | Void Historical Trx - Check 1338 2/3/2021 | Cash |

$ 349,275.44

# EXHIBIT E

Case 20-12969-JTD    Doc 197-6    Filed 08/10/21    Page 16 of 20

Accrued Expense:

| | | | | |
|---|---|---|---|---|
| Payable to Sub V Trustee | July | | $48,501.75 | $48,501.75 |
| Accrue Listrak | July | $ | - | |

| | | | | | | |
|---|---|---|---|---|---|---|
| System: | HISTORICAL AGED TRIAL BALANCE | 8/31/2021 | | 12:46:55 PM Page: | 1 User Date: | 8/31/2021 User ID: Susan |

Media Lodge Inc.- Post
Payables Management

| | | | | | |
|---|---|---|---|---|---|
| Ranges: | Vendor ID: | First - Last | User-Defined 1: | First - Last | |
| Class ID: | First - Last | Document Date: | First - 7/31/2021 | Payment Priority: First - Last | Document Number: First - Last |
| Vendor Name: | First - Last | | | | |
| Exclude: | Zero Balance, No Activity, Fully Paid Documents, Unpost | Print Option: | SUMMARY | Sorted By: | Vendor ID |
| Aged By: | Document Date | Due Date | | Aging Date: | 7/31/2021 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Vendor ID: | ARDEN0001 | Name: | The Ardent Group | | Class ID: | MEDIALODGE | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | ($2,606.00) | ($2,606.00) | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | ARMOR0001 | Name: | ARMORY FORUMS LLC | | Class ID: | REV SHARE | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | $13,326.92 | $13,326.92 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | AUCT0001 | Name: | AUCTION ARMORY | | Class ID: | BLOGGER | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | $6,210.69 | $6,210.69 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | BRAND0001 | Name: | BRAND AVALANCHE MEDIA, LLC (Travis Horto | | Class ID: | MEDIALODGE | User-Defined 1: | Travis Horton |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | $17,569.50 | $17,569.50 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | CATCH0001 | Name: | CATCH ALL MEDIA | | Class ID: | MEDIALODGE | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | $3,150.00 | $3,150.00 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | CEBBE0001 | Name: | CRISTINA EBBERMAN | | Class ID: | MEDIALODGE | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | $1,061.20 | $1,061.20 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | CHRIS0002 | Name: | CHRISTOPHER SERRANO | | Class ID: | REV SHARE | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 2 Aged Totals: | ($5,860.04) | ($5,860.04) | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | CREIN0001 | Name: | Clifton Reinwand | | Class ID: | MEDIALODGE | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 3 Aged Totals: | $2,310.00 | $2,310.00 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | DPORT0001 | Name: | DON PORTER | | Class ID: | BLOGGER | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | ($3,750.00) | ($3,750.00) | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | ERICC0001 | Name: | Eric Cilli | | Class ID: | BLOGGER | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | $302.96 | $302.96 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | FORWA0002 | Name: | FORWARD MEDIA PARTNERS, LLC | | Class ID: | MEDIALODGE | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | $410.19 | $410.19 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | GATDA0001 | Name: | GAT Marketing, LLC | | Class ID: | BLOGGER | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 1 Aged Totals: | $1,297.82 | $1,297.82 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | GIANA0001 | Name: | GIANAKAS MEDIA, INC | | Class ID: | MEDIALODGE | User-Defined 1: | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 3 Aged Totals: | $7,500.00 | | $0.00 | $0.00 | $7,500.00 | |
| Vendor ID: | HIGHC0001 | Name: | HIGH CALIBER HISTORY LLC | | Class ID: | | User-Defined 1: | Thomas Logan Mete |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | | 91 and Over | | | |
| Voucher(s): | | 2 Aged Totals: | $300.00 | $300.00 | $0.00 | $0.00 | $0.00 | |
| Vendor ID: | I1560001 | Name: | i156 LLC (USA CARRY) | | Class ID: | BLOGGER | User-Defined 1: | |
| System: | HISTORICAL AGED TRIAL BALANCE | 8/31/2021 | | 12:46:55 PM Page: | 2 User Date: | 8/31/2021 User ID: | Susan | |

Media Lodge Inc.- Post

| | | | | |
|---|---|---|---|---|
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |

| | | | | | | |
|---|---|---|---|---|---|---|
| Voucher(s): | | 1 Aged Totals: | | $9,930.53 | $9,930.53 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | KLEVI0001 | Name: | KARIN LEVINE | Class ID: | | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 2 Aged Totals: | | $180.00 | | $90.00 | $90.00 | $0.00 |
| Vendor ID: | KPICU0001 | Name: | KAREN LYNN PIKULA | Class ID: | BLOGGER | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 1 Aged Totals: | | $400.00 | $0.00 | $400.00 | $0.00 |
| Vendor ID: | LISTR0001 | Name: | LISTRAK | Class ID: | MEDIALODGE | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 3 Aged Totals: | | $76,551.36 | | $49,606.73 | $0.00 | $0.00 | $26,944.63 |
| Vendor ID: | PBENN001 | Name: | Paige Bennett | Class ID: | BLOGGER | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 1 Aged Totals: | | $947.25 | $947.25 | $0.00 | $0.00 |
| Vendor ID: | SFERG0001 | Name: | SCOTT KENNETH FERGUSON | Class ID: | MEDIALODGE | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 1 Aged Totals: | | $5.67 | $5.67 | $0.00 | $0.00 |
| Vendor ID: | SPECI0001 | Name: | Karlo Jularic | Class ID: | BLOGGER | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 2 Aged Totals: | | $0.02 | $0.00 | $0.00 | $0.01 | $0.01 |
| Vendor ID: | TMERR0001 | Name: | Thomas Merriott | Class ID: | EMPLOYEE | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 1 Aged Totals: | | $735.11 | $735.11 | $0.00 | $0.00 |
| Vendor ID: | WIGGI0001 | Name: | WIGGIN AND DANA LLP | Class ID: | LEGAL | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 1 Aged Totals: | | $1,071.00 | | $0.00 | $0.00 | $1,071.00 |
| Vendor ID: | WIWOM0001 | Name: | WI Women Fish | Class ID: | | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 1 Aged Totals: | | $510.22 | $510.22 | $0.00 | $0.00 |
| Vendor ID: | YOURB0001 | Name: | YOURBOW | Class ID: | MEDIALODGE | User-Defined 1: |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Voucher(s): | | 1 Aged Totals: | | $12,526.00 | $12,526.00 | $0.00 | $0.00 |
| Vendors | Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
| Vendor Totals: | | 25 | $144,080.40 | | $108,074.75 | $490.00 | $0.01 | $35,515.64 |

# EXHIBIT F

Case 20-12969-JTD    Doc 197-6    Filed 08/10/21    Page 130 of 130

| System: | SUMMARY HISTORICAL AGED TRIAL BALANCE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Media Lodge Inc.- Post | Receivables Management | | User ID: | | Susan | | | | | | | | |
| Customer: | Name: | | Current | | 0-30 Days | | 31 - 60 Days | | 61 - 90 Days | 91 - 120 Days | | 121 - 360 Days | 366 + Days |
| MEDIA0001 | MEDIA LODGE LLC | | $ | 161,321.97 | $ | 161,321.97 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Grand Totals: | | 1 | $ | 161,321.97 | $ | 161,321.97 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

# **<u>EXHIBIT G</u>**
Exit Facility
Agreement

# **LOAN AGREEMENT**

THIS LOAN AGREEMENT (this "**Agreement**"), dated as of September ___, 2021 (the "**Effective Date**"), is being entered into by and between Media Lodge Inc., a Delaware corporation (the "**Borrower**"), and Gemini Direct, LLC, a Nevada limited liability company (the "**Lender**").

NOW, THEREFORE, in consideration of the mutual covenants herein and for other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Borrower and Lender unconditionally agree as follows:

## **ARTICLE I**
## **THE LOAN**

1.1     The Loan.  Lender agrees to lend to Borrower, and Borrower agrees to borrow from Lender, the principal sum of up to One Million Five Hundred Thousand Dollars ($1,500,000) (the "**Loan**").  The proceeds of the Loan shall be paid in one or more advances to Borrower upon at least three (3) business days' prior written request therefor.  The date on which the initial advance is made to Borrower is referred to herein as the "**Loan Date**".  Lender reserves the right, in its sole and absolute discretion, to advance Borrower additional amounts, all of which shall be deemed to be included in the Loan for any and all purposes under this Agreement.

1.2     Interest.  Starting on the Loan Date until the principal amount of the Loan and all interest are paid in full, the outstanding principal amount of the Loan shall bear interest at the rate of seven percent (7%) per annum (the "**Interest Rate**"), compounded monthly.

1.3     Promise to Pay.  Borrower hereby unconditionally promises to pay Lender the outstanding principal amount of the Loan and all accrued and unpaid interest thereon, as and when due in accordance with the terms of this Agreement.

1.4     Repayment.  Borrower agrees to make monthly interest payments due on the Loan on the first business day of each month over a five year period, beginning on October 1, 2021. rBorrower agrees to repay the principal amount of the Loan, along with any other amounts outstanding, to Lender in full on October 1, 2026.

1.5     Prepayment.  Borrower may prepay the unpaid principal amount of the Loan, in full at any time or in part from time to time, without fee, premium or penalty.

1.6     Security.

(a)     To secure the payment and performance in full of all of Borrower's obligations hereunder, Borrower hereby grants to Lender a continuing security interest in all of its rights, title, and interests in and to the assets of Borrower listed on Exhibit A (the

"**Collateral**"), which shall continue until all of Borrower's obligations hereunder are satisfied in full.

        (b)    Borrower hereby authorizes Lender to file, and Lender shall be responsible for filing, Uniform Commercial Code financing statements with all appropriate jurisdictions to perfect or protect Lender's security interest in the Collateral.

        (c)    Upon satisfaction in full of Borrower's obligations hereunder, Lender's security interest in the Collateral shall automatically terminate.  In connection with the foregoing, Lender shall (i) promptly terminate any applicable Uniform Commercial Code financing statements, if any, and (ii) execute any further instruments and take further action as Borrower reasonably requests to evidence the termination of Lender's security interest in the Collateral.  If Lender fails to terminate any applicable Uniform Commercial Code financing statements in a timely manner, Borrower may, in its discretion, take all reasonable actions to terminate such financing statements.

## ARTICLE II
## COVENANTS

        2.1    <u>Affirmative Covenants</u>.  Until the Loan and all amounts due under this Agreement are paid in full, Borrower shall, unless Lender shall otherwise consent in writing:

        (a)    Do all things necessary to keep in full force and effect its legal existence.

        (b)    Carry on its operations in compliance with all applicable laws, statutes, ordinances, rules and regulations.

        (c)    Immediately notify Lender of (i) the occurrence of any Event of Default or fact, condition or event which, with the giving of notice or the passage of time, or both, would be an Event of Default, and (ii) any actions, suits or proceedings pending or threatened against Borrower that might materially and adversely affect Borrower's ability to pay the Loan.

        (d)    Use the proceeds of the Loan solely for the operations of its business, and not for any personal, family or household purpose.

        2.2    <u>Negative Covenants</u>.  Until the Loan is fully paid, Borrower will not, without the prior written consent of Lender:

        (a)    Enter into or effect any merger, consolidation, share exchange, division, conversion, reclassification, recapitalization, restructuring, reorganization or any other transaction of like effect, dissolve, sell or otherwise dispose of substantially all of its assets or cease to conduct operations.

        (b)    Lend funds to, or guaranty debts of, its shareholders, directors, officers, or other principals.

(c)     Sell, transfer, convey or lease a substantial part of its assets, or at any time sell all or substantially all of its assets, except for (i) the sale or other disposition of assets in the ordinary course of Borrower's operations, (ii) assets no longer used or useful in the conduct of Borrower's operations, or (iii) assets that are replaced immediately with similar assets of greater or equal value.

(d)     Purchase or otherwise acquire any shares of stock of, or similar interest in, any other Person or all or substantially all the assets or business of any other Person.

(e)     Amend any of its organizational documents in any manner which would be reasonably likely to materially adversely affect Borrower's ability to perform its obligations under this Agreement.

## ARTICLE III
## DEFAULTS AND REMEDIES

3.1     Events of Default.  Each of the following events and occurrences shall constitute an "**Event of Default**" under this Agreement:

(a)     Borrower fails to pay when due and payable any amount that Borrower is obligated to pay under this Agreement;

(b)     Borrower fails to perform or violates any provision, covenant, condition or agreement in Article II of this Agreement;

(c)     Borrower is adjudicated a bankrupt or insolvent, or admits in writing its inability to pay its debts as they become due or makes an assignment for the benefit of creditors, or ceases doing business as a going concern or applies for or consents to the appointment of any receiver or trustee, or such receiver, trustee or similar officer is appointed with the application or consent of Borrower, or bankruptcy, dissolution, liquidation or reorganization proceedings (or proceedings similar in purpose and effect) are instituted by or against Borrower;

(d)     The validity or enforceability of this Agreement, or any provisions hereof or thereof, is contested by or on behalf of Borrower, or a proceeding is commenced by any governmental authority having jurisdiction over Borrower seeking to establish the invalidity of this Agreement, or Borrower denies that it has any further liability or obligation under this Agreement; or

3.2     Remedies.  At the option of Lender, upon the occurrence of an Event of Default, or at any time thereafter during the continuance thereof:

(a)     the entire unpaid principal of the Loan, all charges and all fees due hereunder and all other obligations of Borrower to Lender under this Agreement, or otherwise arising, will become immediately due and payable without any further demand or notice;

(b)     Lender may exercise each and every right and remedy granted to it under this Agreement and under any other applicable law or at equity; and/or

(c)     The Interest Rate on the unpaid principal amount of the Loan shall be increased to [ten percent (10%)].

## ARTICLE IV
## MISCELLANEOUS

4.1     <u>Time of Essence.</u> Time is of the essence offor each and every provision of this Agreement.

4.2     <u>No Waivers</u>.  No failure or delay by Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies provided under this Agreement shall be cumulative and not exclusive of any rights or remedies provided by law.

4.3     <u>Indemnification</u>.  Borrower agrees to indemnify Lender, its affiliates and its directors, officers, agents and employees (each an **"Indemnitee"**) and hold each Indemnitee harmless from and against any and all liabilities, losses, damages, costs and expenses of any kind, including, without limitation, the reasonable fees and disbursements of counsel, which may be incurred by such Indemnitee in connection with any investigative, administrative or judicial proceeding (whether or not such Indemnitee shall be designated a party thereto) brought or threatened relating to or arising out of Borrower's operations or assets, the Loan, this Agreement or any actual or proposed use of the proceeds of the Loan, provided that no Indemnitee shall have the right to be indemnified hereunder for such Indemnitee's own gross negligence or willful misconduct as determined by a court of competent jurisdiction.  All obligations provided for in this Section shall survive the repayment of the Loan and the termination of this Agreement.

4.4     <u>Amendments and Waivers</u>.  Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by Borrower and Lender.

4.5     <u>Successors and Assigns</u>.  The provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, except that Borrower may not assign or otherwise transfer any of its rights under this Agreement without the prior written consent of Lender.

4.6     <u>Counterparts; Integration; Effectiveness</u>.  This Agreement may be signed in any number of counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument.  This Agreement constitutes the entire agreement and understanding between the parties hereto with respect to the Loan and supersede any and all prior agreements and understandings, oral or written, relating to the Loan.

4.7     <u>Governing Law; Venue; Consent to Jurisdiction</u>.  This Agreement and the right and obligations of the parties thereto shall be governed by and construed and interpreted in

4

accordance with the laws of the State of Delaware, excluding the impact of its conflict of laws doctrines. Each of Borrower and Lender (i) irrevocably submits to the exclusive jurisdiction and venue of any Delaware State court or Federal court sitting in Wilmington, Delaware in any action arising out of this Agreement, and (ii) consents to the service of process by mail. Nothing herein shall affect the right of any party to serve legal process in any manner permitted by law or affect its right to bring any action in any other court.

4.8    <u>Waiver of Jury Trial</u>.    BORROWER EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THE LOAN AND THE TRANSACTION CONTEMPLATED HEREUNDER.

4.9    <u>Waiver of Punitive Damages</u>.    BORROWER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY EXEMPLARY, PUNITIVE OR OTHER DAMAGES IN CONNECTION WITH THE LOAN OTHER THAN, OR IN ADDITION TO, COMPENSATORY DAMAGES.

4.10    <u>Severability</u>.    If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

4.11    <u>No Party Deemed Drafter</u>.    Borrower and Lender agree that no party hereto shall be deemed to be the drafter of this Agreement.

**END OF TEXT – SIGNATURES ON FOLLOWING PAGE(S)**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed under seal as of the date first written above.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

**Media Lodge Inc.**
A Delaware corporation

_____
Witness

By: _____ (Seal)
Name: _____
Title: _____

**Gemini Direct, LLC**
A Nevada limited liability company

_____
Witness

By: _____ (Seal)
Name: _____
Title: _____

EXHIBIT A

Collateral Security

To secure Borrower's obligations to Lender under this Agreement, Borrower hereby unconditionally grants, assigns, and pledges to Lender a continuing security interest (hereinafter referred to as the "**Security Interest**") in all tangible and intangible personal property of Borrower whether now owned or hereafter acquired or arising and wherever located, including, without limitation, all of Borrower's right, title, and interest in and to the following items (collectively, but without duplication, the "**Collateral**"):

(a)     all Accounts;

(b)     all Books;

(c)     all Chattel Paper;

(d)     all Deposit Accounts;

(e)     all Securities Accounts;

(f)     all Goods, Inventory, Equipment and fixtures;

(g)     all Negotiable Collateral;

(h)     all General Intangibles (including, without limitation, all Intellectual Property);

(i)     all Investment Property, Stock and Pledged Interests and all distributions, funds, revenues, income, profits, rights, title, interest and claims whatsoever, at law as well as in equity, which Grantor may have or possess on the date of this Agreement or to which Grantor may hereafter become legally or equitably entitled, directly or indirectly, from, in or to such Investment Property, Stock and Pledged Interests;

(j)     all rights in respect of any Supporting Obligations;

(k)     all rights in with respect to any Commercial Tort Claims;

(l)     all money and other financial assets; and

(m)     all Proceeds, whether tangible or intangible, of any of the foregoing,

Capitalized terms used herein but not defined herein shall have the meanings ascribed thereto in the Delaware Uniform Commercial Code.

A-1

# EXHIBIT B

**CONSENT AND ACKNOWLEDGMENT**

**THIS CONSENT AND ACKNOWLEDGEMENT**, dated as of September 13, 2021 (this "Consent"), is given by AMMO, INC. ("AMMO") in connection with the Fourth Amended Plan of Reorganization of Media Lodge, Inc. and the Settlement Agreement and Mutual Releases attached as Exhibit C thereto.

**WITNESSETH**

WHEREAS, reference is made to that certain Fourth Amended Plan of Reorganization of Media Lodge, Inc dated as of September 10, 2021 (as amended and in effect from time to time, the "Plan") proposed by Media Lodge Inc. ("Media Lodge" or the "Debtor") in the chapter 11 bankruptcy of Media Lodge filed in the United States Bankruptcy Court for the District of Delaware, Case No. 20-12969 (JTD) (the "Bankruptcy Case").

WHEREAS, the Plan attaches, as Exhibit C thereto, the Settlement Agreement and Mutual Releases dated September 3, 2021 (the "GunUp Settlement Agreement") by and among GunUp Holding Inc. d/b/a GunUp, Inc. ("GunUp"), Daniel M. Hall, Media Lodge, Gemini Direct, LLC ("Gemini"), Steve Urvan, Jeffrey Siegel, Kevin O'Connell and Susan Lokey (collectively, the "Settlement Parties").

WHEREAS, the GunUp Settlement Agreement refers to GunUp and Mr. Hall together as the "GunUp Parties" and refers to Media Lodge, Gemini, Mr. Urvan, Mr. Siegel, Mr. O'Connell and Ms. Lokey as the "Media Lodge Parties."

WHEREAS, pursuant to Section 3(a) of the GunUp Settlement Agreement "each of the GunUp Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers and directors) releases and forever discharges each of the Media Lodge Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers and directors) and AMMO (and its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners, assigns, insurers, officers and directors), to the maximum extent permitted by law and unless barred by law, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, attorneys' fees or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the GunUp Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, under the laws of the United States, any of its states, or any other country."

WHEREAS, the pursuant to Section 3(b) of the GunUp Settlement Agreement, "each of the Media Lodge Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners assigns, insurers, officers and directors) and AMMO (and its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest,

54857343.1

1

principals, shareholders, members, partners, assigns, insurers, officers and directors, pursuant to the AMMO Consent) releases and forever discharges each of the GunUp Parties (and their subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, principals, shareholders, members, partners assigns, insurers, officers and directors), to the maximum extent permitted by law and unless barred by law, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, attorneys' fees or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the GunUp Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, under the laws of the United States, any of its states, or any other country (including without limitation claims under the federal Lanham Act and claims asserted in the Lanham Act Lawsuit).

WHEREAS, the execution and delivery of this Consent is an essential condition of the GunUp Settlement Agreement and GunUp's support of the Plan.

NOW, THEREFORE, for the consideration noted above and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and intending to be legally bound hereby, AMMO agrees as follows:

1.    <u>Definitions</u>.  Terms used but not defined herein shall have the meanings ascribed thereto in the Plan or the GunUp Settlement Agreement, as applicable.

2.    <u>Release</u>.  AMMO for itself and for each of its subsidiaries and their predecessors, successors and assigns (the "<u>AMMO Releasing Parties</u>") acknowledges, consents to, and agrees to be bound by and receive the benefits of the releases set forth in sections 3(a) and (b) of the GunUp Settlement Agreement as of the Effective Date of the Plan.

3.    <u>No Assignment of Released Claims</u>.  AMMO represents and warrants with respect to the claims being released by the AMMO Releasing Parties under the GunUp Settlement Agreement (the "<u>AMMO Released Claims</u>") that it has not in any manner assigned, pledged or otherwise voluntarily or involuntarily disposed of or transferred to any Person an interest in any of the AMMO Released Claims and that each of the AMMO Released Claims will be fully and finally discharged, settled and satisfied upon the Effective Date of the Plan.

4.    <u>Covenant Not to Sue</u>.  AMMO agrees not to bring, and to cause the other AMMO Releasing Parties not to bring, any claim against any of the GunUp Parties in any court or before any arbitrator or arbitration panel or organization, or otherwise, to the extent relating to an AMMO Released Claim.

5.    <u>No Admission</u>.  This Consent does not constitute evidence of unlawful conduct or wrongdoing, breach of any duty, tortious conduct, fraud, or any other wrongful act, by the AMMO Releasing Parties.

6.    <u>Disclaimer of Representations</u>.  AMMO represents and warrants that in executing this Consent, it is not relying on any statement or representation of any GunUp Party, it has read

54857343.1

the entire GunUp Settlement Agreement, Consent and the Plan, and no promise or agreement which is not expressed herein has been made to it in executing this Consent.

7.    <u>Successors and Assigns</u>.  This Consent shall bind the AMMO Releasing Parties. This Consent is intended to benefit AMMO and each Party (and its, his, or her heirs, successors and assigns) to the Settlement Agreement.

8.    <u>Miscellaneous</u>.

(a)    This Consent may not be amended, nor may any provision hereof be modified or waived, except by an agreement in writing duly executed by AMMO.

(b)    In the event any term or condition of this Consent is determined to be invalid, prohibited or unenforceable by a court or other body of competent jurisdiction, this Consent shall be construed as if such invalid, prohibited or unenforceable term or condition has been more narrowly drawn so as not to be invalid, prohibited or unenforceable provided the full and complete release of AMMO is neither diminished or prejudiced in any manner.  Notwithstanding the foregoing sentence, in the event that any term or condition contained in this Consent should be determined to be invalid, prohibited or unenforceable, the validity, legality and enforceability of the remaining terms or conditions contained in this Consent and the Plan shall not in any way be affected or impaired thereby.

(c)    Except as otherwise set forth herein, the releases, covenants and agreements contained in this Consent are for the sole benefit of the AMMO Releasing Parties and the GunUp Parties, and they shall not be construed as conferring any rights on any other persons.

(d)    AMMO hereby acknowledges that, before executing this Consent, it had been advised to consult with counsel, had been given the opportunity to consult with counsel, had in fact sought and received advice from counsel of its own choosing, and had been fully advised of its rights under law. AMMO further acknowledges that it has reviewed this Consent, the GunUp Settlement Agreement, and the Plan in their entirety, understands them and freely, knowingly and voluntarily executes this Consent.

(e)    All section headings contained in this Consent are for convenience of reference only, do not form a part of this Consent and shall not affect in any way the meaning or interpretation of this Consent.  Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context requires.

54857343.1

3

(f)    The individual signing this Consent represents and warrants that he or she has the authority to sign for, and to bind, AMMO.

[*Remainder of page intentionally left blank. Signature page follows.*]

IN WITNESS WHEREOF, the undersigned has caused this Consent to be duly executed and delivered as of the date first above written.

AMMO, INC.

By: _____

Name: John Flynn _____

Its: Vice President _____

# **<u>EXHIBIT D</u>**

Contracts to be Assumed

| Vendor Name | Cure | Amount |
|---|---|---|
| i156 LLC (USA CARRY) | $ | 2,840.03 |
| Ryan Companies US Inc. | $ | 532.92 |
| Catch All Media | $ | 350.00 |
| Christopher Serrano (IMFDB) | $ | 25,173.79 |
| Armory Forums LLC | $ | 19,351.90 |
| Auction Armory | $ | 33,008.71 |
| Don Porter (Sootch) | $ | 5,000.00 |
| Concealed Nation, LLC | $ | 7,027.34 |
| Registered Agent Solutions Inc. | $ | 104.00 |
| 50 Campfires, LLC | $ | 11,778.84 |
| Kattan Law | | $9,931 |
| Listrack | $ | 115,475.34 |
| Yourbow | $ | 24,380.00 |

# EXHIBIT E

Liquidation Analysis

EXHIBIT D
**Liquidation Analysis**
[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]

### *Debtor's Estimated Liquidation Value of Assets*

| Asset | Scheduled Value |
|---|---|
| Operating Account | $            23,489 |
| Deposits and Prepayments | $                  - |
| Accounts Receivable | $                  - |
| Intangibles | $                  - |
| Misc. due from related parties | $               473 |
|  |  |
|  |  |
| **TOTAL** | **$            23,962** |

**Less:**
Secured creditors' recoveries                                   $_____

**Less:**
Chapter 7 trustee fees and expenses               **$25,000.00**
**(Trustee)**

**(Auction)**                                                              **$_____**
**Less:**
Chapter 11 Administrative Expenses                **$50,000.00 (GSBB)**
                                                                               **$10,000.00**
**(Trustee)**
**Less:**
Priority claims, excluding Administrative Expense claims     **$_____  (IRS)**
                                                                               **$_____  (other)**

(1) Balance for unsecured claims                              **$**

(2) Total dollar amount of unsecured claims                $

*Percentage of Claims Which Unsecured Creditors Would*
*Receive or Retain in a Chapter 7 Liquidation:*              *0%*

*Percentage of Claims Which Unsecured Creditors Will*
*Receive or Retain under the Plan:*                          **100%**

# EXHIBIT F
Most Recent Post-Petition Operating Report

**Fill in this information to identify the case:**

Debtor Name ___Media Lodge Inc.___

United States Bankruptcy Court for the: _____ District of _____

Case number: ___20-12969-JTD___

☐ Check if this is an
amended filing

**Official Form 425C**

## Monthly Operating Report for Small Business Under Chapter 11                 12/17

Month:          __July__                                    Date report filed:    __08/31/2021__
                                                                               MM / DD / YYYY
Line of business:   __Digital Advertising__                 NAISC code:    _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury
that I have examined the following small business monthly operating report and the accompanying
attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:          _MEDIA LODGE_

Original signature of responsible party   _____

Printed name of responsible party        _JEFF SIEGEL_

## ☐  1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | **Yes** | **No** | **N/A** |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** |  |  |  |
| 1. Did the business operate during the entire reporting period? | ☒ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☒ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☒ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☒ | ☐ | ☐ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☒ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☒ | ☐ | ☐ |
| 7. Have you timely filed all other required government filings? | ☐ | ☐ | ☒ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☒ | ☐ | ☐ |
| 9. Have you timely paid all of your insurance premiums? | ☒ | ☐ | ☐ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** |  |  |  |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☒ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☒ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☒ | ☐ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☒ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☒ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☒ | ☐ | ☐ |
| 16. Has anyone made an investment in your business? |  |  |  |

| Debtor Name | Media Lodge Inc. | | Case number | 20-12969-JTD |
|---|---|---|---|---|

17. Have you paid any bills you owed before you filed bankruptcy?  ☐ ☒ ☐
18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☐ ☒ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 4,606.64

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 381,721.20

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ 349,275.44

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ 32,445.74

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

= $ 37,052.38

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

*(Exhibit E)*

$ 192,582.15

| Debtor Name | Media Lodge Inc. | Case number | 20-12969-JTD |
|---|---|---|---|

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**  $   161,321.97

 *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?   9

27. What is the number of employees as of the date of this monthly report?   9

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?   $ 0

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ 17,629

30. How much have you paid this month in other professional fees?   $ 0

31. How much have you paid in total other professional fees since filing the case?   $ 5,469.50

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 272,455 | − | $ 381,721 | = | $ -109,266 |
| 33. **Cash disbursements** | $ 317,277 | − | $ 349,275 | = | $ -31,998 |
| 34. **Net cash flow** | $ -44,822 | − | $ 32,445 | = | $ -77,267 |

35. Total projected cash receipts for the next month:   $ 217,964

36. Total projected cash disbursements for the next month:   - $ 256,392

37. Total projected net cash flow for the next month:   = $ -38,428

Debtor Name    Media Lodge Inc.                                          Case number    20-12969-JTD

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- ☐ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

- ☐ 39.  Bank reconciliation reports for each account.

- ☐ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

- ☐ 41.  Budget, projection, or forecast reports.

- ☐ 42.  Project, job costing, or work-in-progress reports.

Print        Save As...        Reset

In re    Media Lodge Inc.                              Case No.    20-12969-JTD
               Debtor                              Reporting Period:_____

**SCHEDULE OF PROFESSIONAL FEES AND EXPENSES PAID**

This schedule is to include all retained professional payments from case inception to current month.

| Payee | Period Covered | Amount Approved | Payor | Check | | Amount Paid | | Year-To-Date | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Number | Date | Fees | Expenses | Fees | Expenses |
| Culhane Meadows | 11/16-1/31 | 2,119.50 | Media Lodge Inc. | 1266 | 12/23/20 | 2,119.50 | 0.00 | 2,119.50 | 0 |
| Culhane Meadows | Feb 2021 | 3,350.00 | Media Lodge Inc. | 1341 | 2/12/2021 | 3,350.00 | 0.00 | 5,469.50 | 0 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

FORM MOR-1b
(04/07)

| Consolidated - Pre/Post Petition | Month |
|---|---|
| | Jul-21 |
| **Assets** | |
| Cash (Unrestricted) | 37,052 |
| Cash (Restricted) | - |
| Accounts Receivable (Net) | 316,946 |
| Inventory | - |
| Notes Receivable | - |
| Prepaid Expenses | 178,378 |
| Other (Attach List) | 23,082  Utility/Rent Security Deposits |
| Total Current Assets | 555,459 |
| **Property, Plant & Equipment** | |
| Real Property & Improvements | - |
| Machiner & Equipment | - |
| Furniture, Fixtures & Office Equipment | - |
| Vehicles | - |
| Intangibles | 1,133,076 |
| Less:  Accumulated Depreciation & Amortization | (623,447) |
| Total Propert, Plant & Equipment | 509,629 |
| Due from Affiliates & Insiders | - |
| Other (Attach List) | - |
| Total Assets | 1,065,088 |
| **Liabilities Not Subject to Compromise (Post Petition Liabilities)** | |
| Accounts Payable | 144,080 |
| Accrued Expense | - |
| Notes Payable | - |
| Professional Fees - Subchapter V Trustee Fees Accrued | 48,502 |
| Secured Debt | 90,023 |
| Due to Affiliates & Insiders | - |
| Other (Attach List) | -  Deferred Rent |
| Total Postpetition Liabilities | 282,605 |
| **Liabilities Subject to Compromise (Pre-Petition Liabilities)** | |
| Secured Debt - Per Plan | 2,000,000 |
| Priority Debt - Per Plan | - |
| Unsecured Debt - Per Plan | 7,602,648 |
| Other (Attach List) - Per Plan | 2,478,991  GunUp Judgement |
| Total Pre-Petition Liabilities | 12,081,639 |
| **Equity** | |
| Common Stock | 1,000 |
| Retained Earning (Deficit) | (11,300,157) |
| Total Equity (Deficit) | (11,299,157) |
| Total Liabilities & Owners' Equity | 1,065,088 |

| | MEDIA LODGE INC.- POST | | | | MEDIA LODGE INC.- POST | |
|---|---|---|---|---|---|---|
| | Post Media Lodge | | | | Post Media Lodge | |
| | For the Seven Months Ending Saturday, July 31, 2021 | | | | For the Seven Months Ending Saturday, July 31, 2021 | |

| | | July | | | | July |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | **ORDINARY INCOME / EXPENSE** | | |
| | **Current Assets** | | | | **Income** | |
| 10020 | Cash - PNC Operating | $37,052.38 | | 41000 | Banner Ads | $127,047.16 |
| | **Total Cash** | 37,052.38 | | 41010 | Banner Ads - Programmatic Ads | 589.00 |
| | | | | 41800 | Banner Exchange | 133,728.82 |
| | **Total Cash and Cash Equivalents** | 37,052.38 | | | **Total Income** | 261,364.98 |
| | **Accounts Receivable** | | | | **Cost of Goods Sold** | |
| 12000 | Accounts Receivable | 161,321.97 | | 50000 | Hosting / Data Center | 468.25 |
| | **Total Accounts Receivable** | 161,321.97 | | 56070 | Contests & Promotions | 26.00 |
| | **Other Current Assets** | | | | **Production Costs** | 494.25 |
| 12800 | Reimbursable Expenses (employee) | 9,443.51 | | 51000 | Commission | 27,031.68 |
| 14000 | Prepaid Assets | 9,899.92 | | 51010 | Advertising Consult - Programmatic | 410.19 |
| | **Total Other Current Assets** | 17,880.21 | | 51020 | Publisher Costs (Bloggers) | 45,769.10 |
| | | | | 51060 | Advertising Expense | 17,569.50 |
| | **Total Assets** | 217,717.78 | | 51070 | Ad Creation/Graphic Desogn (For Advertisers | 6,766.57 |
| | | | | 51430 | Ad Operations | 22,898.30 |
| **LIABILITIES & EQUITY** | | | | 56110 | Video Production | |
| | | | | 56120 | Video Production Get Zone | 450.00 |
| | **Current Liabilities** | | | 56150 | Billable Expenses | 446.84 |
| | | | | 56160 | Social Media Advertising | |
| | **Accounts Payable** | | | 56200 | Advance Retail Segmentation Expense | 49,606.73 |
| 20000 | Accounts Payable | 144,080.40 | | | | |
| | **Total Accounts Payable** | 144,080.40 | | | **Selling Costs** | 170,948.91 |
| | | | | | **Total Cost of Goods Sold** | 171,443.16 |
| | **Accrued Expenses** | | | | **Gross Profit** | 89,921.82 |
| 20500 | Accrued Expenses | 48,501.75 | | | | |
| | **Total Accrued Expenses** | 48,501.75 | | | **Expenses** | |
| | | | | | **Administrative Expense** | |
| | **Long Term Liabilities** | | | 61100 | Legal Fees | 11,667.00 |
| 25800 | DIP Financing | 90,023.14 | | | **Total Administrative Expense** | 11,667.00 |
| | **Total Long Term Liabilities** | 90,023.14 | | | | |
| | | | | | **Expense** | |
| | **Equity** | | | 60100 | Bank Service Charges | 163.25 |
| 32000 | Retained Earnings | 171,541.11 | | 60240 | Software Subscriptions & Licenses | 1,577.86 |
| 40000:99999 | Net Income | (236,428.62) | | 60330 | Licenses and Permits | |
| | **Total Equity** | (64,887.51) | | 60340 | Office Supplies | |
| | | | | 60350 | Postage and Delivery | |
| | **Total Liabilities & Equity** | 217,717.78 | | 60380 | Telephone | 150.00 |
| | | | | 60381 | Internet (Wi-Fi or Wired) | 139.95 |
| | | | | 60390 | Miscellaneous | |
| | | | | 61420 | Ad Production | |
| | | | | 62000 | Rent | (2,128.54) |
| | | | | 62450 | Operating Expenses for Buildings (part of Rent) | |
| | | | | 63000 | Other Taxes | |
| | | | | 64200 | Conference Registration | |
| | | | | 64300 | Airfare | |
| | | | | 64350 | Ground Transportation | |
| | | | | 64400 | Lodging | |
| | | | | 64500 | Meals | |
| | | | | 71000 | Wages | 84,617.86 |
| | | | | 71010 | Contract Labor | 4,364.78 |
| | | | | 71100 | Bonuses, Other Wages | 10,000.00 |
| | | | | 71200 | Benefits | 906.01 |
| | | | | 71210 | Employee Profit Sharing | 3,524.00 |
| | | | | 71300 | Federal Unemployment tax | |
| | | | | 71310 | State Unemployment tax | 367.70 |
| | | | | 71320 | Medicare tax | 1,763.92 |
| | | | | 71330 | Workers Comp | 512.72 |
| | | | | 71340 | Social Security tax | 5,447.04 |
| | | | | 71400 | Administration Fee | 675.00 |
| | | | | | **Total Expense** | 112,081.55 |
| | | | | | **Other (Income) Expense** | |
| | | | | | **Total Other (Income) Expense** | |
| | | | | | **Net Income (Loss)** | (33,826.73) |

|                    | Column A<br>Projected | Column B<br>Actual | Column C<br>Difference |
|--------------------|----------------------:|-------------------:|-----------------------:|
| Cash Receipts      | $ 272,455.00          | $ 381,721.18       | $ (109,266.18)         |
| Cash Dispursements | $ 317,277.00          | $ 349,275.44       | $ (31,998.44)          |
| Net Cash Flow      | $ (44,822.00)         | $ 32,445.74        | $ (77,267.74)          |

# <u>EXHIBIT B</u>

Questionnaire:

12.    Have you sold or transferred any assets or provided services to anyone related to the DIP in any way?
           DIP serves as advertising representative to GunBroker.com (related party under common
           control) via an "Advertising Representation Agreement" dated May 3, 2019.

15.    Have you borrowed money from anyone or has anyone made any payments on your behalf?
           DIP borrowed $90,023 from its parent Gemini Direct Investments via the
           approved "DIP Loan" during November 2020 to pay a critical vendor, YourBow, and
           to fund payroll for the period 11/15-11/30.

# **EXHIBIT C**

Cash Receipts:

| | | |
|---|---|---|
| 7/13/2021 | $ | 193,821.48 |
| 7/20/2021 | $ | 2,128.54 |
| 7/22/2021 | $ | 79,083.12 |
| 7/27/2021 | $ | 61,035.20 |
| 7/30/2021 | $ | 45,652.84 |
| | $ | 381,721.18 |

# EXHIBIT D

Case 20-12969-JTD   Doc 197-6   Filed 08/10/21   Page 145 of 190

| Journal Entry | TRX Date | Account Number | Account Description | Credit Amount | Debit Amount | Originating Master Name | Reference | Description |
|---|---|---|---|---|---|---|---|---|
| 17308 | 7/1/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 92,946.38 | $ - | LISTRAK | Computer Checks | Cash |
| 17247 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 99.95 | $ - | COMCAST | Computer Checks | Cash |
| 17248 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,090.00 | $ - | Clifton Reinwand | Computer Checks | Cash |
| 17249 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 7,500.00 | $ - | Lifestyle HG Inc. | Computer Checks | Cash |
| 17250 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 1,186.65 | $ - | Paige Bennett | Computer Checks | Cash |
| 17251 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 40.00 | $ - | SCOTT KENNETH FERGUSON | Computer Checks | Cash |
| 17252 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 623.13 | $ - | Thomas Merriott | Computer Checks | Cash |
| 17253 | 7/7/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 12,317.00 | $ - | YOURBOW | Computer Checks | Cash |
| 17263 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 560.00 | $ - | CRISTINA EBBERMAN | Computer Checks | Cash |
| 17264 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 5,000.00 | $ - | GIANAKAS MEDIA, INC | Computer Checks | Cash |
| 17265 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 150.00 | $ - | HIGH CALIBER HISTORY LLC | Computer Checks | Cash |
| 17266 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 51,981.96 | $ - | LISTRAK | Computer Checks | Cash |
| 17267 | 7/14/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 26.33 | $ - | SCOTT KENNETH FERGUSON | Computer Checks | Cash |
| 17255 | 7/15/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 78,517.85 | $ - | Adams Keegan | Computer Checks | Cash |
| 17280 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 12,223.76 | $ - | ARMORY FORUMS LLC | Computer Checks | Cash |
| 17281 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 14,038.76 | $ - | AUCTION ARMORY | Computer Checks | Cash |
| 17282 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 4,167.99 | $ - | CHRISTOPHER SERRANO | Computer Checks | Cash |
| 17283 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 453.04 | $ - | Eric Cilli | Computer Checks | Cash |
| 17284 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,500.00 | $ - | GIANAKAS MEDIA, INC | Computer Checks | Cash |
| 17285 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 11,766.90 | $ - | i156 LLC (USA CARRY) | Computer Checks | Cash |
| 17286 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 400.00 | $ - | KAREN LYNN PIKULA | Computer Checks | Cash |
| 17287 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,600.00 | $ - | Lifestyle HG Inc. | Computer Checks | Cash |
| 17288 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 616.57 | $ - | Tundra Entertainment | Computer Checks | Cash |
| 17289 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 8,500.00 | $ - | CHRISTOPHER SERRANO | Computer Checks | Cash |
| 17290 | 7/20/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 3,750.00 | $ - | DON PORTER | Computer Checks | Cash |
| 17301 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,306.95 | $ - | CLAUDIA BIRCU | Computer Checks | Cash |
| 17302 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 952.00 | $ - | CRISTINA EBBERMAN | Computer Checks | Cash |
| 17303 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 2,999.19 | $ - | GAT Marketing, LLC | Computer Checks | Cash |
| 17304 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 100.00 | $ - | KATHERINE POWERS | Computer Checks | Cash |
| 17305 | 7/29/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 14.33 | $ - | SCOTT KENNETH FERGUSON | Computer Checks | Cash |
| 17293 | 7/30/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 56,328.08 | $ - | Adams Keegan | Computer Checks | Cash |
| 17396 | 7/31/2021 | 150-10020-000-000 | Cash - PNC Operating | $ 163.25 | $ - | Reconciliation Adjustment | Reconcile Adjustments Entry | Reconcile Bank Statement |
| 17397 | 7/31/2021 | 150-10020-000-000 | Cash - PNC Operating | $ - | $ 700.00 | 2A TRUTH HOLDING LLC | Void Historical Trx - Check 1301 1/21/2021 | Cash |
| 17398 | 7/31/2021 | 150-10020-000-000 | Cash - PNC Operating | $ - | $ 26,944.63 | LISTRAK | Void Historical Trx - Check 1338 2/3/2021 | Cash |

$ 349,275.44

# EXHIBIT E

Case 20-12969-JTD   Doc 197-6   Filed 08/10/21   Page 167 of 190

Accrued Expense:

| | | | | | |
|---|---|---|---|---|---|
| | Payable to Sub V Trustee | July | | $48,501.75 | $48,501.75 |
| | Accrue Listrak | July | $ | - | |

| System: | HISTORICAL AGED TRIAL BALANCE | | 8/31/2021 | | 12:46:55 PM Page: | | 1 User Date: | 8/31/2021 User ID: | Susan |
|---|---|---|---|---|---|---|---|---|---|

Media Lodge Inc.- Post
Payables Management

| Ranges: | Vendor ID: | First - Last | User-Defined 1: | First - Last |
|---|---|---|---|---|
| Class ID: | First - Last | Document Date: | First - 7/31/2021 | Payment Priority: First - Last   Document Number: First - Last |
| Vendor Name: | First - Last | | | |
| Exclude: | Zero Balance, No Activity, Fully Paid Documents, Unpost Print Option: | SUMMARY | Sorted By: Vendor ID |
| Aged By: | Document Date | Due Date | Aging Date: | 7/31/2021 |

| Vendor ID: | ARDEN0001 | Name: | The Ardent Group | Class ID: | MEDIALODGE User-Defined 1: | | | |
|---|---|---|---|---|---|---|---|---|
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | ($2,606.00) | ($2,606.00) | $0.00 | $0.00 | $0.00 |
| Vendor ID: | ARMOR0001 | Name: | ARMORY FORUMS LLC | Class ID: | REV SHARE | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | $13,326.92 | $13,326.92 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | AUCT0001 | Name: | AUCTION ARMORY | Class ID: | BLOGGER | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | $6,210.69 | $6,210.69 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | BRAND0001 | Name: | BRAND AVALANCHE MEDIA, LLC (Travis Horto | Class ID: | MEDIALODGE User-Defined 1: | Travis Horton | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | $17,569.50 | $17,569.50 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | CATCH0001 | Name: | CATCH ALL MEDIA | Class ID: | MEDIALODGE User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | $3,150.00 | $3,150.00 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | CEBBE0001 | Name: | CRISTINA EBBERMAN | Class ID: | MEDIALODGE User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | $1,061.20 | $1,061.20 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | CHRIS0002 | Name: | CHRISTOPHER SERRANO | Class ID: | REV SHARE | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 2 Aged Totals: | ($5,860.04) | ($5,860.04) | $0.00 | $0.00 | $0.00 |
| Vendor ID: | CREIN0001 | Name: | Clifton Reinwand | Class ID: | MEDIALODGE User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 3 Aged Totals: | $2,310.00 | $2,310.00 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | DPORT0001 | Name: | DON PORTER | Class ID: | BLOGGER | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | ($3,750.00) | ($3,750.00) | $0.00 | $0.00 | $0.00 |
| Vendor ID: | ERICC0001 | Name: | Eric Cilli | Class ID: | BLOGGER | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | $302.96 | $302.96 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | FORWA0002 | Name: | FORWARD MEDIA PARTNERS, LLC | Class ID: | MEDIALODGE User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | $410.19 | $410.19 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | GATDA0001 | Name: | GAT Marketing, LLC | Class ID: | BLOGGER | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 1 Aged Totals: | $1,297.82 | $1,297.82 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | GIANA0001 | Name: | GIANAKAS MEDIA, INC | Class ID: | MEDIALODGE User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 3 Aged Totals: | $7,500.00 | | $0.00 | $0.00 | $7,500.00 |
| Vendor ID: | HIGHC0001 | Name: | HIGH CALIBER HISTORY LLC | Class ID: | | User-Defined 1: | Thomas Logan Mete |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | | |
| Voucher(s): | | 2 Aged Totals: | $300.00 | $300.00 | $0.00 | $0.00 | $0.00 |
| Vendor ID: | I1560001 | Name: | i156 LLC (USA CARRY) | Class ID: | BLOGGER | User-Defined 1: | | |

| System: | HISTORICAL AGED TRIAL BALANCE | | 8/31/2021 | | 12:46:55 PM Page: | | 2 User Date: | 8/31/2021 User ID: | Susan |
|---|---|---|---|---|---|---|---|---|---|

Media Lodge Inc.- Post

| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
|---|---|---|---|---|

Case 20-12969-JTD    Doc 206-1    Filed 09/17/21    Page 178 of 120

| | | | | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over |
|---|---|---|---|---|---|---|---|
| Voucher(s): | 1 Aged Totals: | | $9,930.53 | $9,930.53 | $0.00 | $0.00 | $0.00 |
| Vendor ID: KLEVI0001 | Name: | KARIN LEVINE | Class ID: | | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 2 Aged Totals: | | $180.00 | $90.00 | $90.00 | $0.00 | $0.00 |
| Vendor ID: KPICU0001 | Name: | KAREN LYNN PIKULA | Class ID: | BLOGGER | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 1 Aged Totals: | | $400.00 | $0.00 | $400.00 | $0.00 | $0.00 |
| Vendor ID: LISTR0001 | Name: | LISTRAK | Class ID: | MEDIALODGE | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 3 Aged Totals: | | $76,551.36 | $49,606.73 | $0.00 | $0.00 | $26,944.63 |
| Vendor ID: PBENN001 | Name: | Paige Bennett | Class ID: | BLOGGER | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 1 Aged Totals: | | $947.25 | $947.25 | $0.00 | $0.00 | $0.00 |
| Vendor ID: SFERG0001 | Name: | SCOTT KENNETH FERGUSON | Class ID: | MEDIALODGE | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 1 Aged Totals: | | $5.67 | $5.67 | $0.00 | $0.00 | $0.00 |
| Vendor ID: SPECI0001 | Name: | Karlo Jularic | Class ID: | BLOGGER | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 2 Aged Totals: | | $0.02 | $0.00 | $0.00 | $0.01 | $0.01 |
| Vendor ID: TMERR0001 | Name: | Thomas Merriott | Class ID: | EMPLOYEE | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 1 Aged Totals: | | $735.11 | $735.11 | $0.00 | $0.00 | $0.00 |
| Vendor ID: WIGGI0001 | Name: | WIGGIN AND DANA LLP | Class ID: | LEGAL | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 1 Aged Totals: | | $1,071.00 | $0.00 | $0.00 | $0.00 | $1,071.00 |
| Vendor ID: WIWOM0001 | Name: | WI Women Fish | Class ID: | | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 1 Aged Totals: | | $510.22 | $510.22 | $0.00 | $0.00 | $0.00 |
| Vendor ID: YOURB0001 | Name: | YOURBOW | Class ID: | MEDIALODGE | User-Defined 1: | | |
| Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | | |
| Voucher(s): | 1 Aged Totals: | | $12,526.00 | $12,526.00 | $0.00 | $0.00 | $0.00 |
| Vendors | Due | Current Period | 31 - 60 Days | 61 - 90 Days | 91 and Over | | |
| Vendor Totals: | 25 | $144,080.40 | $108,074.75 | $490.00 | $0.01 | $35,515.64 | |

# EXHIBIT F

Case 20-12969-JTD    Doc 197-6    Filed 08/10/21    Page 190 of 190

| System: | SUMMARY HISTORICAL AGED TRIAL BALANCE | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Media Lodge Inc.- Post | Receivables Management | | User ID: | Susan | | | | | | | |
| Customer: | Name: | | Current | 0-30 Days | | 31 - 60 Days | 61 - 90 Days | 91 - 120 Days | | 121 - 360 Days | 366 + Days |
| MEDIA0001 | MEDIA LODGE LLC | $ | 161,321.97 | $ 161,321.97 | $ - | $ - | $ - | $ - | $ - | $ - | |
| Grand Totals: | | 1 $ | 161,321.97 | $ 161,321.97 | $ - | $ - | $ - | $ - | $ - | $ - | |

# **<u>EXHIBIT G</u>**
Exit Facility
Agreement

# **LOAN AGREEMENT**

THIS LOAN AGREEMENT (this "**Agreement**"), dated as of September ___, 2021 (the "**Effective Date**"), is being entered into by and between Media Lodge Inc., a Delaware corporation (the "**Borrower**"), and Gemini Direct, LLC, a Nevada limited liability company (the "**Lender**").

NOW, THEREFORE, in consideration of the mutual covenants herein and for other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Borrower and Lender unconditionally agree as follows:

## **ARTICLE I**
## **THE LOAN**

1.1     The Loan.  Lender agrees to lend to Borrower, and Borrower agrees to borrow from Lender, the principal sum of up to One Million Five Hundred Thousand Dollars ($1,500,000) (the "**Loan**").  The proceeds of the Loan shall be paid in one or more advances to Borrower upon at least three (3) business days' prior written request therefor.  The date on which the initial advance is made to Borrower is referred to herein as the "**Loan Date**".  Lender reserves the right, in its sole and absolute discretion, to advance Borrower additional amounts, all of which shall be deemed to be included in the Loan for any and all purposes under this Agreement.

1.2     Interest.  Starting on the Loan Date until the principal amount of the Loan and all interest are paid in full, the outstanding principal amount of the Loan shall bear interest at the rate of seven percent (7%) per annum (the "**Interest Rate**"), compounded monthly.

1.3     Promise to Pay.  Borrower hereby unconditionally promises to pay Lender the outstanding principal amount of the Loan and all accrued and unpaid interest thereon, as and when due in accordance with the terms of this Agreement.

1.4     Repayment.  Borrower agrees to make monthly interest payments due on the Loan on the first business day of each month over a five year period, beginning on October 1, 2021. rBorrower agrees to repay the principal amount of the Loan, along with any other amounts outstanding, to Lender in full on October 1, 2026.

1.5     Prepayment.  Borrower may prepay the unpaid principal amount of the Loan, in full at any time or in part from time to time, without fee, premium or penalty.

1.6     Security.

(a)     To secure the payment and performance in full of all of Borrower's obligations hereunder, Borrower hereby grants to Lender a continuing security interest in all of its rights, title, and interests in and to the assets of Borrower listed on Exhibit A (the

"**Collateral**"), which shall continue until all of Borrower's obligations hereunder are satisfied in full.

(b)     Borrower hereby authorizes Lender to file, and Lender shall be responsible for filing, Uniform Commercial Code financing statements with all appropriate jurisdictions to perfect or protect Lender's security interest in the Collateral.

(c)     Upon satisfaction in full of Borrower's obligations hereunder, Lender's security interest in the Collateral shall automatically terminate.  In connection with the foregoing, Lender shall (i) promptly terminate any applicable Uniform Commercial Code financing statements, if any, and (ii) execute any further instruments and take further action as Borrower reasonably requests to evidence the termination of Lender's security interest in the Collateral.  If Lender fails to terminate any applicable Uniform Commercial Code financing statements in a timely manner, Borrower may, in its discretion, take all reasonable actions to terminate such financing statements.

## ARTICLE II
## COVENANTS

2.1     <u>Affirmative Covenants</u>.  Until the Loan and all amounts due under this Agreement are paid in full, Borrower shall, unless Lender shall otherwise consent in writing:

(a)     Do all things necessary to keep in full force and effect its legal existence.

(b)     Carry on its operations in compliance with all applicable laws, statutes, ordinances, rules and regulations.

(c)     Immediately notify Lender of (i) the occurrence of any Event of Default or fact, condition or event which, with the giving of notice or the passage of time, or both, would be an Event of Default, and (ii) any actions, suits or proceedings pending or threatened against Borrower that might materially and adversely affect Borrower's ability to pay the Loan.

(d)     Use the proceeds of the Loan solely for the operations of its business, and not for any personal, family or household purpose.

2.2     <u>Negative Covenants</u>.  Until the Loan is fully paid, Borrower will not, without the prior written consent of Lender:

(a)     Enter into or effect any merger, consolidation, share exchange, division, conversion, reclassification, recapitalization, restructuring, reorganization or any other transaction of like effect, dissolve, sell or otherwise dispose of substantially all of its assets or cease to conduct operations.

(b)     Lend funds to, or guaranty debts of, its shareholders, directors, officers, or other principals.

2

(c)     Sell, transfer, convey or lease a substantial part of its assets, or at any time sell all or substantially all of its assets, except for (i) the sale or other disposition of assets in the ordinary course of Borrower's operations, (ii) assets no longer used or useful in the conduct of Borrower's operations, or (iii) assets that are replaced immediately with similar assets of greater or equal value.

(d)     Purchase or otherwise acquire any shares of stock of, or similar interest in, any other Person or all or substantially all the assets or business of any other Person.

(e)     Amend any of its organizational documents in any manner which would be reasonably likely to materially adversely affect Borrower's ability to perform its obligations under this Agreement.

## ARTICLE III
## DEFAULTS AND REMEDIES

3.1     Events of Default.  Each of the following events and occurrences shall constitute an "**Event of Default**" under this Agreement:

(a)     Borrower fails to pay when due and payable any amount that Borrower is obligated to pay under this Agreement;

(b)     Borrower fails to perform or violates any provision, covenant, condition or agreement in Article II of this Agreement;

(c)     Borrower is adjudicated a bankrupt or insolvent, or admits in writing its inability to pay its debts as they become due or makes an assignment for the benefit of creditors, or ceases doing business as a going concern or applies for or consents to the appointment of any receiver or trustee, or such receiver, trustee or similar officer is appointed with the application or consent of Borrower, or bankruptcy, dissolution, liquidation or reorganization proceedings (or proceedings similar in purpose and effect) are instituted by or against Borrower;

(d)     The validity or enforceability of this Agreement, or any provisions hereof or thereof, is contested by or on behalf of Borrower, or a proceeding is commenced by any governmental authority having jurisdiction over Borrower seeking to establish the invalidity of this Agreement, or Borrower denies that it has any further liability or obligation under this Agreement; or

3.2     Remedies.  At the option of Lender, upon the occurrence of an Event of Default, or at any time thereafter during the continuance thereof:

(a)     the entire unpaid principal of the Loan, all charges and all fees due hereunder and all other obligations of Borrower to Lender under this Agreement, or otherwise arising, will become immediately due and payable without any further demand or notice;

3

(b)     Lender may exercise each and every right and remedy granted to it under this Agreement and under any other applicable law or at equity; and/or

(c)     The Interest Rate on the unpaid principal amount of the Loan shall be increased to [ten percent (10%)].

## ARTICLE IV
## MISCELLANEOUS

4.1     <u>Time of Essence.</u> Time is of the essence offor each and every provision of this Agreement.

4.2     <u>No Waivers</u>.  No failure or delay by Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies provided under this Agreement shall be cumulative and not exclusive of any rights or remedies provided by law.

4.3     <u>Indemnification</u>.  Borrower agrees to indemnify Lender, its affiliates and its directors, officers, agents and employees (each an **"Indemnitee"**) and hold each Indemnitee harmless from and against any and all liabilities, losses, damages, costs and expenses of any kind, including, without limitation, the reasonable fees and disbursements of counsel, which may be incurred by such Indemnitee in connection with any investigative, administrative or judicial proceeding (whether or not such Indemnitee shall be designated a party thereto) brought or threatened relating to or arising out of Borrower's operations or assets, the Loan, this Agreement or any actual or proposed use of the proceeds of the Loan, provided that no Indemnitee shall have the right to be indemnified hereunder for such Indemnitee's own gross negligence or willful misconduct as determined by a court of competent jurisdiction.  All obligations provided for in this Section shall survive the repayment of the Loan and the termination of this Agreement.

4.4     <u>Amendments and Waivers</u>.  Any provision of this Agreement may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by Borrower and Lender.

4.5     <u>Successors and Assigns</u>.  The provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, except that Borrower may not assign or otherwise transfer any of its rights under this Agreement without the prior written consent of Lender.

4.6     <u>Counterparts; Integration; Effectiveness</u>.  This Agreement may be signed in any number of counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument.  This Agreement constitutes the entire agreement and understanding between the parties hereto with respect to the Loan and supersede any and all prior agreements and understandings, oral or written, relating to the Loan.

4.7     <u>Governing Law; Venue; Consent to Jurisdiction</u>.  This Agreement and the right and obligations of the parties thereto shall be governed by and construed and interpreted in

accordance with the laws of the State of Delaware, excluding the impact of its conflict of laws doctrines.  Each of Borrower and Lender (i) irrevocably submits to the exclusive jurisdiction and venue of any Delaware State court or Federal court sitting in Wilmington, Delaware in any action arising out of this Agreement, and (ii) consents to the service of process by mail.  Nothing herein shall affect the right of any party to serve legal process in any manner permitted by law or affect its right to bring any action in any other court.

       4.8   <u>Waiver of Jury Trial</u>.  BORROWER EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THE LOAN AND THE TRANSACTION CONTEMPLATED HEREUNDER.

       4.9   <u>Waiver of Punitive Damages</u>.  BORROWER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY EXEMPLARY, PUNITIVE OR OTHER DAMAGES IN CONNECTION WITH THE LOAN OTHER THAN, OR IN ADDITION TO, COMPENSATORY DAMAGES.

       4.10   <u>Severability</u>.  If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

       4.11   <u>No Party Deemed Drafter</u>.  Borrower and Lender agree that no party hereto shall be deemed to be the drafter of this Agreement.

**END OF TEXT – SIGNATURES ON FOLLOWING PAGE(S)**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed under seal as of the date first written above.

SIGNED, SEALED AND DELIVERED                    **Media Lodge Inc.**
IN THE PRESENCE OF:                             A Delaware corporation


_____                     By: _____ (Seal)
Witness                                         Name: _____
                                                Title: _____



                                                **Gemini Direct, LLC**
                                                A Nevada limited liability company


_____                     By: _____ (Seal)
Witness                                         Name: _____
                                                Title: _____

6

EXHIBIT A

Collateral Security

To secure Borrower's obligations to Lender under this Agreement, Borrower hereby unconditionally grants, assigns, and pledges to Lender a continuing security interest (hereinafter referred to as the "**Security Interest**") in all tangible and intangible personal property of Borrower whether now owned or hereafter acquired or arising and wherever located, including, without limitation, all of Borrower's right, title, and interest in and to the following items (collectively, but without duplication, the "**Collateral**"):

(a)     all Accounts;

(b)     all Books;

(c)     all Chattel Paper;

(d)     all Deposit Accounts;

(e)     all Securities Accounts;

(f)     all Goods, Inventory, Equipment and fixtures;

(g)     all Negotiable Collateral;

(h)     all General Intangibles (including, without limitation, all Intellectual Property);

(i)     all Investment Property, Stock and Pledged Interests and all distributions, funds, revenues, income, profits, rights, title, interest and claims whatsoever, at law as well as in equity, which Grantor may have or possess on the date of this Agreement or to which Grantor may hereafter become legally or equitably entitled, directly or indirectly, from, in or to such Investment Property, Stock and Pledged Interests;

(j)     all rights in respect of any Supporting Obligations;

(k)     all rights in with respect to any Commercial Tort Claims;

(l)     all money and other financial assets; and

(m)     all Proceeds, whether tangible or intangible, of any of the foregoing,

Capitalized terms used herein but not defined herein shall have the meanings ascribed thereto in the Delaware Uniform Commercial Code.